UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

BAY VIEW CHAUTAUQUA
INCLUSIVENESS GROUP,

    Plaintiff,

v.

THE BAY VIEW ASSOCIATION OF
THE UNITED METHODIST CHURCH,
*a Michigan Summer Resort and Assembly Association,* THE BOARD OF THE BAY VIEW ASSOCIATION OF THE UNITED METHODIST CHURCH, *its governing body, and* BAY VIEW REAL ESTATE MANAGEMENT, INC., *a domestic profit corporation,*

    Defendants.

Case No. 1:17-cv-00622-PLM-RSK

HON. PAUL L. MALONEY

_____

| | |
|---|---|
| Sarah S. Prescott (P70510) | Michael S. Bogren (P34835) |
| Attorneys for Plaintiff | Attorney for Defendants |
| SALVATORE PRESCOTT & PORTER, PLLC | PLUNKETT COONEY |
| 105 East Main Street | 950 Trade Centre Way, Suite 310 |
| Northville, Michigan  48167 | Kalamazoo, Michigan  49002 |
| (248-679-8711) | (269-226-8822) |
| Prescott@spplawyers.com | mbogren@plunkettcooney.com |

_____

**BRIEF IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**ORAL ARGUMENT REQUESTED**

**STANDARD**

In *Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 582 F. Supp. 2d 892, 900–01 (W.D. Mich. 2008), this court stated the standard for deciding motions under Rule 12(b)(6) and 12(c):

1

"This court assesses a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted under the same standard as a Rule 12(c) motion for judgment on the pleadings. *Lindsay v. Yates,* 498 F.3d 434, 438 (6th Cir.2007). Such motions turn on legal issues, not an assessment of the evidence. *Technology Recycling Corp. v. City of Taylor,* 186 Fed.Appx. 624, 640 n. 5 (6th Cir.2006) (Griffin, J.) ("*Tech Rec*" ); *see also Thomas v. Arn,* 474 U.S. 140, 150 n. 8, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("[M]otions for judgment on the pleadings and dismissal for failure to state a claim on which relief can be granted ... consist exclusively of issues of law."). A Rule 12(c) motion is simply one permissible avenue for contending that the complaint should be dismissed because it fails to state a claim on which relief can be granted. *See Arbaugh \*901 v. Y & H Corp.,* 546 U.S. 500, 507, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("a defense of failure to state a claim upon which can be granted ... may be made in any pleading ... or by motion for judgment on the pleadings, or at the trial ....") (quoting Fed. R. Civ. P. 12(h)(6)).

Such motions "presume as a legal matter the lack of any need for an evidentiary hearing ...." *US v. Raddatz,* 447 U.S. 667, 693-94, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Indeed, the court must accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Tech Rec,* 186 Fed.Appx. at 640 n. 5 (citing *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.,* 399 F.3d 692, 697 (6th Cir.2005) ("*PONI*" )); *see also Bohanan v. Bridgestone/Firestone No. Am. Tire, LLC,* 260 Fed.Appx. 905, 906 (6th Cir.2008) (citing *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir.2001)). But the court need not draw unwarranted factual inferences or accept the plaintiff's *legal* conclusions. *Bohanan,* 260 Fed.Appx. at 906 (citing *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir.1999)).

And each claim's factual allegations must *plausibly* suggest a viable claim; the claim must be plausible and not merely conceivable. *NicSand, Inc. v. 3M Co.,* 507 F.3d 442, 455 (6th Cir.2007) (en banc) (Sutton, J., joined by Griffin et al.) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)); *see generally Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 296 n. 1 (6th Cir.2008) (discussing our Circuit's standard for 12(b)(6) motions after *Twombly* and *Erickson v. Pardus,* 550 U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)). "The 'factual allegations must be enough to raise a right to relief above the speculative level' ", not merely create a " '*suspicion* of a legally cognizable cause of action ....' " *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir.2008) (quoting *Twombly,* 550 U.S. at ----, 127 S.Ct. at 1974) (internal alterations omitted).[3] There must be either direct of inferential allegations regarding the material elements of each claim. *LULAC v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (citing *Twombly,* 550 U.S. at ----, 127 S.Ct. at 1969).

When considering whether to grant a Rule 12(c) or 12(b)(6) motion, the court primarily considers the complaint's allegations, but may also take into account items appearing in the record and attached exhibits. *LaFace Records, LLC v. Does 1-5,* 2008 WL 513508, *3 (W.D.Mich. Feb. 22, 2008) (Maloney, J.) (citing *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir.2001))." *Poly-Flex Const.,* 582 F. Supp. 2d at 900–901.

## **STATEMENT OF FACTS**

The following relevant facts, taken from the plaintiff's Complaint, will be accepted as true for purposes of this motion.

Plaintiff, Bay View Chautauqua Inclusiveness Group ("the Group") is a group of individuals allegedly deprived of their legal rights because of the Bay View membership

3

policies, who have joined in an association to mutually collaborate in methods of bringing about change while preserving their community's long-term viability. (Complaint, ¶ 6). Members of plaintiff include existing owners whose children and grandchildren cannot inherit Bay View cottages because they do not meet the religious test contained in the by-laws. (Complaint, ¶ 7). Members of plaintiff also include individuals who seek to buy homes in the community, but who are not practicing Christians and therefore cannot do so. (Complaint, ¶ 8). Members of plaintiff further include existing owners who object to membership requirements favoring practicing Christians and refusing sales to non-practicing Christians. These members seek to live in a religiously diverse and free community, but cannot do so under the current rules and practices. (Complaint, ¶ 9). Members of plaintiff include existing owners who cannot pass their sizeable, illiquid asset—their Bay View cottage—to their spouses, due to the religious test. (Complaint, ¶ 10). Members also include existing owners who cannot sell their cottage in the open market on commercially reasonable terms, and whose property values are alleged to be affected by the challenged dictates, which restrict sales to a small segment of willing buyers. (Complaint, ¶ 11).

Plaintiff alleges that as a direct and proximate result of its policies and practices of Bay View Association, plaintiff's members have suffered losses including financial and emotional. (Complaint, ¶ 108, 114, 127 137). Plaintiff seeks, *inter alia*, the following relief:

"For all of the foregoing reasons, Plaintiff demands judgment by this honorable Court that:

"7. Awards such damages as would **fully compensate each person aggrieved by the Defendants' discriminatory housing practices for injuries caused by the**

4

***Defendants' pattern or practice of discriminatory conduc***t, and as is further authorized for punitive/exemplary damages pursuant to 42 U.S.C. §§ 1983, 1988 and/or MCL § 37.2501 *et seq*. and other law." (Complaint, Requested Relief, ¶ 7). (Emphasis added).

## ARGUMENT

### I. THE PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR DAMAGES ON BEHALF OF ITS INDIVIDUAL MEMBERS.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. [Citation omitted]. In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

"To demonstrate constitutional standing, a plaintiff must satisfy the following three elements: (1) an allegation of an 'injury in fact,' which is a concrete harm suffered by the plaintiff that is actual or imminent, rather than conjectural or hypothetical; (2) a demonstration of 'causation,' which is a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) a demonstration of 'redressability,' which is a likelihood that the requested relief will redress the alleged injury. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102–104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also Wuliger v. Mfrs. Life Ins. Co.,* 567 F.3d 787, 793 (6th Cir.2009)." *Friends of Tims Ford v. Tennessee Valley Auth.*, 585 F.3d 955, 966 (6th Cir. 2009).

"As an unincorporated association, [plaintiff] also must demonstrate associational standing, which is met when: (1) the organization's 'members would otherwise have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see also Fednav, Ltd. v. Chester,* 547 F.3d 607, 615 (6th Cir.2008)." *Friends of Tims Ford*, 585 F.3d at 967. It is on the third requirement that plaintiff's attempt to assert claims for damages on behalf of its individual members fails.

The Supreme Court's decision in *Warth v. Seldin, supra*, is, in defendants' view, both instructive on the general issue of associational standing and determinative of the issue in this case. *Warth* involved an action brought by various organizations and individuals in the Rochester, N.Y., metropolitan area against the town of Penfield, an incorporated municipality adjacent to Rochester, and against members of Penfield's Zoning, Planning and Town Boards. Petitioners claimed that the town's zoning ordinance, by its terms and as enforced by the defendant board members effectively excluded persons of low and moderate income from living in the town, which violated petitioners' First, Ninth, and Fourteenth Amendment rights and 42 U.S.C. §§ 1981, 1982 and 1983. *Id*. at 493.

Addressing the standing of the association plaintiffs, the Supreme Court first acknowledged that *Trafficante v. Metropolitan Life Ins. Co*., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), held that plaintiffs, as "person(s) who claim(ed) to have been injured by a discriminatory housing practice," had standing to litigate violations of the Fair Housing Act. The Supreme Court concluded in *Trafficante* that Congress had given the individual

6

residents of housing facilities covered by the statute an actionable right to be free from the adverse consequences to them of racially discriminatory practices directed at and immediately harmful to others. *Id*. at 212. The Supreme Court rejected the argument that *Trafficante* provided a basis for the associations to have standing. *Warth*, 422 U.S. at 513–514.

The Supreme Court went on to address the issue of standing as it related to the Rochester Home Builders' Association, which asserted standing to represent its member firms engaged in the development and construction of residential housing in the Rochester area, including Penfield. The Home Builders' Association alleged that "the Penfield zoning restrictions, together with refusals by the town officials to grant variances and permits for the construction of low- and moderate-cost housing, had deprived some of its members of 'substantial business opportunities and profits.'" *Warth,* 422 U.S. at 514–515. The Supreme Court rejected the Association's argument that it had standing:

> . . . whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. E.g., *National Motor Freight Assn. v. United States*, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963). See *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Cf. Fed. R. Civ. P. 23(b)(2).
>
> The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. Home Builders alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such. Moreover, in the circumstances of this case, *the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require*

7

> *individualized proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf.*

*Id.* at 515–516 (emphasis added). The defendants submit this language is directly applicable to this case and requires a dismissal of the plaintiff's damages claims that it attempts to assert on behalf of its individual members.

The Sixth Circuit has also reached the same conclusion under similar factual circumstances. *Neighborhood Action Coal. v. City of Canton, Ohio*, 882 F.2d 1012, (6th Cir. 1989), involved a lawsuit filed by The Neighborhood Action Coalition (NAC), an unincorporated association consisting of residents of the northeast section of Canton, Ohio, and organized for the purpose of fostering open housing. In their complaint, plaintiffs alleged that the City of Canton refused to invest federal funds in the northeast region of the City (NAC area) in the same proportion it invested federal funds in other regions of the City. The plaintiffs alleged that they are injured by the defendants' acts; the neighborhood had become unsafe for themselves and their children, and the use and value of their real property was substantially reduced. Plaintiffs sought relief under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq.; and the Civil Rights Act of 1866, 1870 and 1871, 42 U.S.C. §§ 1981, 1982, 1983. The complaint sought injunctive relief in the form of an order prohibiting the City from providing services in a racially discriminatory manner, and requiring the City to provide police protection to the NAC area equal to the protection provided to other neighborhoods. The complaint also sought compensatory and punitive damages. *Id.* at 1013–1014.

In addressing the issue of standing, the Sixth Circuit, relying on *Warth*, held the NAC did not have standing to bring damages claims:

> As to the third requirement, that neither the claim asserted nor the relief requested require participation in the lawsuit by individual members, appellee contends that the appellants' claims for compensatory damages would require evaluating separately the individual circumstances of each member of the NAC. Appellee is correct. In *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court held that an organization of construction firms could not seek damages for profits lost because the injuries were particular to each individual and would require individualized proof. *Id.* at 515–516. Like *Warth,* the diminished value of each plaintiff's property as a result of the City's alleged conduct would require individualized proof. Accordingly, the NAC lacks standing to obtain compensatory relief on behalf of each of the individual plaintiffs.

*Neighborhood Action Coal., supra,* 882 F.2d at 1017. The same result must follow here. The Complaint alleges that various categories of cottage owners are members of the Group and have suffered both financial and emotional damages. It is beyond dispute that any financial damages claimed will be entirely dependent on each individual's circumstances. Are damages being claimed because a cottage cannot be devised or because a sale price is depressed? That inquiry, in turn, will be entirely dependent on each individual cottage. The plaintiff does not allege (not could it) that the cottages in Bay View are fungible. Each is different and any sales price will depend on the typical factors involved in a real estate transaction: location, size and condition to name but a few. Each claim of damages "would require an individualized proof." Thus, the plaintiff lacks standing to assert such claims.

The same is obviously true of the claim for emotional distress damages. Any emotional distress damages claimed by an individual member of the Group would also require individualized proof. How each member of the group claims to have been emotionally damaged will be dependent on whether it is based on him not being able to "live in a religiously diverse and free community," (Complaint, ¶ 9), or her inability to bequeath her cottage to her children or grandchildren "because they do not meet the religious test contained in the by-laws." (Complaint, ¶ 7). Even two individual members of

the Group who fall into the same category will have different claims for damages. An individual who has been estranged from her children or grandchildren will almost certainly have a different damages analysis than one who, for example, permanently resides with a child or grandchild.

The defendants submit this case represents the quintessential example of why associations do not have standing to assert damages claims on behalf of individual members. Those claims are not common to every member and require individualized proof. As a result, plaintiff lacks standing and the damages claims must be dismissed.

## RELIEF REQUESTED

The defendants respectfully request the Court grant the Motion for Partial Judgment on the Pleadings and dismiss the damages claims asserted in the Complaint.

Respectfully submitted,

DATED: August 15, 2017                PLUNKETT COONEY

BY:  /s/Michael S. Bogren
    Michael S. Bogren (P34835)
    Attorney for Defendants
    950 Trade Centre Way, Suite 310
    Kalamazoo, MI  49002
    Direct Dial:  269/226-8822

Open.00391.72232.18916242-1