UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAY VIEW CHAUTAUQUA
INCLUSIVENESS GROUP,

   Plaintiff,       Case No.  1:17-cv-00622-PLM-RSK

v.             HON. PAUL L. MALONEY

THE BAY VIEW ASSOCIATION OF
THE UNITED METHODIST CHURCH,
*a Michigan Summer Resort and Assembly
Association,* THE BOARD OF THE BAY
VIEW ASSOCIATION OF THE UNITED
METHODIST CHURCH, *its governing body,
and* BAY VIEW REAL ESTATE
MANAGEMENT, INC., *a domestic profit
corporation,*

   Defendants.
_____

| | |
|---|---|
| Sarah S. Prescott (P70510) | Michael S. Bogren (P34835) |
| Attorneys for Plaintiff | Attorney for Defendants |
| SALVATORE PRESCOTT & PORTER, PLLC | PLUNKETT COONEY |
| 105 East Main Street | 950 Trade Centre Way, Suite 310 |
| Northville, Michigan  48167 | Kalamazoo, Michigan  49002 |
| (248-679-8711) | (269-226-8822) |
| Prescott@spplawyers.com | mbogren@plunkettcooney.com |

_____

## **BRIEF IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

## **STANDARD**

In *Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 582 F. Supp. 2d 892, 900–01 (W.D. Mich. 2008), this Court stated the standard for deciding motions under Rule 12(b)(6) and 12(c):

"This court assesses a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted under the same standard as a Rule 12(c) motion for judgment

1

on the pleadings. *Lindsay v. Yates,* 498 F.3d 434, 438 (6th Cir.2007). Such motions turn on legal issues, not an assessment of the evidence. *Technology Recycling Corp. v. City of Taylor,* 186 Fed.Appx. 624, 640 n. 5 (6th Cir.2006) (Griffin, J.) ("*Tech Rec*"); *see also Thomas v. Arn,* 474 U.S. 140, 150 n. 8, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("[M]otions for judgment on the pleadings and dismissal for failure to state a claim on which relief can be granted ... consist exclusively of issues of law."). A Rule 12(c) motion is simply one permissible avenue for contending that the complaint should be dismissed because it fails to state a claim on which relief can be granted. *See Arbaugh *901 v. Y & H Corp.,* 546 U.S. 500, 507, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("a defense of failure to state a claim upon which can be granted ... may be made in any pleading ... or by motion for judgment on the pleadings, or at the trial ....") (quoting Fed. R. Civ. P. 12(h)(6)).

Such motions "presume as a legal matter the lack of any need for an evidentiary hearing ...." *US v. Raddatz,* 447 U.S. 667, 693-94, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Indeed, the court must accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Tech Rec,* 186 Fed.Appx. at 640 n. 5 (citing *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.,* 399 F.3d 692, 697 (6th Cir.2005) ("*PONI*")); *see also Bohanan v. Bridgestone/Firestone No. Am. Tire, LLC,* 260 Fed.Appx. 905, 906 (6th Cir.2008) (citing *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir.2001)). But the court need not draw unwarranted factual inferences or accept the plaintiff's *legal* conclusions. *Bohanan,* 260 Fed.Appx. at 906 (citing *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir.1999)).

And each claim's factual allegations must *plausibly* suggest a viable claim; the claim must be plausible and not merely conceivable. *NicSand, Inc. v. 3M Co.,* 507 F.3d 442, 455

(6th Cir.2007) (en banc) (Sutton, J., joined by Griffin et al.) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)); *see generally Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 296 n. 1 (6th Cir.2008) (discussing our Circuit's standard for 12(b)(6) motions after *Twombly* and *Erickson v. Pardus,* 550 U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)). "The 'factual allegations must be enough to raise a right to relief above the speculative level' ", not merely create a " *'suspicion* of a legally cognizable cause of action ....' " *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir.2008) (quoting *Twombly,* 550 U.S. at ----, 127 S.Ct. at 1974) (internal alterations omitted).[3] There must be either direct of inferential allegations regarding the material elements of each claim. *LULAC v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (citing *Twombly,* 550 U.S. at ----, 127 S.Ct. at 1969).

When considering whether to grant a Rule 12(c) or 12(b)(6) motion, the court primarily considers the complaint's allegations, but may also take into account items appearing in the record and attached exhibits. *LaFace Records, LLC v. Does 1-5,* 2008 WL 513508, *3 (W.D.Mich. Feb. 22, 2008) (Maloney, J.) (citing *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir.2001))." *Poly-Flex Const.,* 582 F. Supp. 2d at 900–901.

## STATEMENT OF FACTS

The following relevant facts, taken from the plaintiff's First Amended Complaint, will be accepted as true for purposes of this motion.

The Bay View Association of the United Methodist Church is a community of cottages, lodgings, and multi-purpose buildings situated just northeast of Petoskey, Michigan. (First Amended Complaint [FAC], ¶ 1). Bay View is a Summer Resort and Assembly Association organized under Act 39 of the Public Acts of 1889, MCL § 455.51 et

3

seq. (FAC, ¶ 13). Bay View was founded in 1875 and was later formally recognized under the 1889 Summer Resort Act. (FAC, ¶ 25). State law delegates to Defendant Board "the management and control of the business, finances, rights, interests, buildings and all property, real and personal, of the association." M.C.L. 455.67. (FAC, ¶ 29). State law further empowers Bay View by and through its Board to manage drainage and access to water. (FAC, ¶ 30). The Defendant Board likewise controls access to land by constructing docks, erecting and maintaining streets and highways on the property, as well as all buildings that sit atop the land that the community collectively owns. (FAC, ¶ 31). Bay View may license and limit trucks conveying goods on the land; provided protection from loss or damage from fire or contagious diseases; and outlaw certain behaviors including:

Disorderly assemblies . . . gaming and disorderly houses . . . billiard tables, bowling alleys, fraudulent and gaming devices, the selling or giving away any spirituous or fermented liquors; to prohibit and abate all nuisances and all slaughter houses, meat markets, butcher shops, the glue factories, and all such other offensive houses and places as the board of trustees may deem necessary for the health, comfort and convenience of the occupants upon such lands. (FAC, ¶ 33). Bay View can further limit the speed of cars; prevent dogs from running free; and require residents to engage in basic maintenance; etc. (FAC, ¶ 34). Bay View is delegated the power to deputize a marshal. (FAC, ¶ 36).

Plaintiff, Bay View Chautauqua Inclusiveness Group ("the Group") is a club of individuals who have joined in an association to mutually collaborate in methods of bringing about change to the Bay View membership policies while preserving the community's long-term viability.. (FAC, ¶ 6). Members of plaintiff include existing owners whose children and grandchildren cannot inherit Bay View cottages because they do not

meet the religious test contained in the by-laws. (FAC, ¶ 7). Members of plaintiff also include individuals who seek to buy homes in the community, but who are not practicing Christians and therefore cannot do so. (FAC, ¶ 8). Members of plaintiff further include existing owners who object to membership requirements favoring practicing Christians and refusing sales to non-practicing Christians. These members seek to live in a religiously diverse and free community, but cannot do so under the current rules and practices. (FAC, ¶ 9). Members of plaintiff include existing owners who cannot pass their sizeable, illiquid asset—their Bay View cottage—to their spouses, due to the religious test. (FAC, ¶ 10). Members also include existing owners who cannot sell their cottage in the open market on commercially reasonable terms, and whose property values are alleged to be affected by the challenged dictates, which restrict sales to a small segment of willing buyers. (FAC, ¶ 11).

The natural persons who make up the Plaintiff have irrevocably assigned, transferred and set over to the Plaintiff all rights, title and interest he/she/or they hold in the claims, demands and causes of action in this suit.  The natural persons who make up the Plaintiff have appointed Plaintiff as his/her/their attorney-in-fact with authority to litigate this matter, and each has agreed to be bound by the results of the litigation.  These assignments are non-transferable, and each natural club member has represented that he/she/they have not assigned the matter to any other such assignee. (FAC, ¶ 12).

Bay View has aligned itself with and endorsed and promoted the Christian religion. (FAC, ¶ 42). By 1986, Bay View instituted a bylaw requirement that would-be members now provide a minister's letter establishing active participation in a Christian church, a change which excluded "unchurched" Christians from cottage ownership. (FAC, ¶ 47).

5

Specifically, Article 1-d of the Bay View bylaws, added in 1986, provides that the conditions of membership include, among other things, that the applicant: "is of Christian persuasion" and provides a reference letter from a pastor or church leader of the church the applicant attends or of which he is a member. (FAC, ¶ 48).

Between 2007 and present, Bay View's leadership has steadily attempted to align Bay View formally with the United Methodist Church. (FAC, ¶ 49). Article 2 of the bylaws states that 60% of the "Trustees shall be members of The United Methodist Church whose election shall be ratified by the West Michigan Conference of the United Methodist Church. (FAC, ¶ 50). Article 77-B of the bylaws states: "In addition, any amendments to paragraphs 2 regarding the Methodist majority and conference ratification requirements only, 75-b or 77-b, must be approved by the West Michigan Conference of the United Methodist Church." (*Id*.) Plaintiff in this suit "challenges the unlawful policies and practices of Bay View, rooted in the 1945 'purpose' change (expressing an explicitly 'Christian' purpose for Bay View), and the bylaw provisions restricting home ownership to actively practicing Christians and restricting leadership to a majority of Methodists, as ratified by the United Methodist Church." (FAC, ¶ 59).

Plaintiff alleges that as a direct and proximate result of the policies and practices of Bay View Association, plaintiff's **members** have suffered losses and damages, including financial and emotional. (FAC, ¶ 109, 115, 128, 138). Plaintiff seeks, *inter alia*, the following relief:

"For all of the foregoing reasons, Plaintiff demands judgment by this honorable Court that:

"7. Awards such damages as would ***fully compensate each person aggrieved by the Defendants' discriminatory housing practices for injuries caused by the Defendants' pattern or practice of discriminatory conduc***t, and as is further authorized for punitive/exemplary damages pursuant to 42 U.S.C. §§ 1983, 1988 and/or MCL § 37.2501 *et seq*. and other law." (Complaint, Requested Relief, ¶ 7). (Emphasis added).

Further facts, if necessary for resolution of this motion, will be discussed in the Argument portion of the Brief.

## ARGUMENT

### I. THE PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR DAMAGES ON BEHALF OF ITS INDIVIDUAL MEMBERS.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. [Citation omitted]. In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

"To demonstrate constitutional standing, a plaintiff must satisfy the following three elements: (1) an allegation of an 'injury in fact,' which is a concrete harm suffered by the plaintiff that is actual or imminent, rather than conjectural or hypothetical; (2) a demonstration of 'causation,' which is a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) a demonstration of 'redressability,' which is a likelihood that the requested relief will redress the alleged

7

injury. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102–104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also Wuliger v. Mfrs. Life Ins. Co.,* 567 F.3d 787, 793 (6th Cir.2009)." *Friends of Tims Ford v. Tennessee Valley Auth.*, 585 F.3d 955, 966 (6th Cir. 2009).

To establish prudential standing requirements "(1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question." *McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012).

"As an unincorporated association, [plaintiff] also must demonstrate associational standing, which is met when: (1) the organization's 'members would otherwise have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see also Fednav, Ltd. v. Chester,* 547 F.3d 607, 615 (6th Cir.2008)." *Friends of Tims Ford*, 585 F.3d at 967. It is on the third requirement that plaintiff's attempt to assert claims for damages on behalf of its individual members fails.

The Supreme Court's decision in *Warth v. Seldin, supra*, is, in defendants' view, both instructive on the general issue of associational standing and determinative of the issue in this case. *Warth* involved an action brought by various organizations and individuals in the Rochester, N.Y., metropolitan area against the town of Penfield, an incorporated municipality adjacent to Rochester, and against members of Penfield's Zoning, Planning

and Town Boards. Petitioners claimed that the town's zoning ordinance, by its terms and as enforced by the defendant board members effectively excluded persons of low and moderate income from living in the town, which violated petitioners' First, Ninth, and Fourteenth Amendment rights and 42 U.S.C. §§ 1981, 1982 and 1983. *Id.* at 493.

Addressing the standing of the association plaintiffs, the Supreme Court first acknowledged that *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), held that plaintiffs, as "person(s) who claim(ed) to have been injured by a discriminatory housing practice," had standing to litigate violations of the Fair Housing Act. The Supreme Court concluded in *Trafficante* that Congress had given the individual residents of housing facilities covered by the statute an actionable right to be free from the adverse consequences to them of racially discriminatory practices directed at and immediately harmful to others. *Id.* at 212. The Supreme Court rejected the argument that *Trafficante* provided a basis for the associations to have standing. *Warth*, 422 U.S. at 513–514.

The Supreme Court went on to address the issue of standing as it related to the Rochester Home Builders' Association, which asserted standing to represent its member firms engaged in the development and construction of residential housing in the Rochester area, including Penfield. The Home Builders' Association alleged that "the Penfield zoning restrictions, together with refusals by the town officials to grant variances and permits for the construction of low- and moderate-cost housing, had deprived some of its members of 'substantial business opportunities and profits.'" *Warth,* 422 U.S. at 514–515. The Supreme Court rejected the Association's argument that it had standing:

> . . . whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the

nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. E.g., *National Motor Freight Assn. v. United States*, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963). See *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Cf. Fed. R. Civ. P. 23(b)(2).

The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. Home Builders alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such. Moreover, in the circumstances of this case, *the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf.*

*Id.* at 515–516 (emphasis added). The defendants submit this language is directly applicable to this case and requires a dismissal of the plaintiff's damages claims that it attempts to assert on behalf of its individual members.

The Sixth Circuit has also reached the same conclusion under similar factual circumstances. *Neighborhood Action Coal. v. City of Canton, Ohio*, 882 F.2d 1012, (6th Cir. 1989), involved a lawsuit filed by The Neighborhood Action Coalition (NAC), an unincorporated association consisting of residents of the northeast section of Canton, Ohio, and organized for the purpose of fostering open housing. In their complaint, plaintiffs alleged that the City of Canton refused to invest federal funds in the northeast region of the City (NAC area) in the same proportion it invested federal funds in other regions of the City. The plaintiffs alleged that they are injured by the defendants' acts; the neighborhood had become unsafe for themselves and their children, and the use and value of their real

10

property was substantially reduced. Plaintiffs sought relief under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq.; and the Civil Rights Act of 1866, 1870 and 1871, 42 U.S.C. §§ 1981, 1982, 1983. The complaint sought injunctive relief in the form of an order prohibiting the City from providing services in a racially discriminatory manner, and requiring the City to provide police protection to the NAC area equal to the protection provided to other neighborhoods. The complaint also sought compensatory and punitive damages. *Id.* at 1013–1014.

In addressing the issue of standing, the Sixth Circuit, relying on *Warth*, held the NAC did not have standing to bring damages claims:

> As to the third requirement, that neither the claim asserted nor the relief requested require participation in the lawsuit by individual members, appellee contends that the appellants' claims for compensatory damages would require evaluating separately the individual circumstances of each member of the NAC. Appellee is correct. In *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court held that an organization of construction firms could not seek damages for profits lost because the injuries were particular to each individual and would require individualized proof. *Id.* at 515–516. Like *Warth,* the diminished value of each plaintiff's property as a result of the City's alleged conduct would require individualized proof. Accordingly, the NAC lacks standing to obtain compensatory relief on behalf of each of the individual plaintiffs.

*Neighborhood Action Coal., supra,* 882 F.2d at 1017. The same result must follow here. The First Amended Complaint alleges that various categories of cottage owners are members of the Group and have suffered both financial and emotional damages. It is beyond dispute that any financial damages claimed will be entirely dependent on each individual's circumstances. Are damages being claimed because a cottage cannot be devised or because a sale price is depressed? That inquiry, in turn, will be entirely dependent on each individual cottage. The plaintiff does not allege (not could it) that the cottages in Bay View are fungible. Each is different and any sales price will depend on the typical factors

11

involved in a real estate transaction: location, size and condition to name but a few. Each claim of damages "would require an individualized proof." Thus, the plaintiff lacks standing to assert such claims.

The same is obviously true of the claim for emotional distress damages. Any emotional distress damages claimed by an individual member of the Group would also require individualized proof. How each member of the group claims to have been emotionally damaged will be dependent on whether it is based on him not being able to "live in a religiously diverse and free community," (FAC, ¶ 9), or her inability to bequeath her cottage to her children or grandchildren "because they do not meet the religious test contained in the by-laws." (FAC, ¶ 7). Even two individual members of the Group who fall into the same category will have different claims for damages. An individual who has been estranged from her children or grandchildren will almost certainly have a different damages analysis than one who, for example, permanently resides with a child or grandchild.

The defendants submit this case represents the quintessential example of why associations do not have standing to assert damages claims on behalf of individual members. Those claims are not common to every member and require individualized proof. As a result, plaintiff lacks standing and the damages claims must be dismissed.

In an attempt to create standing for the association or club, the individual club members have "have irrevocably assigned, transferred and set over to the Plaintiff all rights, title and interest he/she/or they hold in the claims, demands and causes of action in this suit." (FAC, ¶ 12). This is an attempt to come within the Supreme Court's ruling in

*Sprint Comm. Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 128 S. Ct. 2531, 2535, 171 L. Ed. 2d 424 (2008). This attempt is unavailing.

Standing "**must exist at the commencement of the litigation** . . ." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (Emphasis added); *Barry v. Lyon*, 834 F.3d 706, 714 (6th Cir. 2016) ("[A] plaintiff must have a personal interest **at the commencement of the litigation** . . .") (Emphasis added). Here, the plaintiff association did not have the requisite "personal interest" at the commencement of the litigation. That is fatal to the plaintiff's attempt to assert damages claims on behalf of its individual members.

Plaintiff has attempted to manufacture standing by obtaining assignments of the members' claims after this litigation was commenced and then filing an amended complaint. This attempt to circumvent the requirement that standing exist at the commencement of the litigation has been uniformly rejected by the courts. In *Berger v. Weinstein*, No. CIV. A. 07-994, 2008 WL 3183404, at *3, n. 4 (E.D. Pa. Aug. 6, 2008), *aff'd*, 348 F. App'x 751 (3d Cir. 2009), the court rejected a virtually identical attempt to manufacture standing after the litigation had been commenced:

> In response to Defendants' motion for summary judgment on the standing issue, Plaintiff additionally produced Assignment Agreements from each of the five companies, dated June 20, 2008 (eight days before Plaintiff filed his response to summary judgment), which "absolutely and unconditionally assign to Berger the entirety of whatever claims and causes of action it may have against any and all of the defendants in the Litigation arising from the facts and circumstances alleged in the Second Amended Complaint." (Berger Decl. Ex. D (Kilbride Assignment) ¶ 1 & Ex. E (Bergfield Assignment) ¶ 1 & Ex. F (Busystore, Towerstates, and Ardenlink Assignments) ¶ 1.) A party may assign his legal stake in any litigation to an assignee. *See Sprint Communications Co. LP v. APCC Services, Inc.*, ––– U.S. ––––, 128 S.Ct. 2531, ––– L.Ed.2d –––– (2008). Nonetheless, an assignment of legal rights which takes place after the commencement of litigation does not abdicate the constitutional requirement that standing "must exist from the

13

commencement of litigation." *Friends of the Earth,* 528 U.S. at 190 (internal citations omitted).

Recognizing this deficiency, at oral argument, Plaintiff admitted that the assignments were insufficient to satisfy constitutional standing requirements. (July 31, 2008 Tr. at 62 ("The Court: But you'll concede that after-the-fact assignments don't confer Article [III] standing? Mr. Seltzer: I concede that.").) Accordingly, the companies' assignments cannot satisfy Article III standing.

*Accord, Epic Sporting Goods, Inc. v. Fungoman LLC*, No. CIV.A. 09-1981, 2011 WL 588496, at *4 (W.D. La. Feb. 10, 2011) ("Epic lacked a cognizable injury necessary to establish standing under Article III of the Constitution to confer subject matter jurisdiction upon the district court at the inception of this lawsuit, and such a defect in standing can be cured neither by a subsequent assignment nor a subsequent amendment of the pleadings.")

The assignments cannot create standing when none existed at the commencement of the litigation.

In addition to failing to meet the requirements of constitutional standing, plaintiff also fails to meet the requirements of prudential standing. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, **shall be liable to the party injured** . . . .

The Sixth Circuit has rejected the position that prudential standing in a claim brought through 42 U.S.C. § 1983 can exist based on an assignment from the "party injured" to a third party: "As the Eighth Circuit held in *Carter,* 560 F.2d at 396 n. 1, '[c]ivil rights damages may not be bought and sold in the market place....' Moreover, under the statutes involved in these claims, only the "party injured," *see* 42 U.S.C. § 1983 . . . may bring a civil action in the federal courts for the specified injuries." *Quarles v. City of E. Cleveland*, 202

14

F.3d 269 (6th Cir. 1999). The Sixth Circuit's reference to *Carter* was to the Eighth Circuit's

decision in *Carter v. Romines*, 560 F.2d 395, 396, n. 1 (8th Cir. 1977):

> "We reject the notion that appellant can have standing through an assigned
> economic interest in the outcome of the litigation or simply because he seeks
> money damages for past wrongs inflicted upon his assignor. Civil rights
> damages may not be bought and sold in the market place; appellant must
> bring himself under one of the exceptions to the rule of standing or be denied
> access to the federal courts."

Here, the plaintiff's claim does not "fall within the 'zone of interests' regulated by the

statute in question." *McGlone, supra,* 681 F.3d at 729. The plaintiff is not the "party injured,"

which it must be to fall within the "zone of interest" of § 1983. Since the plaintiff lacks both

constitutional standing and prudential standing to assert damages claims on behalf of its

individual members those claims must be dismissed.

As a final note, the Supreme Court in *Sprint* explicitly relied on the fact that "the

assignments were made for ordinary business purposes. Were this not so, additional

prudential questions might perhaps arise." *Sprint, supra,* 554 U.S. at 292. Here, the

assignments were **not** made "for ordinary business purposes." The assignments were

explicitly made in an attempt to manufacture standing. The decision in *Sprint* simply does

not support the plaintiff's attempt to claim standing in this case.

### II. BAY VIEW WAS NOT ACTING UNDER COLOR OF LAW AND COUNTS I AND II OF THE AMENDED COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Bay View Association Bay View is a Summer Resort and Assembly Association

organized under Act 39 of the Public Acts of 1889, MCL § 455.51 et seq. (FAC, ¶ 13). (See

also FAC, Exhibit D). The Preamble to P.A.1889, No. 39 states:

> AN ACT to authorize the formation of corporations for the purchase and
> improvement of grounds to be occupied for summer homes, for camp-

15

meetings, for meetings of assemblies or associations and societies organized for intellectual and scientific culture and for the promotion of the cause of religion and morality, or for any or all of such purposes; and to impose certain duties on the department of commerce.

Bay View Association is **not**, and never has been, a Summer Resort Owners' Association formed under Act 137, P.A. 1929. The distinction is of immense significance. Plaintiff conflates these two Acts in the First Amended Complaint in an attempt to allege state action. Tthe distinction between the two acts, and the entities formed under them, is of paramount importance.

The Preamble to P.A.1929, No. 137, states:

AN ACT to authorize the formation of corporations by summer resort owners; to authorize the purchase, improvement, sale, and lease of lands; to authorize the exercise of certain police powers over the lands owned by said corporation and within its jurisdiction; to impose certain duties on the department of commerce; and to provide penalties for the violation of by-laws established under police powers.

M.C.L. 455.201 provides:

That any number of freeholders, not less than 10, who may desire to form a summer resort owners corporation for the better welfare of said community and for the purchase and improvement of lands to be occupied for summer homes and summer resort purposes, may, with their associates and successors, **become a body politic** and corporate, under any name by them assumed in their articles of incorporation, in the manner herein provided.

M.C.L. 455.204 provides:

On compliance with the foregoing provisions of this act, the persons so associating, their successors and assigns, shall become and **be a body politic** and corporate, under the name assumed in their articles of association and shall have and **possess all the general powers and privileges and be subject to all the liabilities of a municipal corporation** and become the local governing body.

(Emphasis added). If Bay View had been formed under Act 137, P.A. 1929 and M.C.L. 455.201 and 204 applied to it, plaintiff might have a colorable claim that Bay View was

16

exercising authority "governmental in character." However, not only does plaintiff concede that Bay View was formed under Act 39, P.A. 1889 – not Act 137, P.A. 1929 – it also concedes the Attorney General Opinion cited in the First Amended Complaint applies to Summer Resort Owners' Association entities, **not** Summer Resort and Assembly Associations. (FAC, ¶ 38).

Under Michigan law Bay View is plainly not a municipality or governmental entity. The question then becomes whether Bay View can be said to have been a "state actor" when it enforced its membership by-laws. "By its terms, § 1983 requires an act 'under color of any statute, ordinance, regulation, custom, or usage, of any State.'" *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 612 (6th Cir. 2018). Non-governmental entities can engage in state action and be liable under 42 U.S.C. § 1983. However, "state action may be found if, though only if, there is such a 'close nexus between the State and **the challenged action**' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001) (Emphasis added). The Supreme Court identified the circumstances required for attributing state action to a private entity:

> Our cases have identified a host of facts that can bear on the fairness of such an attribution. We have, for example, held that **a challenged activity** may be state action **when it results** from the State's exercise of "coercive power," *Blum,* 457 U.S., at 1004, 102 S.Ct. 2777, when the State provides "significant encouragement, either overt or covert," *ibid.,* or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugar, supra,* at 941, 102 S.Ct. 2744 (internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia,* 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) *(per curiam),* when it has been delegated a public function by the State, cf., *e.g., West v. Atkins, supra,* at 56, 108 S.Ct. 2250; *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 627–628, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), when it is "entwined with governmental policies," or when government is "entwined in

[its] management or control," *Evans v. Newton,* 382 U.S. 296, 299, 301, 86
S.Ct. 486, 15 L.Ed.2d 373 (1966).

*Brentwood Academy, supra,* 531 U.S. at 296. (Emphasis added). (See, *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014) "Our court has identified three tests to resolve the state-actor inquiry: the public-function test, the state-compulsion test, and the nexus test.")

Based on the allegations in the First Amended Complaint it is apparent plaintiff is alleging the State has delegated a public function to Bay View. "Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state. The public function test has been interpreted narrowly. Only functions like holding elections, *see Flagg Bros. v. Brooks,* 436 U.S. 149, 157–58, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), exercising eminent domain, *see Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352–53, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), and operating a company-owned town, *see Marsh v. Alabama,* 326 U.S. 501, 505–09, 66 S.Ct. 276, 90 L.Ed. 265 (1946), fall under this category of state action." *Chapman v. Higbee Co.*, 319 F.3d 825, 833–834 (6th Cir. 2003); *Carl v. Muskegon County*, 763 F.3d at 595. In evaluating a public function claim "the court generally conducts an historical analysis to determine whether the private party has engaged in actions traditionally reserved to the state." *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003).

In making this analysis, it is the **particular activity** being challenged that must be examined. "Our cases have accordingly insisted that **the conduct allegedly causing the deprivation of a federal right** be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753–54, 73 L. Ed. 2d 482 (1982) (Emphasis added). "First, **the deprivation must be caused by the exercise of some right or privilege**

**created by the State** or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* (Emphasis added). ". . . whether **particular conduct** is 'private,' on the one hand, or 'state action,' on the other . . ." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349–350, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974) (Emphasis added). See also, *Kach v. Hose*, 589 F.3d 626, 649 (3d Cir. 2009) ("In making this very 'fact-specific' state action determination 'the focus of our inquiry is not on whether the state exercises control over a putative state actor as a general matter, but **whether the state has exercised control over the particular conduct** that gave rise to the plaintiff's alleged constitutional deprivation.'") (Emphasis added); *Nat'l Broad. Co. v. Commc'ns Workers of Am.,* 860 F.2d 1022, 1025 n. 4 (11th Cir.1988) ("[I]f a thread of commonality is to be drawn from the various forms in which state action can manifest itself through the conduct of private parties, it is that **attribution is not fair when bottomed solely on a generalized relation with the state.** Rather, private conduct is fairly attributable only when the state has had some affirmative role, albeit one of encouragement short of compulsion, ***in the particular conduct underlying a claimant's civil rights grievance.***") (Emphasis added); *Becker v. City Univ. of Seattle*, 723 F. Supp. 2d 807, 813 (E.D. Pa. 2010) ("The focus of this analysis is on 'whether the state has exercised control over the *particular conduct* that gave rise to the plaintiff's alleged constitutional deprivation.' *Id.* at 649 (emphasis added). Here, the specific conduct giving rise to Becker's Complaint is City University's decision to transfer Becker to an independent studies program.")

The **specific conduct** the plaintiff challenges in this case is the enforcement of the membership by-laws. The plaintiff's allegations regarding the State's purported delegation of various police powers to Summer Resort and Assembly Associations are completely

irrelevant to the issue of whether Bay View engaged in state action by enforcing its membership by-laws. This attempt at attribution is "bottomed solely on a generalized relation with the state." *Nat'l Broad. Co. v. Commc'ns Workers of Am., supra.* This will not do.

An example demonstrates why more than a "generalized relation with the state" is required to find state action. Plaintiff alleges under Michigan law the Bay View Association Board could appoint a Marshall. (FAC, ¶ 36). (It should be noted plaintiff cites M.C.L. 455.215 as authority for that allegation. As has been established, M.C.L. 455.215 applies to Summer Resort Owners' Associations and therefore in inapplicable to Bay View.) Assume Bay View does have the authority to appoint a Marshall. Assume further Bay View appointed a Marshall and the Marshall arrested someone. If that person claimed the arrest was without probable cause and brought suit for a Fourth Amendment violation under 42 U.S.C. § 1983, the state's grant of authority might well be enough to find state action. *Romanski v. Detroit Entertainment, L.L.C.*, 428 F.3d 629, 637 (6th Cir. 2005) ("Where private security guards are endowed by law with plenary police powers such that they are *de facto* police officers, they may qualify as state actors under the public function test. . . . On the other side of the line illustrated by *Payton* are cases in which the private defendants have some police-like powers but not plenary police authority.") But what does appointing a Marshall who has arrest power have to do with enforcing a membership by-law? Obviously – nothing. The same is true of every other allegation plaintiff makes with respect to the supposed delegation of police powers to Bay View. The plaintiff does not cite a single instance where the State has delegated the power of government to Bay View to enforce membership by-laws. That is fatal to the claim of state action.

There is simply no state action attributable to Bay View. Counts I and II of plaintiff's First Amended Complaint fail to state a claim upon which relief can be granted and must be dismissed.[1]

### III. COUNT 5 OF THE FIRST AMENDED COMPLAINT IS BARRED BY THE DOCTRINE OF CLAIM PRECLUSION (RES JUDICATA).

Count 5 seeks to invalidate the Bay View by-laws as being in violation of Michigan statute. This challenge has already been attempted in State court and was rejected. As a result Count 5 is barred by the doctrine of claim preclusion or res judicata.

Numerous plaintiffs who are members of Bay View Association filed an action in Emmet County Circuit Court in April 2015 seeking a declaratory judgment that by-law 77-B – the membership provision in dispute in this litigation – was void under Michigan statute. (**Exhibit A**, Summons and Complaint). On cross-motions for summary disposition Judge Charles M. Johnson denied the plaintiffs' motion for summary disposition and granted the

---

[1] Count II alleges a Michigan constitutional violation and seeks, *inter alia*, damages. Aside from everything else, the claim for damages fails as a matter of law. *Jones v. Powell*, 462 Mich. 329, 335, 612 N.W.2d 423, 426 (2000) (There is "no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee . . ."). Beyond that, however, the two Michigan constitutional provisions plaintiff claims have been violated, art. 1, § 2 and art. 1, § 4, offer protections that are coterminous with their federal counterparts, as are the elements of a claim for their violation. That includes the requirement for state action. *Hinky Dinky Supermarket, Inc. v. Dep't of Cmty. Health*, 261 Mich. App. 604, 605, 683 N.W.2d 759, 760 (2004) ("The United States and Michigan constitutions preclude **the government from depriving** a person of life, liberty, or property without due process of law.") (Emphasis added). *Doe v. Dep't of Soc. Servs.*, 439 Mich. 650, 670–671, 487 N.W.2d 166, 174 (1992) ("However, a review of the jurisprudence and constitutional history of this state suggests the opposite—that our Equal Protection Clause was intended to duplicate the federal clause and to offer similar protection.") *Great Lakes Soc. v. Georgetown Charter Twp.*, 281 Mich. App. 396, 425, 761 N.W.2d 371, 389 (2008) ("there are no significant differences between the Michigan and United States constitutions with regard to the rights afforded or their interpretation.") *Reid v. Kenowa Hills Pub. Sch.*, 261 Mich. App. 17, 26, 680 N.W.2d 62, 68 (2004) ("Because the regulations set forth by the MHSAA constitute state action, we analyze plaintiffs' claim that the statute violates their religious freedom under Const 1963, art 1, § 4 using the compelling state interest test set forth in *McCready v. Hoffius,* 459 Mich. 131, 586 N.W.2d 723 (1998)"). Since there has been no state action, the claims under the Michigan constitution also fail.

defendants' motion for summary disposition in an Opinion dated June 26, 2015 and Order dated July 9, 2015. (**Exhibit B**, Opinion and Order).[2]

In Michigan (as in most if not all other jurisdictions) "res judicata" is also referred to as "claim preclusion." *Abbott v. Michigan*, 474 F.3d 324, 330–331 (6th Cir. 2007). "Under 28 U.S.C. § 1738, federal courts are required to give the judgments of state courts the same preclusive effect as they are entitled to under the laws of the state rendering the decision ..." *Exec. Arts Studio, Inc. v. City of Grand Rapids,* 391 F.3d 783, 795 (6th Cir.2004). "Michigan takes 'a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also **every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not**." *Adair v. State,* 470 Mich. 105, 680 N.W.2d 386, 396 (2004)." *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 841–42 (6th Cir. 2013) (Emphasis added).

In Michigan, "res judicata 'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.' [*Adair v. State,* 470 Mich. 105, 680 N.W.2d 386 (2004)] at 396." *Ludwig v. Twp. of Van Buren*, 682 F.3d 457, 460 (6th Cir. 2012). There can be no dispute the prior action was decided on the merits. There can also be no dispute that plaintiffs in the prior litigation could have raised the precise challenge on the precise grounds that is now being asserted.

---

[2] The Complaint and Judge Johnson's Opinion and the final order can all be considered by the Court without converting this into a Rule 56 motion. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.")

The question then is whether there is a sufficient identity of parties to allow application of the doctrine. A cynic might question whether a single entity plaintiff was created for this litigation, rather than naming multiple individual plaintiffs, precisely in an attempt to avoid the claim preclusion doctrine. Regardless of the answer to that question, claim preclusion still applies. The Michigan Supreme Court has explained the concept of privity in the context of claim preclusion:

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. *Baraga Co. v. State Tax Comm.,* 466 Mich. 264, 269–270, 645 N.W.2d 13 (2002). The outer limit of the doctrine traditionally requires both a "substantial identity of interests" and a "working functional relationship" in which the interests of the nonparty are presented and protected by the party in the litigation. *Id.,* quoting *Baraga Co. v. State Tax Comm.,* 243 Mich.App. 452, 456, 622 N.W.2d 109 (2000), citing *Phinisee v. Rogers,* 229 Mich.App. 547, 553–554, 582 N.W.2d 852 (1998)....

> Thus, for the purposes of the second *Sewell* [*v. Clean Cut Mgt., Inc.,* 463 Mich. 569, 575, 621 N.W.2d 222 (2001)] factor, a perfect identity of the parties is not required, only a "substantial identity of interests" that are adequately presented and protected by the first litigant. We find that the interests of the current plaintiffs were, for Headlee purposes, adequately represented by the plaintiffs in *Durant I.* The taxpayer parties all have the same interest: that mandated activities are funded as they are required to be under the Headlee Amendment. These interests were presented and protected by the extensive and thorough litigation that occurred in *Durant I.* Thus, we find the current taxpayer plaintiffs are in privity with the *Durant I* plaintiffs.

*Adair v. State*, 470 Mich. at, 122–123. (Footnotes omitted).

So too here the plaintiffs in the previous litigation had the same interests as the plaintiff in this case: that the membership by-laws are invalid under state statute. "Those interests were presented and protected by the extensive and thorough litigation that occurred" in the prior litigation. Claim preclusion applies and Count 5 must be dismissed.

## **RELIEF REQUESTED**

The defendants respectfully request the Court grant their Motion for Partial Judgment on the Pleadings and issue an order dismissing Counts 1, 2 and 5 of the Amended Complaint and the claims for damages.

Respectfully submitted,

DATED:  April 23, 2018          PLUNKETT COONEY

BY:   /s/Michael S. Bogren
        Michael S. Bogren (P34835)
        Attorney for Defendants
        950 Trade Centre Way, Suite 310
        Kalamazoo, MI  49002
        Direct Dial:  269/226-8822

Open.00391.72232.20215987-1