## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**BAY VIEW CHAUTAUQUA**
**INCLUSIVENESS GROUP,**                    CASE NO. 17-cv-0622-PLM-RSK

      Plaintiff,

vs.                                          HON. Paul L. Maloney

**THE BAY VIEW ASSOCIATION OF**          **Plaintiff's Motion for Judgment on**
**THE UNITED METHODIST CHURCH**, et al.,  **the Pleadings and Brief in Support**

      Defendants.                         **ORAL ARGUMENT REQUESTED**

---

Sarah S. Prescott (P70510)                  Michael S. Bogren (P34835)
SALVATORE PRESCOTT & PORTER, PLLC           PLUNKETT COONEY
Attorneys for Plaintiff                     Attorneys for Defendants
105 East Main Street                        950 Trade Centre Way, Suite 310
Northville, MI 48167                        Portage, MI 49002-0493
(248) 679-8711                              (269) 226-8822
prescott@spplawyers.com                     mbogren@plunkettcooney.com

---

### PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

NOW COMES Plaintiff, by and through its attorneys of record, Salvatore Prescott & Porter, PLLC, and for its Motion for Judgment on the Pleadings, states as follows:

1.    Defendant Bay View is endowed with state powers and is a political/municipal body, meaning that its policies and practices must adhere to the U.S. and Michigan Constitutions.

2.    However, by undisputed policy and practice, Defendants prefer the Christian religion to other religions, creating an unlawful establishment that must be enjoined. Specifically, Defendants permit only Christians to purchase cottages within their town, in violation of the State and Federal Constitution.

3.      This practice not only violates the First Amendment, but it plainly violates civil rights laws,

namely the Fair Housing Act and Michigan's Elliott-Larsen Civil Rights Act.

4.      Defendants fit no exemptions to these Acts for multiple, overlapping reasons.

5.      Because Federal and State law permit an injunction against further acts of discrimination

and declaratory judgment, this Court is empowered to act immediately to stop the admitted practice

of favoring the Christian religion and violating fair housing laws.

    WHEREFORE, Plaintiff urges this Court to grant this motion, filed under Federal Rule of

Civil Procedure 12(c), and afford the equitable relief requested within.

<div style="margin-left:40%">

Respectfully submitted,
SALVATORE PRESCOTT &
PORTER, PLLC

 /s/ Sarah S. Prescott
_____
Sarah S. Prescott (P70510)
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
prescott@spplawyers.com

</div>

Dated: April 23, 2018

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**BAY VIEW CHAUTAUQUA**
**INCLUSIVENESS GROUP,**                    CASE NO. 17-cv-0622-PLM-RSK

      Plaintiff,

vs.                                          HON. Paul L. Maloney

**THE BAY VIEW ASSOCIATION OF**          **Plaintiff's Brief in Support of Motion for**
**THE UNITED METHODIST CHURCH**, et al.,  **Judgment on the Pleadings**

      Defendants.                   **ORAL ARGUMENT REQUESTED**

---

Sarah S. Prescott (P70510)              Michael S. Bogren (P34835)
SALVATORE PRESCOTT & PORTER, PLLC       PLUNKETT COONEY
Attorneys for Plaintiff                 Attorneys for Defendants
105 East Main Street                    950 Trade Centre Way, Suite 310
Northville, MI 48167                    Portage, MI 49002-0493
(248) 679-8711                          (269) 226-8822
prescott@spplawyers.com                 mbogren@plunkettcooney.com

---

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

In Bay View, Michigan, a "community of cottages, lodgings, and multi-purpose buildings" located northeast of Petoskey, only Christians with a reference letter from a church leader where they attend or are members may own one of the more than 400 private cottages and two inns in town. Answer to Am. Compl. ¶¶ 1, 48, 66, 84-85 (PageID.341, 348, 351, 353).  This motion seeks declaratory and injunctive relief and judgment as a matter of law that this undisputed, ongoing practice violates State and Federal law.

**FACTUAL BACKGROUND**

**I.    Michigan's Summer Resorts Act of 1889 Endows Bay View With Substantial Governmental Powers**

Defendant Bay View Association of the United Methodist Church was incorporated under a unique Michigan law, the 1889 Summer Resorts Act, which delegates substantial government powers to summer resorts. Act 39 of the Public Acts of 1889, MCL § 455.51 *et seq*; Answer to Am. Compl. ¶ 25 (PageID.471-472); Am. Compl. ¶ 26 (PageID.344). Defendant Board of Bay View is the governing body of the Association, and Defendant Bay View Real Estate Management, Inc. is a Michigan corporation and wholly-owned, for-profit subsidiary of the Association, which manages Defendants' real estate operations. Am. Compl. ¶¶ 14, 15 (PageID.343). (Defendants are referred to collectively as "Bay View" unless otherwise noted.)

The Summer Resorts Act created Bay View as "**a body politic and corporate**" for the purpose of purchasing and improving lands to be occupied for summer homes.  MCL § 455.51 (emphasis added). The Act also delegates to Bay View various government powers, such as the power to levy and collect taxes, to deputize a marshal who "shall have the authority of a deputy sheriff" and who is authorized to make arrests, to appoint a board of assessors, and to control its lands. MCL §§ 455.58, 67-71 & 215. Under State law, penalties for violation of any of Bay View's bylaws may include *fines* and even *imprisonment*:

1

> Any person who shall violate any of such bylaws . . . shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding 25 dollars or imprisonment in the county jail not to exceed 30 days, or by both such fine and imprisonment in the discretion of the court, which fine shall go to the same fund as other fines for misdemeanor in the township where such association lands may be located.

MCL § 455.60.  In addition, the law also delegates to Bay View's Board "the management and control of the business, finances, rights, interests, buildings and all property, real and personal, of the corporation, and [the Board] shall represent the association with the full power and authority to act for it in all things whatsoever . . . " MCL § 455.58.

Consistent with the statutorily-delegated government authority described above, Bay View has incorporated municipal functions into its bylaws such as: describing the functions of the board of assessors (bylaws 23-27), providing that the Board may appoint marshals with the power to arrest (bylaw 28), authorizing fines and imprisonment for violations of the bylaws (bylaw 67), requiring building permits and architectural review of all cottage modifications (bylaw 40), requiring a permit to engage in commercial activity (bylaws 57-58), regulating personal conduct including the prohibition of gambling and drinking of alcoholic beverages in public buildings and the restriction of all activities on Sunday mornings (bylaws 59-64), and making Michigan traffic laws applicable in Bay View (bylaws 65-66). Current Bylaws, ECF No. 29-2 (PageID.368-416).

## II.     Bay View Requires Would-be Members to Pass a Religious Litmus Test, Limiting the Right to Own Private Property in Bay View to Practicing Christians

Bay View owns the real property within the Association's borders, but individual members own the more than 400 cottages and two inns situated there. Answer to Am. Compl. ¶ 66 (PageID.484); Current Bylaws, ECF No. 29-2 at 32-a (PageID.392). Membership in the Association is, in fact, a prerequisite to owning—whether by purchase or devise—a cottage in Bay View. Answer to Am. Compl. ¶¶ 84-85 (PageID.488); Current Bylaws ECF No. 29-2 at 1-a

2

(PageID.376). Bay View's current membership criteria require that all would-be members be "of the Christian persuasion" and that they provide a reference letter from "[t]he pastor or designated leader of the church the applicant is a member of or attends." *Id*. at 1-d. Bay View admits that this policy is actively enforced. Answer to Am. Compl. ¶¶ 84, 85 (PageID.488). Members of Plaintiff are harmed by the Christian membership requirement because, among other things, existing owners are unable to pass their cottages to family members including spouses, children and grandchildren who do not meet the religious test; also, prospective owners who do not meet the religious test are unable to purchase homes in the community and are thus relegated to renting.

## III. Despite Bay View's Historical Operation Independent from Any Church, Bay View Has Recently Attempted to Formally Align Itself with the United Methodist Church to Circumvent Federal and State Anti-Discrimination Statutes

Bay View has always operated independently from any church. As it admits, Bay View has never in its history entered into any affiliation with the United Methodist Church or any other church. Answer to Am. Compl. ¶ 65 (PageID.483-484). Moreover, the United Methodist Church has not historically voted on or controlled Bay View's operations, and the organization has never selected its Trustees based on the dictate of any church. *Id.* at ¶¶ 69-70 (PageID.484). Bay View admits that in 2013, it filed articles of amendment with Michigan's Department of Licensing and Regulatory Affairs ("LARA") on an *ecclesiastical* corporation form, which LARA rejected. Answer to Am. Compl. ¶ 51 (PageID.480); 7/10/13 LARA Determination, ECF No. 29-7 (PageID.443-445).

Despite Bay View's historical independence from any church, in 2007, Bay View revised its bylaws to mandate that 60% of Board trustees "shall be members of The United Methodist Church whose election shall be ratified by the West Michigan Conference of the United Methodist Church ('the Church')" (bylaw 2), and that if the Association is dissolved, its assets will be

3

transferred to the Church (bylaw 75-b), and that changes to these new items (2 and 75-b) must henceforth be approved by the Church (77-b). Current Bylaws, ECF No. 29-2 (PageID.368-416).

The above bylaw changes occurred entirely *internally* and never received recognition by the State of Michigan. Indeed, Bay View repeatedly attempted to amend its Articles of Incorporation to align with the 2007 bylaw changes, and to grant the United Methodist Church certain control rights over Bay View's affairs in the eyes of the State. Answer to Am. Compl. ¶ 53 (PageID.480); Rejected Articles, ECF No. 29-9 (PageID.455-462). The would-be amendments contained text pulled verbatim from exemptions to the anti-discrimination provisions found in the Federal Fair Housing Act and Michigan's Elliott-Larsen Civil Rights Act which are discussed below, i.e., Bay View sought to establish that it "is operated, supervised or controlled by" the United Methodist Church. However, as all sides admit, LARA refused to allow the amendment, finding no statutory authority for the revision and noting that "MCL 455.51," not the vote of current members attempting to change the bylaws, "provides the purposes of a summer resort association." *Id.*

## STANDARD OF REVIEW

Courts grant Rule 12(c) motions for judgment on the pleadings where, after taking as true all well-pleaded material allegations of the opposing party, the moving party is nevertheless clearly entitled to judgment. *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007). A motion under Rule 12(c) turns on legal issues, not disputed facts. *Jones v. Pramstaller*, 678 F. Supp. 2d 609, 614 (W.D. Mich. 2009) (Maloney, J.). While this Court must construe the complaint in the light most favorable to the non-moving party, the court may "take into account items appearing in the record and attached exhibits" as well as any other items of public record without converting the motion into one for summary judgment. *Id.* at 615 (internal citations and quotation

4

marks omitted).

# ARGUMENT

I.    **Bay View is Liable for Violation of the First Amendment Per 42 U.S.C. § 1983.**

The following facts are admitted or uncontested within the answer to the complaint in this matter:

- ALLEGATION 13. Defendant Bay View is a Summer Resort and Assembly Association organized under Act 39 of the Public Acts of 1889, MCL § 455.51 et seq.

- ALLEGATIONS 44, 48, 50, which contain the operative articles and bylaws of Bay View.

- ALLEGATION 84. [Per those bylaws] Only members of the Bay View Association may own a cottage in Bay View. To be a member, a person must be a member of or attend a Christian church.

A.    **Bay View is a "Person" Liable for its Officially-Promulgated Practices and Procedures**

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

It is a matter of first impression whether the "Summer Resort" entity at issue in this case is a municipal entity whose policies and practices afford relief under § 1983. The decision, however, should not be a difficult one, since Michigan's 1889 Summer Resort Act provides that all associations formed under the Act, including Bay View, comprise "***a body politic and corporate***." MCL § 455.51. This is the very same expression used elsewhere to describe counties (*see, e.g.,* MCL § 45.3) and villages (*see, e.g.,* MCL § 61.12). The U.S. Supreme Court definitively put to rest any question whether such entities may be liable under § 1983 in *Monell v. Department of*

*Social Services of City of New York*, 436 U.S. 658 (1978):

> That the "usual" meaning of the word "person" would extend to municipal corporations is also evidenced by an Act of Congress which had been passed only months before the Civil Rights Act was passed. This Act provided that
>
>> "in all acts hereafter passed . . . ***the word 'person' may extend and be applied to bodies politic and corporate*** . . . unless the context shows that such words were intended to be used in a more limited sense." Act of Feb. 25, 1871, § 2, 16 Stat. 431.
>
> Municipal corporations in 1871 were included within the phrase "bodies politic and corporate" and, accordingly, the "plain meaning" of § 1 is that local government bodies were to be included within the ambit of the persons who could be sued under § 1 of the Civil Rights Act.

*Id.* at 688-90 (emphasis added).

In *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989), the United States Supreme Court identified the term "body politic and corporate," as the "most exact expression" for a "public corporation" or a "corporation having powers of government." *Id.* at 70, fn. 9 (citing sources, including Black's Law Dictionary 143 (1891), which defined "body politic" as the "term applied to a corporation, which is usually designated as a 'body politic and corporate'" and "is particularly appropriate to a *public* corporation invested with powers and duties of government").

A thorough search of law has disclosed *no* "body politic and corporate" created as a vessel of state power which has *not* been held to be liable as a state actor under § 1983 for its officially promulgated policies and acts.

Beyond explicitly defining Bay View's very existence as public, the delegation of public *functions* within the 1889 Act confirms its governmental nature. By statute, Bay View has the power to: appoint a marshal (MCL §§ 455.61 and 62); enforce laws including the power of arrest (MCL § 455.68); form a board of assessors (MCL §§ 455.68-71); levy and collect taxes (MCL § 455.67); control its lands (MCL § 455.58); and many other police powers typically reserved to

6

townships and cities cited above. Indeed, as set forth above, any person violating Bay View's by-laws may be deemed guilty of a misdemeanor, fined or imprisoned.  MCL § 455.60.

In *Baldwin v. North Shore Estates Association*, 179 N.W.2d 398 (Mich. 1970), the Michigan Supreme Court addressed itself to a community created under a sister statute, MCL § 455.201 *et seq*. In that community, the board had similar powers to maintain a road, provide for common needs, and call elections. *Id*. at 399. The Court held (just as Plaintiff argues here) that the U.S. Constitution bound the defendant association, a public entity, "since corporations authorized by the statute in question clearly possess many quasi-governmental characteristics." *Id*. at 403. Michigan's Attorney General also has opined that such associations are public in nature and, therefore, FOIA applies (OAG, 1997, No. 6942) (delegations almost identical to the delegation of authority here afford "substantial authority which is governmental in  character and which clearly may affect the rights of the public" such that FOIA applies to these entities).

In that Bay View is a political entity similar to a county or municipality, the next question the Court must answer is when its actions occur under color of law. The Supreme Court set forth in *Monell* what type of activity or action would suffice to establish liability—that is, constitute action under color of law. It held:

> [M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, ***the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers***. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690–91 (emphasis added, footnotes omitted). The bylaws and Articles of Bay

View are such official, disputed policies, and moreover, the custom of excluding non-Christians is admitted in the Answer to the Complaint. In other words, exclusion of non-Christians from Bay View is not an ultra vires or random act, and it is not the act of an agent or subordinate, but rather, it is the official policy of the Defendants, for which Defendants can be liable.

Notably, it is specifically in its exercise of state-delegated powers that Bay View violates the First Amendment. The State affords it "the management and control of the business, finances, rights, interests, buildings and all property, real and personal, of the corporation…." MCL § 455.58. Bay View uses these specifically delegated powers to promulgate and enforce the religious test in dispute here.  Hence, the nexus between the state delegation of authority (power to set the terms of ownership) and the challenged action (use of the power to determine terms of ownership to exclude non-Christians) is unmistakable. As such, Plaintiff urges the Court to apply these precedents to hold that Bay View is a political entity subject to suit for its official policies and practices under 42 U.S.C. § 1983.

> **B.      Even If Bay View Were a *Purely Private* Corporation and *Not* a Political Entity Directly Delegated Governmental Authority, It Is Akin to a Company Town and Thus Accountable Under the U.S. Constitution**

The above section argues that Bay View is a *public* body whose official policies and practices subject it to possible liability under § 1983.  Even if this Court were not to agree, the Supreme Court has held that even purely *private* entities engage in "state actions" in situations identified by the following tests: (1) the public function, (2) state compulsion, and (3) the symbiotic relationship or nexus tests. Plaintiff submits that Defendants are liable under the public function test.

Under that test, a private entity is a state actor if it is delegated powers traditionally reserved exclusively to the state, such as assessing taxes, holding elections, and arresting individuals. *E.g.,*

*Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 637 (6th Cir. 2005). Whether an entity qualifies under this test, may be decided as a matter of law. *Id.*

*Marsh v. Alabama,* 326 U. S. 501 (1946) establishes how this test must be applied here. In *Marsh*, an individual was arrested while leafletting in Chickasaw, Alabama, which was entirely owned and operated by the Gulf Shipbuilding company. *Id*. at 502. Although the development was *not* created by State law, and although it enjoyed *none* of the statutory delegations of State authority that Bay View enjoys, the Supreme Court held its administration subject to constitutional dictates because it was sufficiently similar to a public entity:

> Except for (ownership by a private corporation) [the development] has all the characteristics of any other American town. The property consists of residential buildings, streets, a system of sewers, a sewage disposal plant and a 'business block' on which business places are situated. . . . In short the town and its shopping district are accessible to and freely used by the public in general and there is nothing to distinguish them from any other town and shopping center except the fact that the title to the property belongs to a private corporation.

*Id.* at 502-503. These same facts obtain here, where Bay View is empowered to operate and does operate "a community of cottages, lodges, and multi-purpose buildings" complete with streets, sewers, stop signs, etcetera. Answer to Am. Compl. ¶ 1 (PageID.467). Indeed, since Bay View enjoys many delegated governmental powers and is defined by State law as a public body, the case here is stronger than in *Marsh,* which involved a simple plot of land developed by a private corporation.

Because it operates as a town, Bay View must provide the same constitutional protections to individuals that any other governmental body must provide.

## II.   Bay View Promotes Religion in Violation of the United States and Michigan Constitutions

While individuals are and should be forever free to practice their religions, our Founders recognized that a separation of "Religion and Civil Government is essential to the purity of

both . . . ." James Madison, Letter "To the Baptist Churches in Neal's Creek and on Black Creek, North Carolina," in LETTERS AND OTHER WRITINGS OF JAMES MADISON, FOURTH PRESIDENT OF THE UNITED STATES, IN FOUR VOLUMES, Vol. II, J. B. Lippincott & Co., Philadelphia, (1865) at 511-512. The Establishment Clause of the First Amendment to the United States Constitution therefore prohibits not only the establishment of a religion by the government, but the making of a rule or law "respecting the establishment of religion." U.S. Const., Amend. I. In *Country Mill Farms, LLC v. City of East Lansing*, 280 F. Supp. 3d 1029, 1050–51 (W.D. Mich. 2017), this Court laid out the basis for assessing an alleged violation of the Establishment Clause:

> The "touchstone" for evaluating Establishment Clause cases "is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion." *McCreary Cty., Kentucky v. ACLU of Kentucky*, 545 U.S. 844, 859, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005). The Supreme Court has described the language of the Establishment Clause as "at best opaque." *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). "The First Amendment contains no textual definition of 'establishment,' and the term is certainly not self-defining." *McCreary Cty.*, 545 U.S. at 874–75, 125 S.Ct. 2722. As a result of the less than precise language used, each "inquiry calls for line drawing; no fixed, per se rule can be framed." *Lynch v. Donnelly*, 465 U.S. 668, 678, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). When forced to draw lines between acceptable government action and prohibited government action, courts should keep in mind "the three main evils against which the Establishment Clause was intended to afford protection: 'sponsorship, financial support, and active involvement of the sovereign in religious activity.'" *Lemon*, 403 U.S. at 612, 91 S.Ct. 2105 (quoting *Walz v. Tax Comm'n*, 397 U.S. 664, 668, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970)). In each case, the court should consider whether the challenged law or conduct has a secular purpose, whether its principle or primary effect is to advance or hinder religion, and whether it creates an excessive entanglement of government with religion. *Lynch*, 465 U.S. at 678, 104 S.Ct. 1355; *Lemon*, 403 U.S. at 612–13, 91 S.Ct. 2105.
>
> In the years since *Lemon*, the Supreme Court has refined the first two prongs. *ACLU of Ohio Found., Inc. v. DeWeese*, 633 F.3d 424, 431 (6th Cir. 2011). The first prong in *Lemon* is now "the predominant purpose test." *Id.* (citing *ACLU of Kentucky v. Mercer Cty., Kentucky*, 432 F.3d 624, 635 (6th Cir. 2005)); *see McCreary Cty.*, 545 U.S at 860, 125 S.Ct. 2722 ("When the government acts with the ostensible and predominant purpose of advancing religion, it violates that Establishment Clause value of official religious neutrality, there being no neutrality when the government's ostensible object is to take sides."); *Satawa v.*

*Macomb Cty. Rd. Comm'n*, 689 F.3d 506, 526 (6th Cir. 2012) ("Under today's *Lemon* test, we ask: (1) whether the government's predominant purpose was secular ...."). For this inquiry, "we generally accept the government's stated rationale for its action." *Satawa*, 689 F.3d at 526. But, the court has a duty to determine whether the stated secular reason is genuine or a mere sham. *Id.* For the predominant purpose test, the court held that "[p]urpose is determined from the perspective of an objective observer, who is "credited with knowledge of 'readily discoverable fact,' including 'the traditional external signs that show up in the text, legislative history, and implementation of a statute, or comparable official act.'" *ACLU of Kentucky v. Grayson Cty., Kentucky*, 591 F.3d 837, 848 (6th Cir. 2010) (internal quotation marks omitted) (quoting *McCreary Cty.*, 545 U.S. at 862, 125 S.Ct. 2722). When considering purpose, the history and context of the government's action are significant. *DeWeese*, 633 F.3d at 432.

In the second prong of the *Lemon* test, the court considers the primary effect of the government's action. *American Atheists, Inc. v. City of Detroit Downtown Devel. Auth.*, 567 F.3d 278, 291–94 (6th Cir. 2009). The court should consider "whether 'the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices.'" *Grayson Cty.*, 591 F.3d at 854 (quoting *Cty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) *abrogated by Town of Greece, New York v. Galloway*, ––– U.S. ––––, 134 S.Ct. 1811, 188 L.Ed.2d 835 (2014)). Where purpose considers the intended effect, the second inquiry of the *Lemon* test considers the actual effect. *Id.* (citing *Adland v. Russ*, 307 F.3d 471, 484 (6th Cir. 2002)). The second inquiry also uses the standard of an objective observer. *Id.* "'If context, history, and the act itself sends the unmistakable message of endorsing religion, then the act is unconstitutional.'" *Id.* (quoting *Mercer Cty.*, 432 F.3d at 637).

As is readily observed from the four corners of the bylaws and Articles at issue, Defendants purposefully promulgate the Christian religion. There is no question but that the animating purpose of its *explicitly religious* litmus test is *religious*. As such, the challenged policies fail the first prong of the *Lemon* test. Plaintiff anticipates Defendants will not even attempt to argue otherwise.

The answer to the Complaint further relays the primary *effect* of Bay View's policies: one must be a practicing Christian (with a Christian minister's written "approval") to own a home in Bay View. This amounts to a failure of the second prong of *Lemon*. Defendants do not even dispute that they endorse the Christian religion.

In settlement discussions, Defendants have cited *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), as support for the proposition that private entities are free to exclude those whose speech they do not wish to support.  The question the Court took up in that case, in its own words, was whether a state "may require private citizens who organize a parade to include among the marchers a group imparting a message the organizers do not wish to convey." *Id.* at 559. Aside from the complete lack of factual similarity to this case, *Hurley* pertained to a *private* march, not a public entity explicitly endorsing a preferred religion. This case involves a "body politic" entrusted with significant state power, misusing specifically that state-delegated power to create a landlord class made up of a preferred religious group. Nothing in *Hurley* endorses such a result. Because Defendants' conduct fails the *Lemon* test, it reflects an unconstitutional establishment that must be declared unlawful.

Bay View's religious test also violates the Michigan constitution. In Article 1 it provides, "The civil and political rights,   privileges and capacities of no person shall be diminished or enlarged on account of his religious  belief." Mich. Const. 1963, art 1, Sec. 4. Michigan courts apply this provision and the Establishment Clause of the First Amendment effectively identically. *Alexander v.  Bartlett*, 165 N.W.2d 445, 448 (Mich. App. Ct. 1968); Advisory Opinion re Constitutionality of PA 1970, No 100, 180 N.W.2d 265, 274 (Mich. 1970).  For the reasons set forth above, Plaintiff respectfully urges that Defendants' conduct cannot pass muster under Michigan's constitution.

## III.    Bay View's Discriminatory Practices Violate Fair Housing Laws

It is undisputed that section 1-d of the Bay View bylaws requires Christian practice and the reference letter of a pastor for cottage ownership. Answer to Am. Compl. ¶¶ 48, 84 (PageID.479, 488). Further, this discriminatory policy is actively enforced. *Id*. Of importance

relative to the Federal Fair Housing Act ("FHA") and Michigan's Elliott-Larsen Civil Rights

Act ("ELCRA"), Bay View further admits the following facts:

- ALLEGATION 13. Defendant Bay View is a Summer Resort and Assembly Association organized under Act 39 of the Public Acts of 1889, MCL § 455.51 et seq.

- ALLEGATION 65. Neither the United Methodist Church, nor any other church, has entered any formal affiliation agreement with Bay View in its history, to operate or control Bay View.

- ALLEGATION 66. Individuals privately own and operate each of the more than 400 cottages and the two inns within Bay View.

- ALLEGATION 69. Bay View does not, and has never, selected its Trustees based on the dictate of any church.

- ALLEGATION 70. The United Methodist Church has not historically voted on or otherwise controlled Bay View's operations.

- ALLEGATION 71. A Methodist Bishop who serves *ex officio* on the Defendant Board "does not vote."

- ALLEGATION 72. Bay View selects a Director of Religious Life with no approval required by the United Methodist Church, and this Director is not required to be a United Methodist.

- ALLEGATION 91. Some members own more than one cottage and rent them for income or they rent to their family, for all or part of each season. Several cottages appear for short-term rent on the Airbnb.com web site as well.

- ALLEGATION 118. The cottages at issue in this suit are buildings or structures occupied as or designated or intended for occupancy as residences of one or more families.

### A.    Bay View Clearly Violates the FHA

The FHA prohibits discrimination in selling, renting, and negotiating for the sale of

dwellings on the basis of religion. 42 U.S.C. § 3604(a)-(d). Since Bay View concedes (e.g.

Allegation 118) that its cottages are intended for occupancy as family residences, they are

"dwellings" within the meaning of the FHA. *See* 42 U.S.C. § 3602(b).  Because Bay View openly

13

discriminates on the basis of religion, its only defense to Plaintiff's FHA claim is that it qualifies for exemption from the FHA.

Bay View bears the burden of establishing any exemption applies. *Fair Hous. Advocates Ass'n, Inc. v. City of Richmond Heights, Ohio*, 209 F.3d 626, 634 (6th Cir. 2000). The FHA's stated policy is "to provide, within constitutional limitations, for fair housing throughout the United States" and this Court is called upon to generously construe the FHA to further the "broad and inclusive" aims of its protections. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (internal citations and quotations omitted). The Sixth Circuit in particular has mandated that exemptions from the [FHA] "be construed narrowly, in recognition of the important goal of preventing housing discrimination." *Fair Hous. Advocates Ass'n,* 209 F.3d at 634 (emphasis added).

Based on Bay View's own admissions, it cannot qualify for the only conceivably applicable exemption, the religious organization exemption. The exemption provides:

> Nothing in this subchapter shall prohibit a religious organization, association, or society, or any nonprofit institution or organization operated, supervised or controlled by or in conjunction with a religious organization, association, or society, from limiting the sale, rental or occupancy of dwellings which it owns or operates for other than a commercial purpose to persons of the same religion, or from giving preference to such persons, unless membership in such religion is restricted on account of race, color, or national origin.

42 U.S.C. § 3607(a). Bay View cannot satisfy this exemption for four independent reasons.

First, and most straightforward, Defendants do not own or operate the cottages at issue. Rather, the cottages are privately held and operated, which Bay View has admitted. Answer to Am. Compl. ¶ 66 (PageID.484). Beyond Defendants' controlling admission as to ownership, Michigan's Court of Appeals has recognized the private ownership of the cottages as well. In *Bay View Association v. Township of Bear Creek and the Department of Treasury*, it observed, "All of the

14

cottages are privately owned….” 2015 WL 493355, at *5 (Mich. App. Ct. Feb. 5, 2015) (Ex. A).

This failure to satisfy the plain language of the religious organization exemption is dispositive without further analysis. *E.g., Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984) (rejecting “nonliteral reading” of tax statute requested “on grounds of equity to the repentant taxpayer,” explaining that when courts examine a statute “which must receive a strict construction,” they “are not authorized to rewrite [the] statute because they might deem its effects susceptible of improvement”), *United States v. Wilcox*, 2010 WL 55964, at *5 (W.D. Mich. Jan. 4, 2010) (Maloney, J.) (explaining that where statutory language is unambiguous, “the court’s inquiry must cease”) (Ex. A). This first obstacle to applying the exemption is sufficient, without more. *Cf. Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 184 (1st Cir. 1994) (holding that all preconditions to a single FHA exemption are “cumulative” such that if any part is unsatisfied, the exemption cannot apply).

A second, separately sufficient reason Bay View cannot fit the exemption is that its cottages are privately owned and disposed of *for commercial purposes*. “Commercial activity” in the exemption is not defined, nor has the Sixth Circuit adopted a definition.  The Tenth Edition of Black’s Law Dictionary defines “commercial activity” as “[a]n activity, such as operating a business, conducted to make a profit.” *Black’s Law Dictionary* (10th ed. 2014).  This is also the definition adopted by the only case to consider this provision that could be located.

The fact that Bay View operates for-profit was established (or is at least inherent) in the decision of *Bay View Association v. Township of Bear Creek*. In that matter, Bay View attempted to argue that its lands were held and operated for charitable, non-profit purposes, to secure favorable taxation. 2015 WL 493355, at *4 (Ex. A). In addition to recognizing that all cottages were “privately owned” the Court rejected the notion that the many religious or enrichment

activities that Bay View sponsors can alter its primary identity as a tony summer resort. *Id.* at *5. The Court explained, "[w]hile the numerous charitable and benevolent activities petitioner engages in are certainly admirable, it appears petitioner's primary purpose is to provide an exclusive summer vacation community to those who meet its restrictive membership requirements and have the financial means to purchase a summer cottage." *Id.*

Bay View also admits that its members rent their cottages for income for all or part of each season, including short-term rentals on websites like Airbnb.com. Answer to Am. Compl. ¶ 91 (PageID.489). This differentiates Bay View from a group home owned, for example, by a seminary or parish and offered to clergy without expectation of profit. Because Defendants cannot and will not argue to this Court that the dwellings of Bay View at issue are bought and sold or rented or used *other than* for individuals' profits, the religious exemption does not apply.

The two points above each independently suffice to grant this motion. However, it is also the case that Bay View's requirements for membership and trusteeship are not specific to United Methodists. Rather, the bylaws favor individuals "of Christian persuasion." Current Bylaws, ECF No. 29-2 at 1-d (PageID.376). By contrast, the FHA exemption at issue contemplates "a religious organization . . . limiting the sale, rental or occupancy of dwellings . . . to persons ***of the same*** religion . . ."

Again, as set forth above, the exemption is to be read strictly and narrowly. If there is any question whether the phrase "***the same*** religion" may be read as an invitation to equate Roman Catholics, Latter-Day Saints, Seventh-Day Adventists, Pentecostalists, Jehovah's Witnesses, Eastern Orthodox Catholics, Anglicans, Lutherans, Presbyterians, Unitarians, Hussites, Episcopalians, Christian Scientists and many more "of Christian persuasion," then this motion must be granted. That is true because, again, the exemption is to be read narrowly and the burden is on

16

Defendants to show that they fit within it. Plaintiff submits that the proposition that these faiths—which have unique histories, ecumenical hierarchies, doctrines, practices, and even foundational texts—are "*the same* religion" is impossible to defend.  After all, wars have literally been fought over their adherents' fervent conclusions that they are *not* "the same." Nor can Defendants readily establish that all those "of Christian persuasion" are of "*the same* religion," when they themselves enforced a limitation or quota on Catholic ownership until the 1980s. *See* Am. Compl. ¶ 46 (PageID.348).

In addition to the above three independently sufficient reasons *not* to apply the exemption at issue, Bay View is not a religious organization, association, or society, nor is it operated, supervised, or controlled by or in conjunction with a religious organization. Bay View admits that it is "a Summer Resort and Assembly Association organized under Act 39 of the Public Acts of 1889, MCL § 455.51 et seq." Answer to Am. Compl. ¶ 13 (PageID.469). It may be such an entity with a religious history, but even certain States had religious founders, including Utah and Pennsylvania. That does not mean that they are somehow exempt from Federal laws.  Bay View's corporate existence as a political entity under State law could not be clearer. Moreover, defining property and property rights is the province of State law, not Federal law. *Paul v. Davis*, 424 U.S. 693, 709 (1976).

If the enabling legislation were remotely unclear, Michigan's Supreme Court established that summer resorts like Bay View are not "religious adjunct[s]" in *Terpening v. Gull Lake Assembly of Michigan Conference of Methodist Protestant Church*, 299 N.W. 165, 167 (Mich. 1941).  In that case, the entity at issue was incorporated under the same Summer Resorts Act at issue here; the entity involved was known as the Gull Lake Assembly of Michigan Conference of Methodist Protestant Church.  *Id*. at 166. The defendants were the officers of the Assembly, and

"considering its religious purpose," they wanted to wind down the entity for the "interest and benefit of the Methodist Protestant Church, to further the work and interests of the church." *Id.* The Supreme Court refused this request, holding that "[t]he Assembly was a summer resort association with mundane and pecuniary considerations so predominant as to bar holding it a religious adjunct . . . ." *Id.* at 167.

Turning to Bay View's own history, in 2013, it filed articles of amendment with LARA on an ecclesiastical corporation form, which that agency rejected. Answer to Am. Compl. ¶ 51 (PageID.480); 7/10/13 LARA Determination, ECF No. 29-7 (PageID.443-445). Thereafter Bay View repeatedly attempted—unsuccessfully—to amend its Articles of Incorporation by pulling language verbatim from the FHA's religious exemption to establish that Bay View is "operated, supervised or controlled by the United Methodist Church." Michigan's Department of Licensing and Regulatory Affairs (LARA) rejected the following language of the proposed amendments:

> REJECTED:  In furtherance of its exempt purposes within the meaning of section 501(c)(3) of the  Internal Revenue Code, the organization is organized and operated exclusively for the   benefit of, to perform the functions of, or to carry out the purposes of the United  Methodist Church and is operated, supervised or controlled by the United Methodist  Church.

> REJECTED:  At all times, at least sixty percent of the members of the organization's Board of Trustees   must be appointed by the West Michigan Conference of the United Methodist Church, an  organization required to act in accordance with The Book of Discipline of the United  Methodist Church.

> REJECTED:   Any amendments to the following provisions shall require the approval of the West  Michigan Conference of the United Methodist Church: Article III, Section 2; Article VII,   Section 2, Article X and Article XII.

*See* LARA Determinations, ECF No. 29-9 (PageID.455-462).

As demonstrated by these would-be governance changes, Bay View's current officers clearly wish Bay View had a different, ecclesiastic corporate form than it actually has. But nothing in the FHA, or precedent interpreting it, permits this Court to rule, based on what a litigant seeking

a statutory exemption cites as its mission or organizing ethos. Rather, the Court is required to rule based on what the entity actually *is*. A religious entity is a distinct creature under Michigan law, *see* MCL § 450.178, while Bay View is a summer resort, as all parties agree.

Nor can Bay View show that it fits into the second sub-category for exemption: that it is "operated, supervised, or controlled by or in conjunction with" the United Methodist Church. As reviewed above, Bay View admits that it has never entered any formal affiliation with any church to operate or control Bay View, that it has never selected its Trustees based on the dictate of any church, that the United Methodist Church has not historically voted on or otherwise controlled Bay View's operations, and that while a Methodist Bishop serves *ex officio* on the Bay View Board, he does not vote. Answer to Am. Compl. ¶¶ 64, 69-71 (PageID.483, 484-485). Other facts admitted in the Answer and cited above indicate that Bay View rentals are permitted without any attention at all to the religion of the renter. As a result, the "community" actually present any given summer is whatever mix the owners want, based on going rental rates.  This is why Michigan's Courts have recognized Bay View's central purpose is to provide a "summer vacation community to those who …have the financial means" to pay the going rates, as cited above.

While the Sixth Circuit has not interpreted this portion of the exemption, the Third Circuit has done so in a matter rather like this case. In *United States v. Columbus Country Club*, it concluded that a country club did not meet the criteria for exemption from the FHA because it was not operated, supervised, or controlled by or in conjunction with the Roman Catholic Church, as argued by its organizers. 915 F.2d 877, 883 (3d Cir. 1990).

The country club in that case restricted ownership of its 46 summer homes to members in good standing of the Roman Catholic Church. *Id.* at 879. Just as is admittedly the case here, the Columbus Country Club was not formally affiliated with the Roman Catholic Church, nor with

any Catholic organization. *Id*. It defended, however, on the ground that, from its inception in the 1920s, religious expression had been an integral feature of the community. *Id*. Just as in this case, its bylaws did not include a religious test until recent decades. *Id*. Nevertheless, the grounds had been dedicated in a special ceremony led by its spiritual director and two priests. *Id*. at 884 (dissent). Moreover, the Archbishop of Philadelphia had afforded the Club special permission to have mass celebrated in a chapel on the club grounds. *Id*. at 879.  The Court held that to be operated "in conjunction with" a church, "there must be a mutual relationship between the non-profit society and a religious organization" and that the relationship "cannot depend solely on the activities of the non-profit organization nor be viewed only from its perspective." *Id*. at 883.

Like the Columbus Country Club, Bay View admitted in the provisions highlighted above that it has no formal affiliation with a church, nor does any church operate or control its affairs. Individual Bay View home owners' individual relationships with the United Methodist Church may well be extensive, but Bay View itself does not operate at the direction of or otherwise "in conjunction with" the Church.

In sum, based on Bay View's admissions and controlling documents, it clearly cannot establish that it meets the Fair Housing Act's religious organization exemption.

### B.      Bay View Violates Michigan's ELCRA

The ELCRA prohibits discrimination based on religion. MCL § 37.2505. The entities that can be sued for such discrimination include an association, corporation, or a political subdivision of the state, including  a special district or authority of the state. MCL § 37.2103(g). By its own admission and in its bylaws, Bay View discriminates based on religion by prohibiting the sale and negotiation for sale of real estate to non-Christians and non-practicing Christians, as cited above. Accordingly, the ELCRA violation is unambiguous.

Bay View also fails to meet the requirements of the religious exemption to the ELCRA. This exemption, like the religious exemption to the FHA, is narrow and should be strictly construed:

> Sec. 505. (1) A condition, restriction, or prohibition, including a right of entry or possibility of reverter, that directly or indirectly limits the use or occupancy of real property on the basis of religion . . . is void, except a limitation of use as provided in section 503(1)(c) or on the basis of religion relating to real property held by a religious institution or organization, or by a religious or charitable organization operated, supervised, or controlled by a religious institution or organization, and used for religious or charitable purposes.

Bay View does not meet this exemption for three reasons argued and cited above: (1) the cottages at issue are not "held by" Bay View; they are privately owned. (2) The cottages are not used for religious or charitable purposes, but are private vacation homes. What is more, Bay View admits that "[s]ome of its members own more than one cottage and rent them for income . . . for all or part of each season" and that "[s]everal cottages appear for short-term rent" on Airbnb. Answer to Am. Compl. ¶ 91 (PageID.489). (3) Bay View is not a religious institution or organization, nor is it a religious or charitable organization operated, supervised, or controlled by a religious institution or organization. As noted above, a Michigan appellate court has already rejected Bay View's argument that its enrichment activities render it an operation for religious or charitable purposes. *See Bay View Association v. Township of Bear Creek*, 2015 WL 493355, at *5 (Ex. A).

Because Bay View cannot establish that it is a religious entity that owns the disputed cottages and uses them "for religious or charitable purposes," the anti-discrimination provisions of the ELCRA prohibit its discriminatory criteria for property ownership.

### AUTHORITY FOR RELIEF AND RELIEF REQUESTED

For the reasons set forth above, Plaintiff requests that this Court ***grant*** the foregoing motion for judgment on the pleadings pursuant to Rule 12(c) and ***declare*** void the challenged provisions

detailed in Exhibit A to the Amended Complaint (highlighting the precise language of the bylaw and Articles at issue) and permanently ***enjoin*** future enforcement of those provisions. ECF No. 29-2 (PageID.368-416).

28 U.S.C. § 2201(a) empowers this Court to afford declaratory relief. Such relief will "serve a useful purpose in clarifying the legal relations at issue" by "putting the public on notice" that a given practice is unconstitutional. *Hanas v. Inner City Christian Outreach, Inc.,* 542 F. Supp. 2d 683, 693 (E.D. Mich. 2008). Absent this step, there is "some likelihood of the recurrence" of these kinds of constitutional torts. *Id.* Nor is there any state court action or mere procedural jousting at issue to weigh against such relief. Rather, declaring the policies identified in Exhibit A void would go far toward resolving this matter.

The FHA and ELCRA offer independent and complementary bases for enjoining future enforcement of the provisions highlighted in Exhibit A to the Amended Complaint. 42 U.S.C. § 3613(c)(1); MCL § 37.2801. Moreover, this Court is to enjoin unlawful conduct under these acts without analysis of the usual criteria for granting injunctions. Where, as here "Congress has expressly authorized the granting of injunctive relief to halt or prevent a violation of [an Act of law], traditional equitable criteria[1] **do not govern** the issuance of preliminary injunctions." *CSX Transp., Inc. v. Tennessee State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992) (emphasis added). Instead, in determining whether or not to grant a request for injunctive relief under the FHA, "[t]he critical question . . . is whether a sufficiently flagrant violation of the plaintiffs' civil rights—the guidepost for granting FHA injunctive relief—has occurred." *Ueno v. Napolitano,* 2007 WL 1395517, at *4 (E.D.N.Y. May 11, 2007) (Ex. A). Put another way, the

---

[1] These *non-controlling* traditional criteria for assessing a preliminary injunction are the likelihood of success, inadequate legal remedy and public interest factors.

Court need "determine only whether there is 'reasonable cause' to believe that a violation . . . has occurred or is about to occur" in order to enjoin it. *CSX Transp. Inc.*, 964 F.2d at 551. "The Court must craft injunctive relief with a view toward the statute's goals of preventing future violations and removing lingering effects of past discrimination. The scope of the injunction is to be determined by the nature and extent of the legal violation." *United States v. Space Hunters, Inc.,* 2004 WL 2674608, at * 8 (S.D.N.Y. Nov. 23, 2004) (Ex. A).

As Defendants admit, their explicit religious test has been entrenched for more than fifty years. No remedy short of an injunction can end Bay View's ongoing unlawful practice.  Short of an injunction, members of the Bay View Chautauqua Inclusiveness Group will not be able to pass unique cottages—in some cases cottages owned by their families for generations—to their non-Christian spouses or children when they die, nor may others who cannot pass the Christian litmus test buy. As such, Plaintiff Bay View Chautauqua Inclusiveness Group respectfully urges this Court to act promptly to vindicate Federal and State civil rights guarantees.

<div style="margin-left:40%">

Respectfully submitted,
SALVATORE PRESCOTT &
PORTER, PLLC

 /s/ Sarah S. Prescott
_____
Sarah S. Prescott (P70510)
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
prescott@spplawyers.com

</div>

Dated: April 23, 2018

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**BAY VIEW CHAUTAUQUA**
**INCLUSIVENESS GROUP,**                    CASE NO. 17-cv-0622-PLM-RSK

     Plaintiff,

vs.                                         HON. Paul L. Maloney

**THE BAY VIEW ASSOCIATION OF**             **Certificate of Service**
**THE UNITED METHODIST CHURCH**, et al.,

     Defendants.

---

Sarah S. Prescott (P70510)              Michael S. Bogren (P34835)
SALVATORE PRESCOTT & PORTER, PLLC       PLUNKETT COONEY
Attorneys for Plaintiff                 Attorneys for Defendants
105 East Main Street                    950 Trade Centre Way, Suite 310
Northville, MI 48167                    Portage, MI 49002-0493
(248) 679-8711                          (269) 226-8822
prescott@spplawyers.com                 mbogren@plunkettcooney.com

---

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on April 23, 2018, the foregoing document was electronically filed with the Clerk of the Court using the Court's electronic filing system, which will send notification of such filing to all counsel of record.

Dated: April 23, 2018                 /s/ Tara L. Lank

                                Tara L. Lank, Legal Secretary