UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

BAY VIEW CHAUTAUQUA
INCLUSIVENESS GROUP,

      Plaintiff,                       Case No.  1:17-cv-00622-PLM-RSK

v.                                    HON. PAUL L. MALONEY

THE BAY VIEW ASSOCIATION OF
THE UNITED METHODIST CHURCH,
*a Michigan Summer Resort and Assembly
Association,* THE BOARD OF THE BAY
VIEW ASSOCIATION OF THE UNITED
METHODIST CHURCH, *its governing body,
and* BAY VIEW REAL ESTATE
MANAGEMENT, INC., *a domestic profit
corporation,*

      Defendants.
_____

| | |
|---|---|
| Sarah S. Prescott (P70510) | Michael S. Bogren (P34835) |
| Attorney for Plaintiff | Attorney for Defendants |
| SALVATORE PRESCOTT & PORTER, PLLC | PLUNKETT COONEY |
| 105 East Main Street | 950 Trade Centre Way, Suite 310 |
| Northville, Michigan  48167 | Kalamazoo, Michigan   49002 |
| (248-679-8711) | (269-226-8822) |
| Prescott@spplawyers.com | mbogren@plunkettcooney.com |

_____

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

      The defendants will address the arguments raised in plaintiff's Motion for Judgment

on the Pleadings in the order they are presented in plaintiff's Brief in Support.

      **1.      Bay View Association is not a state actor and is not subject to the First**

**Amendment or a claim under 42 U.S.C. § 1983 or the Michigan Constitution.**

Plaintiff attempts to hang its argument of state action from the gossamer thread of the phrase "body politic" in the enabling act. That flimsy strand will simply not bear rhe weight of plaintiff's argument.

M.C.L. 455.51 provides:

That any number of persons not less than 10, who may desire to form an association for the purchase and improvement of lands to be occupied for summer homes, for camp-meetings, for meetings and assemblies of associations and societies organized for scientific or intellectual culture and for the promotion of religion and morality, or any or all such purposes, may, with their associates, successors and assigns, **become a body politic** and corporate under any name by them assumed in their articles of incorporation, in the manner herein provided.

It is the highlighted language upon which plaintiff relies to argue Bay View is "a municipal entity whose policies and practices afford relief under § 1983." (Plaintiff's Brief in Support, p. 5). Plaintiff's argument is a house of cards that will not withstand even minimal probing.

Plaintiff argues that the term "body politic" "is the very same expression used elsewhere to describe counties (*see, e.g.* MCL § 45.3) and villages (*see, e.g.* MCL § 61.12)." (Plaintiff's Brief in Support, p. 5). Plaintiff then cites a statement from *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 688–689, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), that: "Municipal corporations in 1871 were **included** within the phrase "bodies politic and corporate" and, accordingly, the "plain meaning" of § 1 is that local government bodies were to be included within the ambit of the persons who could be sued under § 1 of the Civil Rights Act.". (Emphasis added; footnote omitted). The plaintiff then cites a portion of footnote 9 from *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), the Supreme Court decision holding that the States are not "persons" for purposes of § 1983. A full statement of footnote 9 is enlightening:

> See *United States v. Fox,* 94 U.S. 315, 321, 24 L.Ed. 192 (1877); 1 B. Abbott, Dictionary of Terms and Phrases Used in American or English Jurisprudence 155 (1879) ("most exact expression" for "public corporation"); W. Anderson, A Dictionary of Law 127 (1893) ("most exact expression for a public corporation or corporation having powers of government"); Black's Law Dictionary 143 (1891) ("**body politic**" is "**term applied to a corporation, which is usually designated as a 'body corporate and politic'**" and "is particularly appropriate to a *public* corporation invested with powers and duties of government"); 1 A. Burrill, A Law Dictionary and Glossary 212 (2d ed. 1871) ("**body politic" is "term applied to a corporation, which is usually designated as a *body corporate and politic*** "). A public corporation, in ordinary usage, was another term for a municipal corporation, and included towns, cities, and counties, but not States. See 2 Abbott, *supra,* at 347; Anderson, *supra,* at 264–265; Black, *supra,* at 278; 2 Burrill, *supra,* at 352.
>
> Justice BRENNAN appears to confuse this precise definition of the phrase with its use "in a rather loose way," see Black, *supra,* at 143, to refer to *the* state (as opposed to *a* State). This confusion is revealed most clearly in Justice BRENNAN's reliance on the 1979 edition of Black's Law Dictionary, which defines "body politic or corporate" as "[a] social compact by which the whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good." *Post,* at 2316. To the extent Justice BRENNAN's citation of other authorities does not suffer from the same confusion, those authorities at best suggest that the phrase is ambiguous, which still renders the Dictionary Act incapable of supplying the necessary clear intent.

*Will*, 491 U.S. at 70, n. 9. All three of the plaintiff's attempts to equate the term "body politic" with "municipal entity" are classic examples of the formal logical fallacy of the undistributed middle term. The plaintiff attempts to prove that Bay View is a "municipal entity" through this syllogism:

- Every municipal entity is a body politic;

- Bay View is a body politic;

- Therefore Bay View is a municipal entity.

In the plaintiff's syllogism the term "body politic" is undistributed and therefore invalid. Plaintiff's syllogism is as logically invalid as the following syllogism:

- All terrorists drink water;

- My grandfather drinks water;

- Therefore my grandfather is a terrorist.

For the conclusion in plaintiff's syllogism to follow logically, the major premise would have to be restated as: "Every body politic is a municipal entity," not "Every municipal entity is a body politic." The restated major premise would distribute the term "body politic." But this distribution is not what is asserted in the original syllogism. In the original syllogism, the middle term is undistributed in both premises and is therefore invalid. Every body politic is **not** a municipal entity.

A review of Michigan statutes also demonstrates the fallacy of the plaintiff's argument. Plaintiff's argument focuses on the fact that M.C.L. 455.51 states that an entity formed under the Act is "a body politic and corporate." This argument collapses on itself when one considers the other Michigan statutes that identify entities as "a body politic and corporate." Michigan statutes allow the following groups to incorporate, and once incorporated identify the entity as "a body politic and corporate:"

- State granges ("a state grange of the patrons of husbandry of the state of Michigan") (M.C.L. 453.2; 453.4)

- Mechanics' associations (M.C.L. 454.1; 454.2)

- Arbeiter bunds (M.C.L. 454.101; 454.104)

- Societies for promotion of trade and labor (M.C.L. 454.151)

- Builders and trades exchanges (M.C.L. 454.201; 454.202)

- Cremation companies (M.C.L. 456.201)

- Burial vault associations (M.C.L. 456.251)

- St. George's societies M.C.L. 457.1; 457.3)

- St. Patrick societies (M.C.L. 457.31; 457.33)

- Ancient Order of Hibernians (M.C.L. 457.41; 457.43)

- Loyal Orange Institution (M.C.L. 457.51; 457.53)

- St. Jean Baptiste societies (M.C.L. 457.61; 457.63)

- Free and Accepted Masons (M.C.L. 457.231)

- Royal Arch Masons (M.C.L. 457.241)

- Knights of Pythias (M.C.L. 457.351)

- Lodges of Elks (M.C.L. 457.301)

- Social Order of Moose (M.C.L. 457.401)

This is just a representative sample of the groups that become a "body politic" upon incorporating. Even more damning to plaintiff's argument is the fact that Michigan statutes identify numerous ecclesiastical corporations as "bodies politic." The following religious groups become "bodies politic" upon incorporation:

- Methodist Episcopal Church (M.C.L. 458.24)

- Wesleyan Methodist Church (M.C.L. 458.44)

- Methodist Protestant church (M.C.L. 458.64)

- Free Methodist Church (M.C.L. 458.84)

- Protestant Episcopal Church (M.C.L. 458.251)

- Evangelical Churches (M.C.L. 458.454)

The fact that these religious groups – ecclesiastical corporations – become a "body politic" upon incorporation dooms plaintiff's argument. If plaintiff's argument is correct, then the religious exemption contained in Title VIII, 42 U.S.C. § 3607(a), is completely

meaningless because these churches would be municipal entities subject to the First Amendment, and would not be able to invoke the religious exemption in Title VIII (or Title VII) that Congress intentionally created. That is not the state of the law nor has it ever been. Plaintiff's contention that state statute has "explicitly defin[ed] Bay View's very existence as public," (Brief in Support, p. 6) is exposed as the empty rhetoric that it really is. The plaintiff's argument lacks any substance and must be rejected.

Plaintiff then attempts to equate Bay View – which is a Summer Resort and Assembly Association organized under Act 39 of the Public Acts of 1889, – with a Summer Resort Owners' Association formed under Act 137, P.A. 1929. The First Amended Complaint acknowledges Bay View is the former, not the latter. (FAC, ¶ 13; FAC, Exhibit D). However, in its Brief in Support plaintiff ignores the distinction between the two types of entities and blithely asserts the two entities have "similar powers." (Brief in Support, p. 7). Once again, plaintiff engages in hyperbole and blatant exaggeration in an attempt to prove a point that is counter-factual. M.C.L. 455.204, addresses the power and authority of Summer Resort Owners' Associations:

> On compliance with the foregoing provisions of this act, the persons so associating, their successors and assigns, shall become and be a body politic and corporate, under the name assumed in their articles of association and shall have and **possess all the general powers and privileges and be subject to all the liabilities of a municipal corporation** and become the local governing body.

(Emphasis added). On the other hand, M.C.L. 455.55 addresses the power and authority of a Summer Resort and Assembly Association (such as Bay View):

> Such corporation may improve and ornament its lands, erect and maintain churches, houses of worship, and other buildings thereon for its own use, or for the use and occupation of assemblies, societies and people who may desire the same, and may hold meetings, employ speakers and lecturers for the promotion of intellectual and scientific culture, religion and morals, and

may also lease portions of its lands to societies organized for the promotion of like purposes. It may cause its lands to be drained, construct docks necessary and convenient upon the banks or shores of any stream, bay or lake upon which its lands border, and may make such provision as may be necessary for supplying its grounds and the people thereon with water and for sanitary and fire purposes.

The differences between the two statutes are stark, especially the **absence** of the language that the entity shall "**possess all the general powers and privileges and be subject to all the liabilities of a municipal corporation"** in the statute that applies to Bay View. The absence of that language guts the plaintiff's argument.

Plaintiff cites *Baldwin v. North Shore Estates Ass'n*, 384 Mich. 42, 179 N.W.2d 398 (1970), as support for its argument. *Baldwin* does not assist the plaintiff because it addressed a Summer Resort Owners Corporation and not a Summer Resort and Assembly Association. The issue in *Baldwin* had to do with voting rights and the Court noted: "And since corporations authorized **by the statute in question** clearly possess many quasi-governmental characteristics, it is appropriate that the constitutional principles governing voter qualifications for similar local elections be generally applicable to elections conducted under section 6 of the act." *Id.* at 52 – 53. "The statute in question" explicitly defines a Summer Resort Owners Corporation as possessing "all the general powers and privileges and be subject to all the liabilities of a municipal corporation." No similar language is found in the statute that applies to Bay View. *Baldwin* does not assist the plaintiff. For the same reason the Attorney General Opinion plaintiff cites has no applicability to this case.

Plaintiff next falls back on various discrete grants of authority that *could be* exercised by Bay View. Plaintiff focuses on M.C.L. 455.61 which states: "The board of trustees **may**, for the preservation of peace and good order, appoint a marshal . . ."

(Emphasis added). What plaintiff ignores is that Bay View has explicitly denied in its Answer that it has ever appointed a Marshal. (Answer to FAC, ¶ 36). Beyond that, however, the inescapable flaw in plaintiff's argument is this: enforcement of the membership by-laws that plaintiff is challenging has nothing whatever to do with any authority given to Bay View by the State. Thus, there is no state action, no claim under 42 U.S.C. § 1983 and no First Amendment violation.

Plaintiff attempts to circumvent this gaping hole in the logic of its argument by claiming enforcement of the membership by-laws is made possible by M.C.L. 455.58 which states: "The board of trustees shall have the management and control of the business, finances, rights, interests, buildings and all property, real and personal, of the association, and shall represent the association with full power and authority to act for it in all things whatsoever, subject only to the provisions of this act and the by-laws of the association. . ." This authority, according to plaintiff, supplies the "nexus" to find State action.

Plaintiff is simply doubling down on its "body politic" argument. If the statute plaintiff cited supplies a sufficient nexus for state action, then literally every corporate entity in the State of Michigan is a state actor for purposes of § 1983 every time it takes any action. The authority in M.C.L. 455.58 is the same authority given to virtually every corporate entity under Michigan law. For example, M.C.L. 458.48 addresses the adoption of by-laws of Wesleyan Methodist ecclesiastical corporations:

> The persons forming such corporation may adopt bylaws, and execute and acknowledge them in the same manner as the articles of association above provided for, and such bylaws shall be retained by such corporation. Such bylaws shall prescribe the qualifications of members; the manner in which persons are to become members, or cease to be such; the officers of such corporation; their official titles; their term of office; the manner of their election and removal from office; their official duties; the time and manner of calling and holding meetings; the manner and condition under which

personal property and real estate may be acquired, held, and disposed of, and such other bylaws as may be deemed necessary for the management of the affairs of such corporation. Such bylaws shall also prescribe the manner in which they may be altered, amended, or repealed.

Similarly, M.C.L. 458.257 addresses the authority of the Vestry of the Episcopal Church:

The vestry shall have the care and management of all the temporal affairs of such church, and they shall have authority, in the corporate name, to lease or to purchase and hold such real estate as shall be reasonably necessary for a church building, chapel, parish house, lecture and school rooms, and for dwellings for the ministers thereof; . . . The said vestry shall also have power to alienate or encumber any of the property of said corporation . . . Said vestry shall have authority to erect, alter, repair, enlarge, take down or remove and rebuild any church or other building belonging to such corporation . . .

Under plaintiff's logic, both the Wesleyan Methodist churches and the Episcopal churches in Michigan are acting under color of law every time they take any action authorized by these statutes. In the secular setting, Section 261 of the Business Corporation Act, M.C.L. 450.1261, contains a lengthy list of the authority granted to corporations, including the right to: "Adopt, amend, or repeal bylaws, including emergency bylaws, relating to the business of the corporation, the conduct of its affairs, its rights and powers and the rights and powers of its shareholders, directors, or officers" (subsection (d)); "Purchase, receive, take by grant, gift, devise, bequest or otherwise, lease, or otherwise acquire, own, hold, improve, employ, use and otherwise deal in and with, real or personal property, or an interest in real or personal property, wherever situated." (subsection (f)); "Sell, convey, lease, exchange, transfer, or otherwise dispose of, or mortgage or pledge, or create a security interest in any of its property or an interest in its property, wherever situated." (subsection (g)). This is just a small sampling of the list of corporate authority. Based on plaintiff's argument every time a corporation acts in Michigan it is acting under

color of law for purposes of § 1983 because it can only act as a result of the authority granted to it by the State. The argument is absurd and must be rejected out of hand.

In a last-ditch effort to rescue its specious position plaintiff tries to equate Bay View with the "company town" of Chickasaw as described by the Supreme Court in *Marsh v. State of Alabama*, 326 U.S. 501, 66 S. Ct. 276, 90 L. Ed. 265 (1946): "In short the town and its shopping district are accessible to and freely used by the public in general and there is nothing to distinguish them from any other town and shopping center except the fact that the title to the property belongs to a private corporation." *Id.* at 503. Ms. Marsh came onto the sidewalk in the business district, stood near the post-office and attempted to distribute religious literature. The corporation that owned the streets had posted a notice that read: 'This Is Private Property, and Without Written Permission, No Street, or House Vendor, Agent or Solicitation of Any Kind Will Be Permitted." Marsh refused to leave when instructed and was arrested and convicted of trespassing on private property. *Id.*

The Supreme Court reversed the conviction and held the First Amendment right to distribute pamphlets was enforceable because the "more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Id.* at 506. The present case before the court, however, is not about leafleting, access to the streets or anything of the kind. The attempt to rely on *Marsh* is completely inapt. "Under the public function test, courts have found 'state action present in the exercise by a private entity of powers traditionally **exclusively** reserved to the State.' *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)." *Lindsey v. Detroit Entm't, LLC*, 484 F.3d

824, 828 (6th Cir. 2007)(Emphasis added). Enforcing membership by-laws is hardly a power "traditionally **exclusively** reserved to the State."

As Bay View explained in its primary brief, "state action may be found if, though only if, there is such a 'close nexus between the State and **the challenged action**' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001) (Emphasis added). "'The Sixth Circuit has interpreted this test narrowly; rarely have we attributed private conduct to the state." *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014). Plaintiff's argument is the antithesis of a narrow interpretation of the public function test. If Bay View is found to be a state actor based on the record before the court, it will be a rare occasion when state action is **not** found.

The cases that have rejected a claim of state action are instructive. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974), rejected a claim of state action by a private utility company that was heavily regulated by the state: "Here the action complained of was taken by a utility company which is privately owned and operated, but which in many particulars of its business is subject to extensive state regulation. The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. [Citation omitted]. Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so." Id. at 350. (Footnote omitted).

*Blum v. Yaretsky*, 457 U.S. 991, 993, 102 S. Ct. 2777, 2780, 73 L. Ed. 2d 534 (1982), also rejected a claim of state action where Medicaid patients challenged decisions by the nursing homes in which they reside to discharge or transfer patients without notice or an

opportunity for a hearing. The primary issue addressed by the district court was "'whether there is state action and a constitutional right to a pre-transfer evidentiary hearing in a patient transfer to a higher level of care and/or a patient transfer initiated by the facility or its agents.' [Citation omitted]. Ultimately, the District Court answered that question in [the patients'] favor." *Id*. at 997 – 998. The Second Circuit affirmed the district court's decision but the Supreme Court reversed. The Court began its analysis by explaining the purpose of the state action requirement: "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." Id. at 1004. (Emphasis in original). The Supreme Court reiterated that "the required nexus may be present if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.' *Jackson v. Metropolitan Edison Co., supra*, at 353, 95 S.Ct., at 454; see *Flagg Bros., Inc. v. Brooks, supra*, 436 U.S. at 157–161, 98 S.Ct., at 1733–1736." *Id*. at 1005. The Court rejected the contention that because the state required the nursing home to complete certain forms as part of the transfer procedure, state action existed. "As petitioners note, however, the physicians, and not the forms, make the decision about whether the patient's care is medically necessary. A physician can authorize a patient's admission to a nursing facility despite a 'low' score on the form. See 10 NYCRR §§ 415.1(a)(2), 420.1(b)(2) (1978). We cannot say that the State, by requiring completion of a form, is responsible for the physician's decision." Id. at 1006 – 1007. (Footnote omitted).

*Polk County v. Dodson*, 454 U.S. 312, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981), held that a public defender did not act "under color of state law" when representing an indigent defendant in a state criminal proceeding, reversing a contrary holding by the Eighth Circuit.

"In our system a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing 'the undivided interests of his client.' This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed." *Id.* at 318 – 319. (Footnotes omitted).

Enforcement of membership by-laws is not "traditionally the **exclusive** prerogative of the State." The broad grant of authority in the enabling legislation is grossly insufficient to establish "that the State is *responsible* for the *specific conduct* of which the plaintiff complains." The plaintiff's claim of state action fails and with it the First Amendment claim brought under 42 U.S.C. § 1983 and the claim under the Michigan Constitution also fail.

**2. Plaintiff is not entitled to judgment as a matter of law on its Title VIII Claim.**

The Fair Housing Act, also known as Title VIII, bars discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling" because of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604(b). *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson County Metro Human Relations Comm'n*, 508 F.3d 366, 369 (6th Cir. 2007). 42 U.S.C. § 3604(a) through (e) states:

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—

**(a)** To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

**(b)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities

in connection therewith, because of race, color, religion, sex, familial status, or national origin.

**(c)** To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

**(d)** To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

**(e)** For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, handicap, familial status, or national origin.

As discussed above, there is a religious exemption in Title VIII, 42 U.S.C. § 3607(a), which states:

Nothing in this subchapter shall prohibit a religious organization, association, or society, or any nonprofit institution or organization operated, supervised or controlled by or in conjunction with a religious organization, association, or society, from limiting the sale, rental or occupancy of dwellings which it owns or operates for other than a commercial purpose to persons of the same religion, or from giving preference to such persons, unless membership in such religion is restricted on account of race, color, or national origin. Nor shall anything in this subchapter prohibit a private club not in fact open to the public, which as an incident to its primary purpose or purposes provides lodgings which it owns or operates for other than a commercial purpose, from limiting the rental or occupancy of such lodgings to its members or from giving preference to its members.

Plaintiff must demonstrate to the Court that "no material issue of fact exists and the [plaintiff] is entitled to judgment as a matter of law." *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017). In addition, because Bay View bears the burden of proof on the exemption, *Fair Hous. Advocates Ass'n, Inc. v. City of Richmond Heights, Ohio*, 209 F.3d 626, 634 (6th Cir. 2000), at the Rule 12 stage Bay View's burden is to demonstrate

sufficient facts "to make it plausible" that the exemption applies. *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Plaintiff is not entitled to judgment under Rule 12(c).

Plaintiff's argument is that the only way Bay View can avoid liability under Title VIII is through the religious exemption and since "Defendants do not own or operate the cottages at issue," the exemption does not apply and plaintiff is entitled to judgment. (Plaintiff's Brief in Support, p. 14). Plaintiff's argument is disingenuous to the point of being mendacious. If plaintiff's argument is taken at face value it is dispositive of the Title VIII issue – but it is the defendants who are entitled to judgment as a matter of law – not plaintiff. Title VIII prohibits anyone to "refuse to sell or rent . . . a dwelling to any person because of . . . religion." Since, as plaintiff points out, the defendants do not "own or operate" the "dwellings" at issue, Title VIII is completely inapplicable and the plaintiff's claims under Title VIII must be dismissed. The prohibition in Title VIII is on discrimination in selling or leasing dwellings. Plaintiff cannot have it both ways. If the religious exemption contained in 42 U.S.C. § 3607(a) does not apply because defendants do not own or lease the dwellings at issue, then Title VIII itself does not apply and defendants are entitled to judgment as a matter of law. If, on the other hand, Title VIII applies then so must § 3607(a). Plaintiff does not offer an explanation as to why Title VIII applies in the first instance but § 3607(a) does not apply.

However, defendants are not going to engage in the same legal legerdemain that plaintiff has attempted. Title VIII explicitly defines "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, **and any vacant land which is offered for sale or lease** for the

construction or location thereon of any such building, structure, or portion thereof." 42. U.S.C. § 3602(b). Defendants have acknowledged Title VIII applies absent an exemption; plaintiff must acknowledge the religious exemption applies as well. It is unfortunate plaintiff would make this argument without first reading the actual definition of a "dwelling" contained in Title VIII.

Plaintiff then asserts that because some members rent out their cottages, the religious exemption does not apply because of the language in the statute that rental or occupancy of dwellings "which it owns or operates" must be "for other than a commercial purpose." There are three responses to this assertion: first, Bay View Association does not own or operate the cottages that are being leased by members – the members themselves own the cottages. By the plain language of the statute the provision does not apply. Second, assuming that rental of a cottage by a member to a non-member constitutes a "commercial purpose," it is the member engaging in the commercial purpose, not the defendants. Third, the fact that income is generated does not transform cottage ownership into a commercial purpose. The term "commercial purpose" is not defined in the statute. "'In construing a federal statute it is appropriate to assume that the ordinary meaning of the language that Congress employed accurately expresses the legislative purpose.' (citation omitted).*Mills Music, Inc. v. Snyder,* 469 U.S. 153, 164, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985)." *Roth v. Guzman*, 650 F.3d 603, 614 (6th Cir. 2011).

> [T]he Sixth Edition of Black's Law Dictionary, defines 'commercial activity' as 'including any type of business or activity which is carried on for a profit.' *Black's Law Dictionary* 270 (6th Ed. 1990).
>
> . . . This definition also is consistent with the statutory language of the religious exemption. Specifically, the statutory language of the exemption encompasses not only the occupancy of a religious organization's dwellings, but also the sale and rental of such dwellings. *See* 42 U.S.C. § 3607(a). This

statutory language demonstrates that a purpose is not a 'commercial purpose' simply because it generates revenue (e.g., through either the rental or sale of the religious organization's dwellings), but instead must be a purpose beyond simply generating revenue, such as generating a profit.

*Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*, 717 F. Supp. 2d 1101, 1113 (D. Idaho 2010). There is no basis to grant judgment to the plaintiff as there is nothing in the pleadings that would allow the Court to conclude as a matter of law that the primary purpose of Bay View Association is to generate a profit.

Plaintiff then advances the rather startling argument that Christianity is not a religion. Plaintiff argues the language of § 3607(a) that "Nothing in this subchapter shall prohibit a religious organization . . . from limiting the sale, rental or occupancy of dwellings which it owns or operates . . . to persons of **the same religion**," precludes Bay View from invoking the exception because – in plaintiff's rather strange world view – Christianity is not a religion. This argument exhibits either a profound ignorance of religion in general or an extraordinarily myopic and tunnel-visioned understanding of the treatment of religion by the courts throughout this country's history.

The United States Supreme Court has consistently referred to the "Christian religion" in its decisions. "It is also said, and truly, that the Christian religion is a part of the common law of Pennsylvania." *Vidal v. Girard's Executors*, 43 U.S. 127, 198, 11 L. Ed. 205 (1844). "Appellants here concededly have suffered direct economic injury, allegedly due to the imposition on them of the tenets of the Christian religion." *McGowan v. State of Md.*, 366 U.S. 420, 430, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961). "The Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths . . ." *Stone v. Graham*, 449 U.S. 39, 41, 101 S. Ct. 192, 66 L. Ed. 2d 199 (1980). "But a Latin cross is not merely a reaffirmation of Christian beliefs." *Salazar v. Buono*, 559 U.S. 700, 721, 130 S. Ct. 1803, 176 L. Ed. 2d 634

(2010). "So long as the town maintains a policy of nondiscrimination, the Constitution does not require it to search beyond its borders for non-Christian prayer givers in an effort to achieve religious balancing." *Town of Greece, N.Y. v. Galloway*, 134 S. Ct. 1811, 1824, 188 L. Ed. 2d 835 (2014).

There is absolutely no merit to the essence of plaintiff's argument that there is no Christian religion.

Finally, plaintiff argues that it is entitled to judgment as a matter of law because Bay View is not a religious "organization, association, or society" under § 3607(a).  Plaintiff first relies on *Terpening v. Gull Lake Assembly of Michigan Conference of Methodist Protestant Church*, 298 Mich. 510, 514, 299 N.W. 165 (1941), to argue the Michigan Supreme Court has decided this issue in its favor. This is not a fair characterization of the *Terpening* decision.

In *Terpening*, the affairs of the Assembly were in the hands of trustees 'having relationship to Methodist Protestant Church', "but membership in the Assembly was open to any one owning a share of stock. The initial capital was obtained by means of sales of shares of stock and platted lots to the general public." Membership in the association in *Terpening* was open to the general public. The specific point in dispute in *Terpening* was whether the association continued to exist after thirty years when the articles creating it limited its existence to thirty years. In holding it did not continue to exist and that the common stockholders were entitled to relief the Supreme Court held: "Plaintiffs hold membership stock of a pecuniary nature entitling them to a liquidation of the defunct corporation and participation in the final distribution of the assets." *Id.* at 515. This is an unremarkable conclusion and has no application to this case.

As discussed above, at the Rule 12 stage Bay View's burden is to demonstrate enough facts "to make it plausible" that the exemption applies.

The following facts "make it plausible" the exemption applies:

- Sixty percent (60%) of the Trustees must be members of The United Methodist Church. (FAC, Ex. A, § 2).

- The election of Trustees who are members of The United Methodist Church must be ratified by the West Michigan Conference of The United Methodist Church. (*Id.*)

- The United Methodist Church Bishop with jurisdiction over Michigan is an *ex officio* Trustee. (*Id.*)

- One of the six designated Departments of the Association is Worship and Religious Life. (§ 13-a)

- One of the thirteen Standing Committees of the Association is Worship and Religious Life (§ 13-b).

- The By-Laws provide that the Worship and Religious Life Committee:

  Shall provide advice and assistance to the Director of Worship and religious activities ("Director"), the Executive Director, and the Board with respect to the Association's worship and religious activities by:

  - Working in cooperation with the Director to develop programs to **maintain and enhance the spiritual emphasis of the Association and its identify and perception as an institution of Christ's Church**;

  - Aiding the Director in the implementation of worship, guest speakers, the religion and life hour, and all other religious programs of the Association;

19

- Assisting the Director in identifying and recruiting preachers and lecturers of high caliber for the assembly programs;

- Reviewing and reporting to the Executive Director and the Board concerning the performance and effectiveness of the Director; and

- Assisting the Executive Director and the Board in the selection of the Director. (§ 21).

- The By-Laws require renters to be informed of the rules and regulations of the Association "in the interest of preserving and **enhancing the religious**, cultural and educational **purposes of the Association**." (§ 39).

- The By-Laws designate Sunday as a day of rest: "In accordance with the custom and tradition of the Christian church, Sunday is regarded as a day of rest in Bay View. Thus, organized programs, waterfront activities and activities other than religious services or activities, shall not be carried out on Sundays between the hours of 7:00 a.m. and 12:00 noon."

Based on the pleadings, Bay View's assertion of the religious exemption of 42 U.S.C. § 3607(a) is plausible. At a minimum Bay View is entitled to develop a record to demonstrate that it falls within the religious exemption. Plaintiff's attempt to circumvent the creation of a record in which this issue can be fully explored should not be countenanced. The plaintiff's motion is grossly premature. This is especially true in light of the intense factual scrutiny involved in making the determination of whether a particular entity qualifies for the exemption. "In determining whether the College qualifies for the statutory exemption, **the court must look at all the facts** to decide whether the College is a religious corporation or educational institution. *Killinger,* 113 F.3d at 198-99. It is

appropriate to consider and weigh the religious and secular characteristics of the institution." *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000)(Emphasis added). See also, *Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021, 1036 (N.D. Iowa 2006)("In determining whether an institution or entity is entitled to assert the exemption, the court must 'look at all the facts,' and in making this inquiry, '[i]t is appropriate to consider and weigh the religious and secular characteristics of the institution.'" quoting *Hall*); *Spencer v. World Vision, Inc.*, 570 F. Supp. 2d 1279, 1283–1284 (W.D. Wash. 2008) ("To ascertain whether an entity qualifies as a religious organization, courts conduct a factual inquiry and weigh '[a]ll significant religious and secular characteristics ... to determine whether the corporation's purpose and character are primarily religious.' *EEOC v. Townley Eng. & Mfg. Co.,* 859 F.2d 610, 618 (9th Cir.1988). '[**E]ach case must turn on its own facts.**' *Id.*")(Emphasis added); *Braun v. St. Pius X Par.*, 827 F. Supp. 2d 1312, 1317 (N.D. Okla. 2011) ("Both parties cite *LeBoon v. Lancaster Jewish Cmty. Ctr. Assoc.,* 503 F.3d 217, 226 (3rd Cir.2007) for a list of factors courts often apply to judge whether an organization fits within the exemption."); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 226 (3d Cir. 2007)("Over the years, courts have looked at the following factors: (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other

forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.").

At a minimum a factual record must be developed to determine if Bay View may properly invoke the religious exemption. Plaintiff's motion for judgment on the pleadings at this stage of the litigation must be denied.

Plaintiff also takes an overly restrictive view of the religious exemption when compared to the decisions that have found the exemption applies. In *Hall v. Baptist Mem'l Health Care Corp. supra*, the Sixth Circuit held that Memorial Health Care Corporation was entitled to invoke Title VII's religious exemption, which applies the same standard in the employment setting. Memorial Health Care was "a nonprofit corporation established with the purpose of 'carrying out a health care mission consistent with the traditional and ongoing health care missions of the Arkansas, Mississippi and Tennessee Baptist Conventions and their affiliated Baptist churches with which the Corporation shares common religious bonds and convictions.'" *Id*. at 621.

*Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries, supra*, held that the Boise Rescue Mission was a religious organization for purposes of Title VIII, as it "was 'created for the purpose of providing for the worship of God, the teaching and preaching of the Word or God, the winning of people to a personal faith in the Lord Jesus Christ and in the spiritual improvement of mankind.'" *Id*. at 1113. The Court ultimately determined the exemption did not apply because the Mission served those of all faiths and atheists in addition to Christians.

Again applying the religious exemption found in Title VII, the Ninth Circuit held World Vision, Inc., a self-described "Christian humanitarian organization dedicated to working with children, families and their communities worldwide to reach their full potential by tackling the causes of poverty and injustice'" was a religious organization. *Spencer v. World Vision, Inc.*, 633 F.3d 723, 724 (9th Cir. 2011).

*Wirth v. Coll. of the Ozarks*, 26 F. Supp. 2d 1185 (W.D. Mo. 1998), *aff'd sub nom. Wirth v. Coll. of Ozarks*, 208 F.3d 219 (8th Cir. 2000), held the College of the Ozarks was a religious organization under the Title VII exemption.. The college was a non-denominational college incorporated in 1986 in the state of Missouri as a not-for-profit corporation. The charter mission of the college was "providing Christian education for youth of both sexes, especially those found worthy but who are without sufficient means to procure such training." Similar to the argument advanced by the plaintiff in this case the plaintiff there argued the affidavit of President of the College of the Ozarks, in which he stated that "[n]o particular denomination of Christianity is preferred or encouraged by the college but a strong belief in Christianity is practiced," defeated the religious exemption. "According to Plaintiff, because the College of the Ozarks is a non-denominational Christian organization it cannot be exempt from his claims that his employment was unlawfully terminated on the basis he is Catholic because his views are also Christian. Plaintiff's argument is without merit." *Id.* at 1187 – 1188.

These are but a few of the examples of the cases that have found an entity to be a religious organization under the Title VIII or Title VII exemptions. The defendants did not seek judgment on the pleadings on this issue because they recognize this is a factually intensive inquiry that is inappropriate to decide in most cases at the Rule 12 stage. Plaintiff

has not demonstrated an entitlement to judgment on this issue. The plaintiff's motion must be denied.

## **RELIEF REQUESTED**

The defendants respectfully request the Court deny the plaintiff's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).

Respectfully submitted,

DATED:  May 23, 2018                    PLUNKETT COONEY

BY:__/s/Michael S. Bogren
     Michael S. Bogren (P34835)
     Attorney for Defendants
     950 Trade Centre Way, Suite 310
     Kalamazoo, MI  49002
     Direct Dial:  269/226-8822

Open.00391.72232.20250018-1