BAY VIEW CHAUTAUQUA
INCLUSIVENESS GROUP,

       Plaintiff,                                  Case No. 1:17-cv-00622-PLM-RSK

v.                                           HON. PAUL L. MALONEY

THE BAY VIEW ASSOCIATION OF
THE UNITED METHODIST CHURCH,
*a Michigan Summer Resort and Assembly
Association,* THE BOARD OF THE BAY
VIEW ASSOCIATION OF THE UNITED
METHODIST CHURCH, *its governing body,
and* BAY VIEW REAL ESTATE
MANAGEMENT, INC., *a domestic profit
corporation,*

       Defendants.

_____

| | |
|---|---|
| Sarah S. Prescott (P70510) | Michael S. Bogren (P34835) |
| Attorney for Plaintiff | Attorney for Defendants |
| SALVATORE PRESCOTT & PORTER, PLLC | PLUNKETT COONEY |
| 105 East Main Street | 950 Trade Centre Way, Suite 310 |
| Northville, Michigan 48167 | Kalamazoo, Michigan 49002 |
| (248-679-8711) | (269-226-8822) |
| Prescott@spplawyers.com | mbogren@plunkettcooney.com |

_____

## REPLY BRIEF IN SUPPORT OF RENEWED
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Many of the arguments raised in Plaintiff's response in opposition to Defendants'
Renewed Motion for Partial Summary Judgment on the Pleadings are refuted in
Defendants' opening brief and in Defendants' Response in Opposition to Plaintiff's Motion
for Judgment on the Pleadings. For the reasons set forth in those briefs and for the
additional reasons set forth below, Defendants' renewed motion should be granted.

I.     THE PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR DAMAGES ON BEHALF OF ITS INDIVIDUAL MEMBERS.

Plaintiff's only argument in opposition to Defendants' position that Plaintiff lacks standing to assert a claim for damages on behalf of its individual members is based on the post-complaint assignments by the persons who actually are alleged to have sustained injury to Plaintiff.  Plaintiff does not disagree that, apart from those assignments, it lacks standing.  Plaintiff's argument is based entirely on the decision in *Sprint Comm. Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 128 S. Ct. 2531, 171 L.Ed.2d 424 (2008).  Plaintiff simply assumes that the holding in *Sprint* extends to civil rights claims such as this one.  But there is no reason to make such a bald assumption, and several sound reasons to assume that the Supreme Court would *not* extend *Sprint* to the instant context.  The first sentence in *Sprint* demonstrates that its holding does not necessarily extend to this civil rights claim.  The court began its opinion with this:  "The question before us is whether an assignee of *a legal claim for money owed* has standing to pursue that claim in federal court, even when the assignee has *promised to remit the proceeds* of the litigation to the assignor."  *Id.* at 271.  The Court thus makes it clear its decision focused on the context of a legal claim for money—as opposed to, say, the vindication of a civil rights, which is something that the Court has recognized is more personal.

In fact, the Court in *Sprint* distinguished civil rights cases, i.e., cases brought under 42 U.S.C. § 1983, on the basis that civil rights cases involve "rights" rather than mere "injuries."  Thus, the Court distinguished *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975) on the grounds that the plaintiffs in that case sought to "assert not their own legal rights, but the legal rights of others," whereas the plaintiffs in *Sprint* "are suing based on *injuries* originally suffered by third parties" and were assigned rights "based

on those injuries." *Id.* at 290 (emphasis added).  The Court thus thought it was important to distinguish between "rights" and "injuries."  That distinction is in keeping with the Court's recognition in *Warth* that, for purposes of standing, "the plaintiff still must allege a distinct and palpable injury to himself, even it is an injury shared by a large class of other possible litigants." *Warth*, 422 U.S. at 501.

Had the Court in *Sprint* intended its holding to extend to the context of civil rights claims such as were at issue in *Warth*, it could easily have done so by noting that *Warth* did not involve an assignment.  Instead, the Court distinguished *Warth* based on a distinction between rights and injuries—which was consistent with the first sentence of the Opinion emphasizing the focus on "a legal claim for money owed." *Id.* at 271.

Indeed, research discloses no decision that has ever extended *Sprint* to the context of a § 1983 claim.  Plaintiff certainly does not identify any such case.  In fact, Plaintiff identifies no case that has allowed the assignment of a § 1983 claim either before or after *Sprint*.  Courts considering the assignability of § 1983 claims have generally held that they are *not* assignable—both before and after *Sprint*.  See, e.g., *Am. Charities for Reasonable Fundraising Regulation, Inc. v. O'Bannon,* Case No. 2:08-CV-875, 2016 WL 4775527 (D. Utah Sept. 13, 2016); *Advert. Display Sys. 1, LLC v. City & Cty. of San Francisco,* Case No. 06-1020, 2006 WL 1646138 (N.D. Cal. June 14, 2006); *Martinez v. City of New York*, Case No. 00 Civ. 7914 (WHP), 2003 WL 2006619 (S.D.N.Y. April 30, 2003), *aff'd.* 82 F. App'x 253 (2d Cir. 2003).  Also, as federal courts have recognized, *Sprint*'s holding that some claims are assignable does not necessarily mean that all claims are assignable.  For example, *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394 (2d Cir. 2018) recently recognized that any trend toward assignability of claims should not apply in the copyright context. *Id.* at 407.

That is because of the uniquely personal nature of rights under copyright law. *Id.* See also *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013) (declining to extend *Sprint's* holding to allow assignment of claims in the ERISA context). The majority opinion in *Sprint* specifically said that in cases where assignments were made in bad faith or not "for ordinary business purposes," additional prudential questions could arise. *Id.* at 292. This, too, is consistent with the *Sprint* majority's emphasis that it was focusing on a case for the collection of money, as opposed to a personal civil right. The "ordinary business purposes" for which the assignments were made in *Sprint* simply do not exist in this civil rights case. In this case, the one and only purpose of the assignments was to attempt to cloak an organization whose civil rights were not violated with standing. Nothing in the 5-4 decision in *Sprint* supports extending that decision to the instant context. And since Plaintiff has cited no case from any jurisdiction approving the assignment of a civil rights claim in order to create standing, this Court should decline Plaintiff's invitation to be the first court to do so.

Plaintiff argues that *Sprint* effectively overturned *Quarles v. City of East Cleveland*, 202 F.3d 269 (6th Cir. 1999) and *Carter v. Romines*, 560 F.2d 395 (8th Cir. 1977), but those cases remain good law, and have both been cited in the wake of *Sprint*. See, e.g., *Club Xtreme, Inc. v. City of Wayne*, No. 07-15308, 2010 WL 1626415 (E.D. Mich., April 21, 2010) (citing *Quarles* with approval); and *In re Preston Trucking Co., Inc.*, 392 B.R. 623, 631 (D. Md., 2008) (citing *Carter* with approval). These cases presumably recognize that *Quarles* and *Carter* remain good law because *Sprint* has never been extended to the context of a civil rights claim. Finally, Plaintiff's reliance on *Venegas v. Mitchell*, 495 U.S. 82, 88, 110 S. Ct. 1679, 109 L.Ed.2d 74 (1990) lends no support to its argument. The court in that case merely recognized in passing that a plaintiff was entitled to assign part of his or her

"recovery to an attorney" in the form of attorney fees. That case did not involve a pre-suit assignment of a cause of action—much less authorize doing so in the context of a civil rights claim.

As Defendants also pointed out in their opening brief, Plaintiff's assignments cannot create standing because they were not made until after this litigation was commenced. Plaintiff cites a handful of cases in which courts exercised their discretion to allow post-complaints assignments to promote judicial efficiency. But none of the cases Plaintiff cites indicates that a trial court would err by enforcing the requirement of standing—including the requirement that standing must exist as of the commencement of the litigation. Whereas Plaintiff has failed to demonstrate that the assignments are viable in any case, they also fail for the additional reason that they were not made until after this lawsuit was filed. Nothing in Plaintiff's response suggests that this Court would err by enforcing that requirement.

## II.     BAY VIEW IS NOT A STATE ACTOR.

Plaintiff asserts in its Response Brief: "Defendants urge that Bay View is not a municipal or governmental entity because the 1929 Summer Resort Owners Act devolves more power to entities created under it than the 1889 Act gave to Bay View. This argument is a red herring . . ." (Response, pp. 17 – 18). This is an interesting characterization since plaintiff relied so heavily on conflating the two statutes in its Complaint. However, the plaintiff misapprehends Bay View's argument. Plaintiff has argued Bay View is a municipal entity under Michigan law. It is not.

The Michigan Constitution authorizes various units of local government, including counties (Const. 1963, art. 7, § 1); townships (Const. 1963, art. 7, § 17) and cities and

villages. (Const. 1963, art. 7, § 21: "The legislature shall provide by general laws for the incorporation of cities and villages.").

The Michigan Constitution also allows the creation of other units of government which do not appear to be germane to plaintiff's claims, including metropolitan authorities (Const. 1963, art. 7, § 27), and joint authorities (Const. 1963, art. 7, § 28). Although plaintiff does not specify the exact nature of the municipal entity it claims Bay View to be, it is obviously not a county or township. Thus, plaintiff must claim Bay View is a city of village. If that is true, then it must be incorporated as such under Const. 1963, art. 7, § 21 and the laws created by the legislature to carry out the constitutional provision. M.C.L. 78.2 describes the process for incorporating a village. M.C.L. 117.6 describes the procedure for incorporating a city. The plaintiff has not alleged Bay View was incorporated as a village or city – nor could such an allegation be made. The simple fact is that Bay View is not a municipal entity under Michigan law and plaintiff cannot rely on that assertion to support a finding of state action.

As discussed in the primary Brief, state action can be based on a finding of a close "nexus between the State and the challenged action that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001). Plaintiff argues that *Marsh v. State of Alabama*, 326 U.S. 501, 66 S. Ct. 276, 90 L. Ed. 265 (1946), controls and that Bay View is, in essence, a company town. This attempt grossly overstates the holding in *Marsh*. It should be borne in mind that Marsh was not decided as a "state action" case as that term has come to be used. Marsh was a First Amendment case where the owner of private land had a member of the public arrested for trespassing even though the

area had all the hallmarks of the traditional town square. As the Supreme Court explained

its decision, the "more an owner, for his advantage, opens up his property for use by the

public in general, the more do his rights become circumscribed by the statutory and

constitutional rights of those who use it." *Id*. at 506. This case, by contrast, does not present

a place with the hallmarks of a separate town, city or village. This is a residential area;

there are no allegations in the Complaint of stores open to the public or other commerce

taking place as there was in *Marsh*. If plaintiff's argument is accepted then every gated

community would be subject to a claim of state action under *Marsh*. That is not the law.

There is nothing in the allegations that would allow plaintiff to proceed under the

"company town" theory as described in *Marsh*.

Plaintiff then argues that if Bay View is a private entity (which it clearly is under

Michigan law), the Court should deny the motion based on the assertion that the "State of

Michigan entrusted Bay View to 'manage and control . . . the business, finances, rights,

interests, buildings and all property, real and personal, of the corporation . . .' MCL §

455.58." (Response Brief, p. 21). This argument ignores the fact that Michigan law gives the

same authority to every corporation. M.C.L. 450.1261(g), gives corporations the right to:

"Sell, convey, lease, exchange, transfer, or otherwise dispose of, or mortgage or pledge, or

create a security interest in any of its property or an interest in its property, wherever

situated." Again, if Bay View is a state actor because of MCL 455.58, then so too is every

other corporation in Michigan. There is no merit to plaintiff's argument.

III.     **COUNT 5 IS BARRED BY RES JUDICATA (CLAIM PRECLUSION).**

Plaintiff argues claim preclusion does not apply to its state law claims for two

reasons: first, the parties are different and second, the claims brought in this case are not

"of the type that had to be asserted in the prior action." (Response Brief, p. 23). Plaintiff argues that because there are non-members in the association that fact defeats the res judicata claim. That is an overly narrow view of the doctrine. Whether there were non-members among the plaintiffs in the prior litigation is not dispositive. The claim in the prior litigation was that the by-laws were invalid under state law. A member who wished to convey her cottage to a non-member who was ineligible for membership could have raised the claim in the prior litigation. The person to whom the conveyance would be made would not be required to raise that claim. As the Michigan Supreme Court recognized in *Adair v. State,* 470 Mich. 105, 122, 680 N.W.2d 386 (2004), "a perfect identity of the parties is not required, only a substantial identity of interests." The plaintiff's attempt to differentiate non-members' interests from members' interests is unavailing.

Plaintiff then argues res judicata does not apply because the claims asserted in this litigation were not required to be raised in the prior litigation. Whether those claims **had** to be raised is irrelevant; the relevant inquiry is whether they **could** have been raised. The claims plainly could have been raised in the prior litigation. Res judicata only requires that "the matter in the second case was, or could have been, resolved in the first." *Ludwig v. Twp. of Van Buren*, 682 F.3d 457, 460 (6th Cir. 2012), quoting *Adair*. Plaintiff does not even attempt to argue these claims could not have been raised in the prior litigation. Instead, plaintiff argues the facts and evidence required to decide the issues actually raised in the first case are different from those required to decide the issues raised in this case. That argument does not accurately state the law. If that were an accurate statement of the law the "could have been raised" portion of the res judicata test would be meaningless. A plaintiff could file seriatim claims raising discrete claims and avoid res judicata simply by

8

saying the facts and evidence required to decide **this** case are different than the facts required to decide the **last** case. Plaintiff could defeat a claim of res judicata by engaging in the very practice the doctrine was designed to prevent. The state law claims raised in this case could have been asserted in the prior case. That fact disposes of the issue in Bay View's favor.

## <u>RELIEF REQUESTED</u>

Defendant Bay View Association respectfully requests the Court grant its motion for partial judgment on the pleadings.


                                            Respectfully submitted,

DATED:  June 4, 2018                        PLUNKETT COONEY


                                            BY:   /s/Michael S. Bogren
                                                  Michael S. Bogren (P34835)
                                                  Attorney for Defendants
                                                  950 Trade Centre Way, Suite 310
                                                  Kalamazoo, MI  49002
                                                  Direct Dial:  269/226-8822


Open.00391.72232.20423877-1