UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

BAY VIEW CHAUTAUQUA
INCLUSIVENESS GROUP,

    Plaintiff,

v.

THE BAY VIEW ASSOCIATION OF
THE UNITED METHODIST CHURCH,
*a Michigan Summer Resort and Assembly
Association,* THE BOARD OF THE BAY
VIEW ASSOCIATION OF THE UNITED
METHODIST CHURCH, *its governing body,
and* BAY VIEW REAL ESTATE
MANAGEMENT, INC., *a domestic profit
corporation,*

    Defendants.

Case No. 1:17-cv-00622-PLM-RSK

HON. PAUL L. MALONEY

_____

| | |
|---|---|
| Sarah S. Prescott (P70510) | Michael S. Bogren (P34835) |
| Attorney for Plaintiff | Attorney for Defendants |
| SALVATORE PRESCOTT & PORTER, PLLC | PLUNKETT COONEY |
| 105 East Main Street | 950 Trade Centre Way, Suite 310 |
| Northville, Michigan 48167 | Kalamazoo, Michigan 49002 |
| (248-679-8711) | (269-226-8822) |
| Prescott@spplawyers.com | mbogren@plunkettcooney.com |

_____

**SUPPLEMENTAL BRIEF IN SUPPORT OF RENEWED
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

    The Court has allowed the parties to file supplemental briefs addressing the effect of the amendment to Section 1-d of the by-laws of the Bay View Association of the United Methodist Church. For the reasons that follow it is the defendants' position the plaintiff's claims for declaratory and injunctive relief under Title VIII and the Michigan Civil Rights Act are moot and must be dismissed. Additionally, to the extent Counts 1 and 2 seek

1

declaratory and injunctive relief based on Section 1-d of the by-laws those claims are also moot and must be dismissed.

At the time plaintiff filed its Complaint Section 1-d of the by-laws stated:

Qualifications for Membership. Any person eighteen (18) years of age or more and of good moral character may be accepted as a Leaseholding or Associate Member in the Bay View Association by a two-thirds vote of the Board of Trustees, provided he or she is of Christian Persuasion and complies with the following requirements:
1. Payment of initial membership fee.
2. Complete and file the approved membership application form with the Bay View Business Office.
3. Provide reference letters attesting to the applicant's fulfillment of the above requirements from:
   a. The pastor or designated leader of the church the applicant is a member of or attends
   b. A member of the Bay View Association, excluding relatives, members of the Board of Trustees and anyone associated with the transfer of the lease
   c. A person of the applicant's choice.
4. Completion of a satisfactory interview with the Membership Committee or its designee, affirming that the applicant supports the Association's purpose and objectives.

(First Amended Complaint, Ex. A). Plaintiff identified Section 1-d as "a disputed provision at issue in this case." (First Amended Complaint, ¶ 48). Count 3 of the plaintiff's First Amended Complaint alleges Section 1-d of the bylaws violated Title VIII as it "den[ies] non-Christians the opportunities provided to practicing Christians." (First Amended Complaint, ¶ 122). Count 4 alleges Section 1-d violated the Michigan Civil Rights Act for the same reasons. Plaintiff requested judgment from the Court that, *inter alia*:

6. Enjoins the Defendants, and all persons in active concert or participation with Defendants, from:
a. discriminating against any person on the basis of religion in any aspect of the sale or transfer of ownership of a dwelling;
b. failing or refusing to notify the public that dwellings owned or offered for sale by the Defendants are available to all persons on a nondiscriminatory basis; and

2

c. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position that they would have been in were it not for the discriminatory conduct.

On Saturday, August 4, 2018, at the 143rd Annual Meeting, Section 1-d of the bylaws was amended as follows:

Qualifications for Membership. An individual may be accepted as a lease holding or associate Member upon a two-thirds vote of the Board of Trustees if the individual complies with the following membership qualifications and requirements:
1. Pays the initial membership fee, which shall accompany the membership application.
2. Completes and files the association membership application form with the Bay View administrative office.
3. Is at least eighteen years of age.
4. Is of good moral character and will support the association's purpose and objectives.
5. Agrees to respect the principles of the United Methodist Church and preserve the history and values of the Chautauqua movement. Applicants support the Bay View Association Mission:
To be an institution in which Christian values and traditions are central; To enrich the human experience for individuals and families within Bay View and the surrounding community through a seasonal program of religious, educational, cultural and recreational opportunities; to provide a Christian perspective in a changing world
6. Provides reference letters attesting to the applicant's fulfillment of the above membership requirements from:
i. At least two members of the Bay View association, excluding relatives of the applicant, members of the board of Trustees and anyone associated with the transfer of the lease; and
ii. At least two persons of the applicant's choice, excluding relatives.
7. Completes a satisfactory interview with the Membership Committee or its designee and receives a favorable vote of the Committee affirming that the applicant is qualified and supports the association's purpose and objectives.

(ECF No. 51). The amendment was accomplished by at least a "two-thirds favorable vote of the membership voting on the issue" (First Amended Complaint, Ex. A, Section 77-b). The amendment removed the former requirement that in order to qualify for membership an individual must be of "Christian persuasion" and removed the requirement of providing a

3

letter of reference from "the pastor or designated leader of the church the applicant is a member of or attends." The result of the amendment directly impacts the relief plaintiff sought in ¶6 a – c of the Prayer for Relief in the First Amended Complaint. Thus, those claims are now moot.

"Article III of the United States Constitution empowers the federal courts to hear only 'cases or controversies,' U.S. Const. art. III, § 2, cl. 1, a cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir. 2011). The Supreme Court has held that when considering the potential mootness of a claim for declaratory relief, "the question is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122, 94 S. Ct. 1694, 40 L.Ed.2d 1 (1974) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).

The plaintiff's claim for declaratory and injunctive relief on the religious requirement for membership no longer presents a "case or controversy." As the Sixth Circuit explained in *Fialka-Feldman, supra*:

> The only merits issue still in play is whether the district court properly ordered the University to provide Fialka–Feldman with on-campus housing. Once Fialka–Feldman completed his program at the University and once he signaled no intent to return, the injunction meant nothing to the University and required nothing of it. No one claims that the University must provide campus housing to non-students, which is what Fialka–Feldman has become. Any decision on appeal thus would not provide "meaningful relief" to either party.

4

*Id.* at 714. So too in this case since Section 1-d has been amended to remove the religious requirement for membership an injunction would "mean[] nothing to the [Association] and require[] nothing of it." In *Brandywine, Inc. v. City of Richmond, Kentucky*, 359 F.3d 830, 836 (6th Cir. 2004), the Sixth Circuit succinctly explained the situation: "We can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect."

The defendants acknowledge there is another aspect to the mootness inquiry. A defendant's voluntary cessation of a challenged practice does not automatically deprive a federal court of its power to determine the legality of a challenged practice. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L.Ed.2d 152 (1982). However, while "voluntary cessation" of the challenged conduct does not automatically render a case moot, "the case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." *Mosley v. Hairston,* 920 F.2d 409, 415 (6th Cir.1990).

The reasoning behind this exception to the mootness doctrine is simple: courts want to "protect a party from an opponent who seeks to defeat judicial review by temporarily altering its behavior." *U.S. v. City of Detroit,* 401 F.3d 448, 451 n. 1 (6th Cir.2005) (citing *City News & Novelty, Inc. v. City of Waukesha,* 531 U.S. 278, 284 n. 1, 121 S. Ct. 743, 148 L.Ed.2d 757 (2001)). Otherwise, "the courts would be compelled to leave '[t]he defendant ... free to return to his old ways.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.,* 528 U.S. 167, 189, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 n. 10, 102 S. Ct. 1070, 71 L.Ed.2d 152 (1982)).

Here, there is no reasonable expectation – or likelihood – the religious requirement will be reinstated. The change to the by-law was not a unilateral decision on the part of the

Bay View Board that can simply be rescinded. Rather, as stated above, the amendment to Section 1-d required a vote of at least two-thirds of the members voting on the issue. That threshold was met. In order to reinstate the religious requirement for membership the by-law would have to again be amended with two-thirds of the members voting to reinstate the religious requirement. There is no basis to assume a large percentage of the members will simply change their mind and vote to reinstate the religious requirement. This is especially true when members can now be admitted who are not of "Christian persuasion." Moreover, the prior litigation filed in Emmet County Circuit Court concerned a previous attempt to amend Section 1-d. That vote was held at the 138th Annual Meeting on August 3, 2013. The vote was 364 in favor of the amendment and 338 opposed. (ECF 37-2 [Exhibit B]). Thus, even though 52% of the members voting were in favor of the amendment, it failed for lack of a favorable vote of at least two-thirds of the members voting. History shows that in five years support for eliminating the religious requirement went from 52% to at least 66 2/3%. In light of that history there is no reasonable expectation the religious requirement will be reinstated.[1]

     Moreover, the cases that have declined to dismiss on the basis of mootness have been presented with a record of the defendant affirmatively stating the challenged conduct or provision would be reinstated once the litigation was concluded. In *Brandywine, Inc. v. City of Richmond, Kentucky,* the Sixth Circuit distinguished *Aladdin's Castle*:

---

[1] In order for the religious requirement to be reinstated at least 50% of the members who voted to amend Section 1-d would have to switch his or her vote. Assume there were 700 voting members [there were 702 votes cast in the 2013 vote]. At least 467 members voted in favor of the amendment – the minimum number to reach two-thirds – and no more than 233 voted against the amendment. In order to reinstate the religious requirement 467 voting members would have to vote in favor of it – meaning 324 of the 467 who voted in favor of eliminating the religious requirement would have to change his or her vote. (233 + 234 = 467). The need for at least 50% of the members to change his or her vote is a constant regardless of the actual number of members who voted in the 2018 election. (E.g. 1,000 votes – 667 in favor, 333 opposed. To reinstate, 334 of the 667 (50+%) would have to switch his or her vote).

> Plaintiffs' reliance on *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S. Ct. 1070, 71 L.Ed.2d 152 (1982), is misplaced. Plaintiffs cite *Aladdin's Castle* for the proposition that the repeal of allegedly unconstitutional legislation does not render moot a claim for injunctive relief from its enforcement. **Critical to the holding in that case, however, was the fact that legislators had publicly expressed an intention to re-enact the offending legislation**. **No such threat was made in this case**, so the passage of the August amendment to the Development Ordinance provides sufficient assurance that the April amendment will not be re-enacted. *See Kentucky Right to Life, Inc. v. Terry,* 108 F.3d 637, 645 (6th Cir.1997). Therefore, plaintiffs' claims for declaratory and injunctive relief were properly dismissed as moot.

*Brandywine Inc.*, 359 F.3d at 836. (Emphasis added). Contrary to the suggestion made by plaintiff at oral argument on July 30, 2018, the religious requirement cannot be reinstated next week or next month or in six months. It could only be reinstated by way of a by-law amendment at a vote conducted at an annual meeting. Given the history that has just been explained there is no reasonable expectation the religious requirement will be reinstated at any time in the future.[2]

The defendants also acknowledge the general rule that the "existence of [a] damages claim preserves the plaintiffs' backward-looking right to challenge the original law and to preserve a live case or controversy over **that** dispute." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 461 (6th Cir. 2007) (Emphasis added). However, due to the circumstances of this case the defendants submit the amendment of Section 1-d reinforces their argument that plaintiff lacks standing to assert the damages claims of its individual members.

---

[2] At the August 17, 2018 Board of Trustees meeting the Bay View Association Board rescinded "guidance" that was provided to the Membership Committee following the by-law amendment. The Board stated it would develop new policy guidance "to ensure compliance with any and all applicable laws" and with the membership requirements established by the by-law amendment. (**Exhibit AA, Item 11**).

As the Court is aware, a number of individuals have filed Title VIII discrimination claims with the Department of Housing and Urban Development (HUD) based on the prior religious membership requirement of Section 1-d.[3] HUD has informed the defendants that Mr. Sheaffer has withdrawn his complaint of discrimination following the vote to amend Section 1-d. (**Exhibit BB**). Since plaintiff has never identified its members, and on whose behalf it is attempting to assert individual damages claims, the defendants do not know if Mr. Sheaffer is a member of the plaintiff group. The entire interplay between this litigation and the HUD complaints of discrimination – and the effect of the amendment of Section 1-d – bolsters the defendants' argument that plaintiff lacks standing to assert the individual damages claims of its members.

42 U.S.C. § 3610(a)(1)(A)(i) provides: "An aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred or terminated, file a complaint with the Secretary alleging such discriminatory housing practice." Title VIII provides for administrative trials and the award of damages. 42 U.S.C. § 3612(g)(3). In this case the plaintiff has affirmatively alleged that its individual members (whomever they might be) have assigned all of their claims to the plaintiff. (First Amended Complaint, ¶ 12). Is Mr. Sheaffer a member of the plaintiff group? If so, what effect does withdrawing his HUD

---

[3] The individuals who originally filed HUD complaints of discrimination are:
Donald Duquette, HUD Case No. 05-17-8638-8; Inquiry No. 524040,
Joseph & Jennifer Rupert, HUD Case No. 05-17-8636-8; Inquiry No. 524049,
Albert & Helen Reynolds, HUD Case No. 05-17-8640-8; Inquiry No. 524047,
Sara & Robert Holmes, HUD Case No. 05-17-8641-8; Inquiry No. 524042,
Dr. John & Mary Agria, HUD Case No. 05-17-8637-8; Inquiry No. 524038,
Marjorie Bayes, HUD Case No. 05-17-8674-8; Inquiry No. 524039,
Gerald & Hannah Reese, HUD Case No. 05-17-8677-8; Inquiry No. 524045,
Jeremy Sheaffer, HUD Case No. 05-17-8678-8; Inquiry No. 524839,
Wesley David & Lois Hager, HUD Case No. 05-17-8639-8; Inquiry No. 524041,
Lawry Reid & Linda Ferrier-Reid, HUD Case No. 05-17-8676-8; Inquiry No. 524046,
Charles Weaver, HUD Case No. 05-17-8675-8; Inquiry No. 524050,
Amy Pines, HUD Case No. ; Inquiry No. 524043.

complaint have on the litigation? On the other hand, can members of the plaintiff group who have assigned their claims to plaintiff pursue claims through HUD? This situation highlights why the plaintiff should not be allowed to assert the damages claims of its members for alleged civil rights violations.

Additionally, at least some of the damages claims asserted on behalf of the unnamed members of the plaintiff group are now moot. For example, the plaintiff alleges: "Members of Plaintiff include existing owners whose children and grandchildren cannot inherit Bay View cottages because they do not meet the religious test described more fully herein, a situation that interrupts a family tradition of as much as six generations." (First Amended Complaint, ¶ 7). Similarly, ¶ 10 alleges: "Members include existing owners who cannot pass their sizeable, illiquid asset—their Bay View cottage—to their spouses, due to the religious test" no longer identifies an existing condition. Neither of those situations exists after the amendment of Section 1-d. Moreover, the factual basis for the allegation: "Members of Plaintiff include individuals who seek to buy homes in the community, but who are not practicing Christians and therefore cannot do so," (First Amended Complaint, ¶ 8), and its corollary found in ¶ 11: "Members also include existing owners who cannot sell their cottage in the open market on commercially reasonable terms, and whose property values are affected (on information and belief) by the challenged dictates, which restrict sales to a small segment of willing buyers," also no longer exists. To the extent the members of the plaintiff group are in any of these categories they no longer have standing to assert those claims and simply have no claim for damages on that basis. They are now free to devise, convey or purchase cottages without having to meet the religious requirement that was previously contained in Section 1-d.

By attempting to assert the claims of its individual members the plaintiff has placed the defendants in an untenable position. The defendants cannot meaningfully challenge the standing of the individual members when the defendants do not know who they are or what their circumstances are. Since standing is a constitutional requirement for invoking federal court jurisdiction, *Macy v. GC Services. Ltd. Partnership*, 897 F.3d 747, 752 (6th Cir. 2018), the lack of standing cannot be overlooked. Plaintiff should not be allowed to conceal the lack of standing of its members through the artifice of assignments. The Court should not recognize the validity of the assignments in this case.

Finally, to the extent Counts 1 and 2 of the First Amended Complaint challenge the religious requirement of Section 1-d, those claims are also moot for the reasons explained above. The plaintiff has challenged other aspects of the bylaws in Counts 1 and 2 and the defendants rely on their previous arguments to support dismissal of those claims. But to the extent those counts challenge Section 1-d, they are moot.

                                                Respectfully submitted,

DATED:  September 11, 2018                 PLUNKETT COONEY

                                                BY:   /s/Michael S. Bogren
                                                          Michael S. Bogren (P34835)
                                                          Attorney for Defendants
                                                          950 Trade Centre Way, Suite 310
                                                          Kalamazoo, MI  49002
                                                          Direct Dial:  269/226-8822