# EXHIBIT A

## DECLARATION OF DON DUQUETTE

I, Don Duquette, state the following and, if called, I am competent to testify to the following facts:

1. My name is Don Duquette. I have been an attorney in Michigan throughout my career. I taught law at the University of Michigan until my retirement. I also am a long-time Christian homeowner in Bay View Michigan.

2. I personally observed scores of attempts to bring Bay View's unfortunate history of religious discrimination to a close, some of which I participated in, and some of which were spearheaded by many others. A list of the more notable instances includes, by way of example only:

- 2010 Alarmed by historical research revealing that Bay View's membership policies were originally racist and anti-semetic, Bay View members discussed the matter with the President and other Trustees and requested that the Bay View board organize community conversations on Bay View's discriminatory membership policies. The trustees refused and declined to do so.
- In 2011, a group proposed a bylaw amendment eliminating the religious test for membership, which failed.
- A special 12-person Committee on Membership met through the summer of 2012 to address the religious test; no resolution was reached.
- In 2013, 16 of Bay View's 18 clergy members supported amending the bylaws to remove the bylaw at issue.
- By August 2013, various members of Bay View had submitted a bylaw amendment that would alter the Christian litmus test now at issue. The vote was 364 for the change, 338 against (about 52% for change). See ECF No. 37-2 Page ID 555. The leadership of Bay View fought to ensure that the majority vote for change would not be enforced and only a supermajority vote would suffice. The matter was litigated through the state Circuit Courts through June 2015. *Id.*
- In January 2014, a legal memo by three lawyers who are also Bay View members addressing the illegality of a religious test for cottage ownership was submitted to the Board. Trustees took no action to stop religious discrimination.
- By November 2016, several Bay View members filed complaints with the U.S. Department of Housing and Urban Development (HUD) arguing the religious test was unlawful. A copy of the Memorandum of Facts and Law that provides the legal basis for this filing was provided to each member of the Bay View Board of Trustees. (The HUD investigation remains ongoing.)

3. It is my opinion based on the climate in Bay View and many of the Board's efforts to draw Bay View closer to the United Methodist Church after 2013 that, by the time this lawsuit was filed, Bay View was further than ever from correcting its history of discrimination.

1

4. The "Above Board" emails attached in this matter were circulated by Bay View leadership.

5. As they reflect, the Board of Trustees had long since adopted a policy against even discussing removal of the religious test – a policy it maintained right up until August 2, 2018. Only then, after several of the Board members attended the oral argument in this case, did the Board reveal that a large majority of the Trustees were in favor of the proposed amendment. Even though the Board had previously determined to stay neutral, the President of Bay View endorsed a bylaw change for the first time. As the Board reported in an attached Above Board, one reason for this change of heart was that the Board felt a "jury trial" might be less likely, if the new bylaw passed.

6. The new bylaw passed with 69% of the vote, exceeding the 67% vote requirement by 2%.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on ___9/11/18___.

Dated:

_Donald N. duquette_
Don Duquette

2