# EXHIBIT L

Case v. Jones-Kelly, Not Reported in F.Supp.2d (2010)

2010 WL 99086, Med & Med GD (CCH) P 303,270

KeyCite Yellow Flag - Negative Treatment

Distinguished by Ability Center of Greater Toledo v. Lumpkin, N.D.Ohio, February 28, 2011

2010 WL 99086
United States District Court,
S.D. Ohio,
Eastern Division.

Raymond CASE, et al., Plaintiffs,
v.
Director Helen JONES–KELLY, et al., Defendants.

Civil Action No. 2:08–CV–1171.
|
Jan. 5, 2010.

West KeySummary

1    **Federal Courts**
     👉 **Environment and health**

Claims that a director of job and family services had violated claimants' civil rights under the Social Security Act were capable of repetition, yet evading review, and thus were not dismissed as moot, on the basis that the claimants had been awarded medicaid disability benefits. The claimants alleged that the director failed to process their Medicaid applications with reasonable promptness, because they had to wait longer than the statutory maximum. The claimant's all had chronic conditions, that were likely to improve through treatment enough to be removed from coverage, only to have the conditions deteriorate and have to reapply again. U.S.C.A. Const. Art. 3, § 1 et seq.; Medicaid Act, § 1902, 42 U.S.C.A. § 1396a.

2 Cases that cite this headnote

**Attorneys and Law Firms**

Kathleen C. McGarvey, Ashley Saltzman, The Legal Aid Society of Columbus, Frederick Martin Gittes,

Jeffrey Paul Vardaro, The Gittes Law Group, Jamie L. Radosevich, Columbus, OH, for Plaintiffs.

William C. Greene, Ohio Attorney General's Office, Arnold Paul Thies, Columbus, OH, for Defendants.

*OPINION & ORDER*

ALGENON L. MARBLEY, District Judge.

## I. INTRODUCTION

**\*1** This matter is before the Court on Defendants', Director Helen Jones–Kelly, et al., Motion for Summary Judgment (Doc. 10) and Motion for Judgment on the Pleadings (Doc. 11). Defendants contend that they are entitled to summary judgment because Plaintiffs' claims are moot, and because Defendants are entitled to sovereign immunity. For the reasons described below, Defendants' motions are **GRANTED** in part and **DENIED** in part.

## II. BACKGROUND

Plaintiffs are four individuals, Raymond Case, Timothy Stolz, Jack Armstrong, and Julie Seymour, who each applied independently for Medicaid for the disabled. Defendant Douglas Lumpkin is currently serving as the Director of the Ohio Department of Job and Family Services ("ODJFS"). When the complaint was filed, Lumpkin was named as a defendant in his official capacity as the Director of the Franklin County Department of Job and Family Services ("FCDJFS"), and Helen Jones–Kelly was named in her official capacity as the Director of the Ohio Department of Job and Family Services. After the complaint was filed, Jones–Kelly resigned, and Lumpkin took over as Director of ODJFS. David Migliore is now the Director of FCDJFS. In addition to the Directors of ODJFS and FCDJFS, the Board of Commissioners of Franklin County ("Board") has also been named as a defendant.

Medicaid for the disabled provides medically necessary services to individuals who establish their eligibility by proving that they meet certain financial requirements and the statutory definition of disability. 42 U.S.C. § 1396a. An individual in Ohio wishing to receive

Case 1:17-cv-00622-PLM-RSK ECF No. 57-12 filed 09/11/18 PageID.981 Page 3 of 30
Case 8:09-cv-... (Key, Not Reported in F.Supp.2d (2010))
2010 WL 99086, Med & Med GD (CCH) P 303,270

assistance through Medicaid for the disabled applies to the county Department of Job and Family Services. O.A.C. § 5101:1–38–01 .2. The county then determines whether the individual meets the statutory definition of disability by collecting at least twelve months of medical records, paying for any necessary exams, and assisting the individual with the application process when requested. O.A.C. § 5101:1–39–3. Both federal law and Ohio law require that a determination be made "with reasonable promptness," which is defined to mean within ninety days of the application date. 42 C.F.R. § 435.911(a)(1); O.A.C. § 5101:1–38–01.2. Plaintiffs were required to wait longer than the maximum allowed ninety days for their eligibility determinations in this case. Each Plaintiff had his or her application approved in the weeks following commencement of this lawsuit.

Case applied on or about July 31, 2008, His application was not processed until February 5, 2009, more than the permissible ninety days after his application was filed. Case was awarded coverage retroactive to April 1, 2008.

Stolz applied on April 28, 2008. When his application had not been processed by July 30, 2008, Stolz requested a state hearing. The hearing was held on September 22, 2008. On December 15, 2008, Stolz's application was approved and he was awarded retroactive coverage to April 1, 2008.

**\*2** Armstrong filed his application on January 29, 2007, and his application was denied on July 20, 2007, for lack of medical documentation. Stolz requested a hearing, and he was assisted in obtaining medical documentation. His application was approved on January 29, 2009, and he was awarded coverage retroactive to September 1, 2006.

Seymour filed her application on or around February 21, 2007. Her application was denied on April 30, 2007. She appealed, and a hearing was held on July 20, 2007. Defendants were ordered to assist Seymour in obtaining necessary materials. On October 15, 2007, her application was denied for the second time. She requested another hearing, and a second hearing was held on December 13, 2007. Defendants were ordered to rescind her denial and assist her in obtaining medical records. On July 22, 2008, Seymour received a third denial notice. On August 12, 2008 a third hearing was held. On January 28, 2009, Seymour's application was approved, and she was granted benefits retroactive to November 1, 2006.

When Plaintiffs initially filed their complaint, they sought a declaratory judgment that Defendants had violated Plaintiffs' civil rights under the Social Security Act and the Due Process Clause of the Fourteenth Amendment; injunctions ordering Defendants to provide Plaintiffs with the appropriate Medicaid coverage [1] and to process Medicaid applications with reasonable promptness; and compensatory damages.

### III. STANDARD OF REVIEW

#### A. SUMMARY JUDGMENT

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). But "summary judgment will not lie if the ... evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Barnhart v. Pickrel, Schaeffer & Ebeling Co. ., 12 F.3d 1382, 1388–89 (6th Cir.1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251– 52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed.R.Civ.P. 56(e)(2); see Celotex, 477 U.S. at 324; Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir.1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." Moore v. Philip Morris Co., 8 F.3d 335, 339–40 (6th Cir.1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. InterRoyal Corp. v. Sponseler, 889 F.2d 108, 111 (6th Cir.1989). Instead, the Court may rely on the evidence called to its attention by the parties. Id.

## B. JUDGMENT ON THE PLEADINGS

**\*3** A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt.,* 249 F.3d 509, 511–12 (6th Cir.2001). A "motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus,* 404 F.3d 950, 958–59 (6th Cir.2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 553 F.3d 430, 434 (6th Cir.2008); *Murphy v. Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997).

Although liberal, this standard requires more than the bare assertion of legal conclusions. *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir.1993). Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell,* 545 F.3d 459, 470 (6th Cir.2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotations omitted)). While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(c) motion is granted only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Serv. v. Mental Health & Recovery Bd.,* 395 F.Supp.2d 644, 649 (S.D.Ohio 2004).

## IV. LAW & ANALYSIS

Defendants contend that they are entitled to judgment on the pleadings or, in the alternative, summary judgment, for two reasons: (1) Plaintiffs' claims for injunctive relief are moot; and (2) Defendants are entitled to immunity against Plaintiffs' claims for compensatory damages.

## A. MOOTNESS

Under Article III of the United States Constitution, a federal court only has jurisdiction over a live case or controversy. U.S. Const. art. III § 2; *see also Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). The "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis,* 494 U.S. at 477. And "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). There are, however, two exceptions to the mootness doctrine. First, a case will not be dismissed even when a plaintiff's claim has become moot if the circumstances are such that the injury is capable of repetition, yet evading review. *Weinstein v. Bradford,* 423 U.S. 147, 148–49, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). Second, a case will not be dismissed where a plaintiff's claim has been mooted by a defendant's voluntary cessation of allegedly improper behavior. *Friends of the Earth, Inc. v. Laidlaw Env. Svcs.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

### 1. Capable of Repetition Yet Evading Review

**\*4** "[T]he 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combine[ ]:(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Weinstein,* 423 U.S. at 149. Durations short enough to satisfy the first requirement include the nine-month (266–day) duration of a pregnancy, *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); periods of hospitalization lasting less than a month,

Case 1:17-cv-00622-PLM-RSK ECF No. 57-12 filed 09/11/18 PageID.983 Page 5 of 30
Case 6:10-cv-00457-KMW Document 11 (In Supp. Zer (2010))

2010 WL 99086, Med & Med GD (CCH) P 303,270

*Granato v. Bane,* 74 F.3d 406, 411 (2d Cir.1996); and a sixty-day limit on inpatient hospital benefits, *Colautti v. Doe,* 592 F.2d 704, 707 (3d Cir.1979). A "reasonable expectation" satisfying the second requirement exists where a plaintiff is a woman who may become pregnant again, *Roe,* 410 U.S. at 125; where a plaintiff is subject to "the possibility of periodic hospitalizations for the rest of her life" because of "serious chronic health problems," *Granato,* 74 F.3d at 411; and where a plaintiff has "an erratic past, from hospitalization to discharge to hospitalization again," *Colautti,* 592 F.2d at 707.

Each of the Plaintiffs in this case was subject to a waiting period, forbidden by statute from lasting more than ninety days, before his or her Medicaid for the disabled application was processed. The average actual waiting period for processing a Medicaid for the disabled application in Ohio is 258 days (Resp. at 17). Using either time period as a benchmark—the ninety-day mandated maximum, or the 258-day actual average—the duration of time is sufficiently short to satisfy the first requirement.

Plaintiffs allege that there is a reasonable expectation that each of them will be subjected to the same action again, because of the chronic but treatable nature of their conditions. They fear that through treatment, they will improve enough to be dropped from their Medicaid for the disabled coverage, only to deteriorate again and have to re-apply for coverage. While conceding that "it is impossible to speculate as to when and why these Plaintiffs will need to reapply for benefits," (Resp. at 18), Plaintiffs rely on a study performed by Dr. Benjamin Sommers to support their contention. Dr. Sommers performed a national study of 4,992 adults and 8,599 children enrolled in Medicaid. He concluded that within under two years of enrollment, 55% of the individuals in his study had been disenrolled, including 31 % of those individuals whose disabilities should have meant that they were always eligible for assistance. (Resp. at 18; Sommers Aff. at ¶¶ 13–14). In fact, since this case was filed, two of the Plaintiffs, Stolz and Armstrong, have been mistakenly "slated for removal from the Medicaid rolls, and were spared from that eventuality only through the intervention of their attorneys." (Resp. at 18; Stolz Aff.; Armstrong Aff.) Given the chronic nature of the Plaintiffs' conditions; their ability to improve through treatment and eventually be removed from Medicaid coverage, only to deteriorate and have to apply again; and their prior experience with the threat of removal from coverage, there is a "reasonable

expectation" that these Plaintiffs will be subject to the same action again, and the case will not be dismissed as moot . [2] Indeed, Plaintiffs' claims are cable of repetition, yet evading review.

**2. Voluntary Cessation of Illegal Conduct**

**\*5** Defendants contend that Plaintiffs' claims are moot because each of Plaintiffs' applications has been processed. The applications were each processed in the weeks following the filing of this lawsuit. (Resp. at 11–14) Even if the facts of this case were not capable of repetition, yet evading review, a case is not rendered moot by "a defendant's voluntary cessation of a challenged practice ." *Friends of the Earth,* 528 U.S. at 189. "If it [were], the courts would be compelled to leave the defendant ... free to return to his old ways." *Id.* (internal quotation marks omitted). As a result, "[t]he test for mootness in cases such as this is a stringent one.... A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. The Concentrated Phosphate Export Assoc., Inc.,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (emphasis added). The case will only be moot as the result of voluntary cessation "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one." *United States v. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) (quoting *United States v. Aluminum Co. Of America,* 148 F.2d 416, 448 (2d Cir.1945)). *See also Friends of the Earth,* 528 U.S. at 170 ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.").

Even voluntary cessation in the form of repealing a statute may not be sufficient to moot a case. *See, e.g. City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (holding that a city's repeal of part of an ordinance did not moot the case because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated"). In addition, compliance with a court order may be insufficient to moot a case. *See, e.g., Bakery Drivers v. Wagshal,* 333 U.S. 437, 442, 68 S.Ct. 630, 92 L.Ed. 792

(1948) (holding that case was not mooted by union's lifting of boycott pursuant to court order).

Defendants' behavior in this case falls far short of meeting its burden in establishing that it is absolutely clear that its failure to process Medicaid claims with reasonable promptness will not recur. Defendants have merely processed the applications of these four individuals after being prompted by the filing of a federal lawsuit. There has been no evidence to this point that Defendants have done anything to solve what appears to be a systemic problem. Merely taking prompt action in response to a federal complaint, after taking no action at all for approximately nine months, does not convince this Court that this behavior will not be repeated. As a result, Defendants' voluntary cessation of the behavior complained about here does not moot Plaintiffs' claims.

**\*6** Because Plaintiffs' claims for injunctive relief are not moot, neither summary judgment nor judgment on the pleadings is proper.

## B. IMMUNITY

Because the claims are not moot, the Court must address Defendants' assertions of immunity. Defendants concede that the Eleventh Amendment does not bar suits for injunctive relief against the state or county officials under *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). [3] Both the Director of ODJFS and the Director of FCDJFS, however, assert Eleventh Amendment immunity against Plaintiffs' claims for compensatory damages.

### 1. Director of ODJFS

The Eleventh Amendment bars suits for compensatory damages against state officials acting in their official capacities. *Edelman,* 415 U.S. at 663 ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Because the Director of ODJFS is only being sued in his official capacity, he is immune from Plaintiffs' claims for compensatory damages.

### 2. Director of FCDJFS

The Eleventh Amendment does not generally bar suits against "counties and similar municipal corporations." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (citing *Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890)). If a local entity is acting as an "arm of the state" in engaging in the challenged conduct, however, Eleventh Amendment sovereign immunity is granted to that local entity. *Ernst v. Rising,* 427 F.3d 351, 358 (6th Cir.2005) (citing *Mt. Healthy,* 429 U.S. at 280). When determining whether an entity is acting as an arm of the state, courts consider four factors:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes, and state courts, refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local official appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Ernst,* 427 F.3d at 359 (internal citations omitted). The first factor carries the most weight. *Id.*

#### a. State's Potential Liability

The State's potential liability for a judgment against a local entity is evaluated based on "the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in *that* case." *Id.* " 'Where an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against the state treasuries, common sense and the rationale of the [E]leventh [A]mendment require that sovereign immunity attach to the agency.' There is no such requirement where the agency is structured ... to be self-sustaining." *Hess v. Port–Authority Trans–Hudson Corp. .,* 513 U.S. 30, 50, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Courts evaluating immunity with respect to county Departments of Jobs and Family Services have come out different ways when determining the State's potential liability. In *Lowe v. Hamilton County Job & Family Services,* 2009 WL 818960 (S.D.Ohio March 27, 2009), the court found the potential liability factor to weigh against immunity, in part because the county agency conceded that "Hamilton County funds will pay any potential judgment," and the agency did not "present evidence that the state will reimburse the County] for costs requested by the County." *Lowe,* 2009 WL 818960 at *5.* In contrast, in *Gamble v. Ohio Department of Job and Family Services, et al.,* 2006 WL 38996 (S.D.Ohio Jan.5, 2006), the court found this factor to weigh in favor of immunity because the county agency was "an integral part of a state-conceived and directed distribution system for state and federal public assistance dollars ... [which] relies heavily on the state treasury to carry out its mission." *Gamble,* 2006 WL 38996 at * 7.* The difference between these two cases, which is critical to Plaintiffs' claims here, is that in *Lowe,* the plaintiffs were asking for damages —not payment of funds that had not been disbursed— whereas in *Gamble,* the plaintiffs were seeking to recover payment of funds that had not been disbursed, in addition to damages. Plaintiffs here initially requested payment of funds that had not been disbursed. Because their applications were processed and benefits were distributed soon after the filing of their complaint, however, they now seek only damages. Were they still seeking disbursement of Medicaid funds, the State treasury would no doubt be implicated, as the State is responsible for financing Medicaid benefits. That is not the case here, however, because Plaintiffs no longer seek those State-funded benefits.

**\*7** Federal regulations specifically exclude "[f]ines, penalties, damages, and other settlements resulting from violations (or alleged violations) of, or failure of the governmental unit to comply with, Federal, State, [or] local ... laws." 2 C.F.R. Pt. 225, App. B, ¶ 16. In addition, a representative of FCDJFS on financial and budgetary issues conceded that Ohio does not reimburse county agencies for damages or settlements paid as the result of a lawsuit. Neither the federal nor the state treasury, therefore, is implicated in this case. Because FCDJFS is solely responsible for any judgment rendered in this case, and the State runs no risk of potential liability, the first factor weighs against granting FCDJFS immunity as an arm of the state.

**b. State Control over County's Actions**

The second factor, how state courts and statutes refer to the entity and the degree of state control over the county's activities, presents a factual dispute. Plaintiffs claim that, despite some role played by the State in determining Medicaid eligibility, most of the responsibility falls on FCDJFS. (Resp. at 27–32.) Defendants, in contrast, contend that they are "under extensive and detailed state control." (JP Motion at 12.) Defendants support that contention by pointing to the Ohio statutory scheme that invokes county participation in the Medicaid program even though "it would also be within the federal grant for Ohio to not involve the county departments of job and family services at all." (*Id.* at 11.) However, "[t]he existence of a state statute creating an entity, or broadly authorizing that entity's activities, does not in itself render that entity an 'arm of the state.' " *Gamble,* 2006 WL 38996 at *7 (citing *Botherton v. Cleveland,* 173 F.3d 552, 561 (6th Cir.1999)). The question, instead, is whether the State exercises "extensive and detailed control over" the county's activities. *Ernst,* 427 F.3d at 360.

The county function at issue in this case is determining eligibility for Medicaid. There is no doubt that both federal and Ohio law provide some rules and regulations governing who is eligible for Medicaid coverage. *See, e.g.,* O.A.C. § 5101:1–1–36 (noting that federal law "mandates that state agencies administering federally funded public assistance programs develop and implement an income and eligibility verification system" and outlining Ohio's system). It is not clear from the record, however, exactly how much discretion the County has in implementing the broad requirements imposed by the State. Plaintiffs allege that discovery has demonstrated that where no specific regulatory language covers a given situation, the County is given complete discretion to handle the situation as it sees fit.

Defendants point to *Community Mental Health Services v. Mental Health and Recovery Board,* 395 F.Supp.2d 644 (S.D.Ohio April 22, 2004) to support their contention that the State controls the County's functions in this case. However, that case involved a Mental Health and Recovery Board ("MHRB") and its distribution of funds to third-party contractors providing services to mentally ill patients. *Community Mental Health Services,* 395

F.Supp.2d at 647–48. While the court in that case did find that the MHRB was "perform[ing][its] duties under the oversight and control of ODJFS," *Id.* at 651–52, that case involved an entirely different agency performing an entirely different function than the one at issue here. *See Lowe,* 2009 WL 818960 at *6 (distinguishing *Community Mental Health Services* because it involved a different agency performing a different function).

*8 Here, it is not clear what role the State actually plays in overseeing the FCDJFS's Medicaid eligibility determinations. A factual dispute remains, therefore, rendering summary judgment inappropriate.

### c. Appointment Authority

The third factor is the State's authority to appoint the local entity's board members. Defendants concede that the State has no appointment authority, and that the Board bears all appointment responsibility. (JP Motion at 14.) This factor therefore weighs against granting Defendants' motions.

### d. Traditional Function Performance

The final factor is whether the local entity is performing a function traditionally performed by the state. Plaintiffs allege that "welfare administration is a traditionally local function," (Resp. at 33), while Defendants contend that "it would be well within the authority of the General Assembly to provide its citizens with benefits like Medicaid." (JP Mot. at 14.) The fact that the State *could* provide this type of service, however, does not necessarily mean that this is a service traditionally performed by the state. In fact, the authority to which Defendants point for

their contention actually found that this factor weighed "weakly against a grant of sovereign immunity." *Gamble,* 2006 WL 38996 at *10.

Courts in the Sixth Circuit have reached various results when determining whether public assistance programs should be considered traditionally state or local functions. *See id.* (collecting cases). The record contains insufficient facts on this issue for the Court to determine that Medicaid or other public welfare programs are services traditionally performed by either the state or the county.

Because FCDJFS has been unable to establish that it is acting as an "arm of the state" in making Medicaid eligibility determinations, and because the pleadings do not establish that Plaintiffs are not entitled to relief, neither summary judgment nor judgment on the pleadings for the Director of FCDJFS and the Board is proper.

### V. CONCLUSION

For the foregoing reasons, the Director of ODJFS's Motion for Summary Judgment is **GRANTED** to the extent that the Director is immune from Plaintiffs' claims for compensatory damages, and to the extent that Plaintiff Julie Seymour's claim is moot, but **DENIED** in all other aspects. FCDJFS's Motion for Judgment on the Pleadings is **GRANTED** to the extent that Plaintiff Julie Seymour's claim is moot, but **DENIED** in all other aspects. [4]

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2010 WL 99086, Med & Med GD (CCH) P 303,270

---

Footnotes

1   Defendants have already provided this relief, as they processed Plaintiffs' applications shortly after the complaint was filed in this case.

2   One Plaintiff, Julie Seymour, has been determined by the Social Security Administration to be disabled. As a result of that determination, it is unlikely she will ever be required to go through the eligibility process again, and her claim is moot. The other four Plaintiffs, however, may proceed with their claims.

3   While conceding that they do not enjoy immunity from Plaintiffs' claims for injunctive relief, Defendants contend that those claims are moot, as discussed above. Because the Court finds that Plaintiffs' claims for injunctive relief are not moot, and because Defendants neither assert nor are entitled to immunity on those claims, those claims may proceed.

**Case v. Jones-Kelly, Not Reported in F.Supp.2d (2010)**
2010 WL 99086, Med & Med GD (CCH) P 303,270

---

4    Plaintiffs also filed a Motion to Strike a Portion of the Reply Brief of the Franklin County Defendants (Doc. 47). That Motion is now **MOOT.**

---

**End of Document**                                            © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3745736
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Northern Division.

Alrelio EVANS #367619, Plaintiff,
v.
Thomas PRISK, et al., Defendants.

Case No. 2:17-cv-00046
|
Signed 07/05/2018

**Attorneys and Law Firms**

Alrelio Evans, Kincheloe, MI, pro se.

John L. Thurber, Joseph Ho, Michigan Department
of Attorney General Civil Litigation, Employment &
Elections, Lansing, MI, for Defendants.

**REPORT AND RECOMMENDATION**

TIMOTHY P. GREELEY, UNITED STATES
MAGISTRATE JUDGE

*1 This is a civil rights action brought by state prisoner
Alrelio Evans pursuant to 42 U.S.C. § 1983. Plaintiff is
currently confined in the Chippewa Correctional Facility
in Kincheloe, Michigan. Plaintiff alleges that when he
was confined in the Marquette Branch Prison (MBP),
in Marquette, Michigan, Defendants Warden Robert
Napel and Chaplin Thomas Prisk denied him Jehovah's
Witness group services. Plaintiff asserts claims under the
Religious Land Use and Institutionalized Persons Act
(RLUIPA) and the First Amendment for violating his
rights to exercise his religious beliefs and the Fourteenth
Amendment for violating his equal protection rights by
allowing other religions to have group services with less
than five prisoners in attendance. Plaintiff also asserts that
Defendants conspired to deprive him of his rights. Plaintiff
requests injunctive and declaratory relief, compensatory,
punitive, and nominal damages. Defendants filed a
motion for summary judgment (ECF No. 95). Plaintiff
filed a response (ECF No. 102).

Defendant Prisk responded to Plaintiff's request for
religious services in a memorandum dated October 6,
2016:

> Your request to attend a Jehovah
> Witness service has been received
> and you have been placed on
> a waiting list. Currently, there is
> not enough interest in attending
> such a service from prisoners
> who have listed their religious
> preference as Jehovah Witness to
> seek time and space for this service.
> When sufficient prisoner interest is
> established, I will confer with the
> administration regarding when a
> service might be scheduled. Watch
> for the call-out on your itinerary.

(Michigan Department of Corrections Memorandum,
ECF No. 1-8, PageID.88). Defendants refused Plaintiff's
immediate request for group services because there
were less than five members of Jehovah's Witnesses at
MBP that had requested group service. Policy Directive
05.03.150(V) provides in part:

> Group religious services shall be
> offered at all institutions for
> prisoners belonging to a recognized
> religious group. Except as set forth
> in Attachment A, each group
> shall be allowed a weekly religious
> service if resources permit. However,
> a service is not required to be
> conducted if there are less than five
> prisoners within the same security
> level of that institution who actively
> participate in the religious activities
> of a group.

(ECF No. 95-3, PageID.563). Plaintiff argues that this
policy is unconstitutional under the First Amendment
and Fourteenth Amendment, and violates RLUIPA.
Alternatively, Plaintiff states that a question of fact exists
regarding whether there were more than five prisoners
within the same security level as Plaintiff who requested
group Jehovah's Witness services at MBP. Defendants
argue that Plaintiff's RLUIPA claim fails and that they
are entitled to qualified immunity from liability because
there was no violation of clearly established law.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25, 106 S.Ct. 2548. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (quoting Fed. R. Civ. P. 56(e) ). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994) ). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

**\*2** Defendants argue that Plaintiff may not obtain injunctive relief or monetary damages under RLUIPA. Plaintiff was transferred from MBP on October 3, 2017, and is now housed at the Chippewa Correctional Facility. Plaintiff requests that MBP provide Jehovah's Witness group services because he believes that he could be transferred back to MBP after this litigation ends. The Sixth Circuit determined that when a prisoner is seeking a declaratory judgment against a prison where he is no longer housed, the prisoner's claims against *that institution* have become moot. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (holding a Michigan prisoner's request for declaratory and injunctive relief was moot after he was

transferred to another prison facility because the prisoner directed his request for relief specifically at the policies of the facility housing him previously, not at an MDOC policy).

Underlying the court's brief determination is the constitutional and statutory requirement that federal courts only adjudicate cases of "actual controversy." U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 2201. According to the Supreme Court, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ). When considering the mootness of a request for declaratory judgment, the Court has considered factors such as whether there was a "mere voluntary cessation of allegedly illegal conduct," whether the defendant was left "free to return to his old ways," or whether there was a "reasonable expectation that the wrong will be repeated." *Preiser*, 422 U.S. at 402, 95 S.Ct. 2330.

Plaintiff has not attacked the constitutionality of the Policy Directive 05.03.150 as applied throughout the MDOC, but only as applied by Defendants Napel and Prisk at MBP. (Plaintiff's deposition, ECF No. 95-2, PageID.554). Plaintiff's claim that he will be denied group services if he is transferred to MBP in the future is speculative and not "ripe" for adjudication at this time because the legal conflict contemplated by Plaintiff is too remote to be an "actual controversy" under Art. III of the constitution or 28 U.S.C. § 2201. *See Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (holding that "[a]llegations of possible future injury do not satisfy the requirements of Art. III" of the constitution and that a "threatened injury must be 'certainly impending' to constitute injury in fact"), *Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648, 651-52 (6th Cir. 2005), and *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville &Davidson Cty., Tenn.*, 274 F.3d 377, 399 (6th Cir. 2001) (explaining that the doctrine of ripeness "exists to ensure that courts decide only existing, substantial controversies, *not hypothetical questions or possibilities*" (internal quotation marks omitted, emphasis added) ). In the opinion of the undersigned, Plaintiff's

assertion that he will be denied group services if returned to MBP is too speculative to warrant injunctive relief. [1]

In addition, the Sixth Circuit held that RLUIPA does not allow for money damage claims against prison officials in their official capacity. *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014). Nor does RLUIPA provide for damages against state employees in their individual capacities. *See Washington v. Gonyea*, 731 F.3d 143, 145 (2nd Cir. 2013); *Stewart v. Beach*, 701 F.3d 1322, 1334-35 (10th Cir. 2012); *Sharp v. Johnson*, 669 F.3d 144, 154-55 (3rd Cir. 2012); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 327-28 & n. 23 (5th Cir. 2009); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1272-75 (11th Cir. 2007). This Court has repeatedly held that RLUIPA does not provide a cause of action for damages against state actors in their individual capacities. *See, e.g. Green v. Tudor*, 685 F.Supp.2d 678, 699 (W.D. Mich. 2010); *Wood v. Mich. Dep't of Corrs.*, No. 1:12-cv-1342, 2013 U.S. Dist. LEXIS 79310, 2013 WL 2458390 (W. D. Mich. June 6, 2013); *Crump v. Prelesnik*, No. 1:10-cv-353, 2013 U.S. Dist. LEXIS 45126, 2013 WL 1337790, at *1 n. 1 (W.D. Mich. Mar. 29, 2013); *Hall v. Martin*, No. 1:10-cv-1221, 2012 U.S. Dist. LEXIS 63300, 2012 WL 1579334, at *6 (W.D. Mich. Mar. 29, 2012).

**\*3** Defendants move for dismissal of Plaintiff's First Amendment and Fourteenth Amendment claims based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232-233, 129 S.Ct. 808. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citations omitted); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348, 121 F.3d 707, ——, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"). Although, inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91, 107 S.Ct. 2254).

Evans v. Prisk, Slip Copy (2018)
2018 WL 3745736

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner,* 241 F.3d at 484 (quoting *Turner,* 482 U.S. at 89-90, 107 S.Ct. 2254) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner,* 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

**\*4** Applying these factors, the Sixth Circuit has upheld the Constitutionality of rules that require five documented members of a faith before providing group religious services, and has granted prison officials qualified immunity from liability on similar claims.

This court has consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services. See, e.g., *Spies v. Voinovich,* 173 F.3d 398, 404 (6th Cir.1999) (concluding that a prison's requirement that a minimum of five inmates of a particular faith must be interested in forming a faith group before the prison will provide for religious services has a "valid, rational connection to legitimate government interests in maintaining security and allocating prison resources"); *Hall v. Tyszkiewicz,* 28 F. App'x 493, 495-96 (6th Cir.2002) (holding that an inmate was not deprived of his constitutional rights where the prison did not hold Jewish services due to a lack of interest, and where a rabbi visited the inmate once a month); *Bruton v. McGinnis,* 110 F.3d 63, 1997 WL 139797, at \*3 (6th Cir. Mar. 26, 1997) (unpublished table decision) ("Scheduling constraints make it clearly unreasonable to provide separate group services for every religious sect that may arise."). In addition, Colvin points to no restrictions on his ability to practice Judaism privately, read Jewish literature, or correspond with other practitioners of the Jewish faith. *See Spies,* 173 F.3d at 404-05 (concluding

that an inmate's ability to "meditate privately in the chapel, correspond with fellow believers, and consult individually with a personal minister" demonstrated that he had alternative ways of exercising his religious rights).

*Colvin v. Caruso,* 605 F.3d 282, 291 (6th Cir. 2010). In *Spies,* the Sixth Circuit upheld a similar policy requiring five documented prisoners of a faith before allowing group worship. 175 F.3d at 404-405. In applying the Turner factors, the Sixth Circuit concluded that the rule has a rational connection to "maintaining security and allocating prison resources." *Id.* at 404. *Spies* had alternative means of exercising his religious beliefs such as meditating privately in the chapel and corresponding with fellow believers. *Id.* Accommodation of small prisoner groups strains limited prison resources and prison officials "have an interest in regulating equitably the use of the prison chapel." *Id.* at 405. Finally, *Spies* failed to point to "ready alternatives available to the regulation in question that fully accommodates his rights at de minimis cost to valid penological interests ..." *Id.*

In the opinion of the undersigned, the MDOC Policy Directive that allows group services for an approved religion, once five prisoners in the same custody level make a request for service, satisfies Constitutional standards under the *Turner* test as stated in *Colvin* and *Spies.* Defendants are entitled to qualified immunity from liability for relying on the policy directive in denying Plaintiff group services at MBP. In addition, Plaintiff has failed to show a question of fact exists as to the number of Jehovah's Witness prisoners at MBP who made a similar request for group religious services. Defendant Prisk attests that as of October 29, 2016, he was only aware of four prisoners who were member of the Jehovah's Witnesses at MBP. In accordance with policy, a Jehovah's Witness group service was unavailable because less than five prisoners requested and were eligible for group service. Defendant Prisk stated that although Plaintiff asserts that ten prisoners were members of the Jehovah Witness faith, he only named eight prisoners in exhibits to his complaint, and only four of those prisoners declared Jehovah's Witness as their religious preference. (ECF No. 95-4, PageID. 571-572).

**\*5** Plaintiff asserts a violation of his equal protection rights because the policy directive allowing group services was not equally applied to each religion. Defendants argue that since Plaintiff has asserted a First Amendment

claim, he cannot also assert an equal protection claim under the Fourteenth Amendment. Defendants fail to cite relevant authority. *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) and *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) involve dismissal of a generalized substantive due process claim when an explicit source of constitutional protection could establish an identical claim. In this case, Plaintiff is asserting two different claims under the Constitution, a First Amendment freedom of religion claim and a Fourteenth Amendment equal protection claim. These claims involve independent factors and different factual support.

Plaintiff states that Defendants allowed group services for less than five Catholic, Protestant, M.S.T. of A, Buddhist, Al Islam, and Nation of Islam prisoners at MBP. Defendants assert that Plaintiff has failed to show purposeful intent, because Defendants applied the policy directive to Plaintiff's request for group service. Defendants have simply ignored Plaintiff's claim that Defendants have failed to apply the policy equally to each religion. To establish a violation of the Equal Protection Clause, a prison inmate must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Heckler v. Mathews*, 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984); *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Defendants failed to address the merits of Plaintiff's equal protection claim. Therefore, in the opinion of the undersigned, Plaintiff's equal protection claim should proceed.

Plaintiff asserts that Defendants conspired to deny him group services. Plaintiff's conspiracy claim is based upon an allegation that Defendant Napel accepted Defendant Prisk's statement that there were not enough prisoners for Jehovah's Witness group services. It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under 42 U.S.C. § 1983 *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to state a claim of civil conspiracy under § 1983, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, violating the plaintiff's constitutional rights, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. In the opinion of the undersigned, Plaintiff fails to allege facts showing the existence of a civil conspiracy under § 1983. Other than conclusory statements alleging conspiracy, Plaintiff has failed to provide any material facts supporting Plaintiff's claim that Defendants acted in concert to deny him his ability to practice his faith.

Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 94) be granted in part and denied in part. It is recommended that the motion be granted as to Plaintiff's RLUIPA, First Amendment, and conspiracy claims, and that the motion be denied as to Plaintiff's equal protection claim.

**All Citations**

Slip Copy, 2018 WL 3745736

Footnotes

1    The Court denied Plaintiff's motion for injunctive relief. (ECF No. 101) The Sixth Circuit denied Plaintiff's appeal because his request was moot due to his transfer from MBP. (ECF. No. 105).

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.                    5

Case 1:17-cv-00622-PLM-RSK ECF No. 57-12 filed 09/11/18 PageID.993 Page 15 of 30
Arelio Evans, Plaintiff, v. Thomas Prisk, et al., Defendants, Slip Copy (2018)
2018 WL 3729533

2018 WL 3729533
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Southern Division.

ARELIO EVANS, Plaintiff,
v.
THOMAS PRISK, et al., Defendants.

CASE NO. 2:17-CV-46
|
08/06/2018

ROBERT J. JONKER, CHIEF UNITED STATES
DISTRICT JUDGE

**ORDER APPROVING AND ADOPTING
REPORT AND RECOMMENDATOIN**

**\*1** The Court has reviewed Magistrate Judge Greeley's
Report and Recommendation in this matter (ECF No.
107) and Defendants' Objections (ECF No. 109). [1] Under
the Federal Rules of Civil Procedure, where, as here,
a party has objected to portions of a Report and
Recommendation, "[t]he district judge...has a duty to
reject the magistrate judge's recommendation unless, on
de novo reconsideration, he or she finds it justified."
12 WRIGHT, MILLER, & MARCUS, FEDERAL
PRACTICE AND PROCEDURE, § 3070.2, at 451 (3d
ed. 2014). Specifically, the Rules provide that:

> The district judge must determine
> de novo any part of the
> magistrate judge's disposition that
> has been properly objected to.
> The district judge may accept,
> reject, or modify the recommended
> disposition; receive further evidence;
> or return the matter to the
> magistrate judge with instructions.

FED. R. CIV. P. 72(b)(3). De novo review in these
circumstances requires at least a review of the evidence
before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d
1208, 1215 (6th Cir. 1981). The Court has reviewed de
novo the claims and evidence presented to the Magistrate
Judge; the

Report and Recommendation itself; and Defendants'
Objections. The Court finds the Magistrate Judge's
Report and Recommendation factually sound and legally
correct.

The Magistrate Judge recommends granting Defendants'
motion for summary judgment as to Plaintiff's RLUIPA,
First Amendment, and conspiracy claims, and denying
the motion as to Plaintiff's Equal Protection claim. The
Magistrate Judge points out that Defendants' motion
fails to address Plaintiff's Equal Protection claim that
Defendants have failed to apply the Policy Directive
05.03.150(V) equally to each religion. In their Objections,
Defendants reiterate their arguments that Plaintiff's
First Amendment claim subsumes his Equal Protection
claim and that Plaintiff has failed to show intentional
discrimination. The Magistrate Judge properly rejected
both arguments. Plaintiff asserts a stand-alone Equal
Protection claim that Defendants have failed to apply the
policy equally to each religion. At the summary judgment
stage, Defendants must address Plaintiff's factual claim
that they allowed group services for less than five
practitioners of other religions. Defendants' bald assertion
that Plaintiff has not shown intentional discrimination
does not meaningfully address the merits of Plaintiff's
claim and is not enough to support summary judgment.

**ACCORDINGLY, IT IS ORDERED**:

1. The Report and Recommendation of the Magistrate
Judge (ECF No. 107) is **APPROVED AND ADOPTED**
as the opinion of the Court.

2. Defendants' Motion for Summary Judgment (ECF
No. 94) is **GRANTED** as to Plaintiff's RLUIPA, First
Amendment, and conspiracy claims, and is **DENIED** as to
Plaintiff's Equal Protection claim. Dated: <u>August 6, 2018</u>
/s/ Robert J. Jonker

ROBERT J. JONKER

CHIEF UNITED STATES DISTRICT JUDGE

2

**All Citations**

Slip Copy, 2018 WL 3729533

2018 WL 3729533

Footnotes

1    Plaintiff has not filed an objection, and the period for objection has expired.

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

229 Fed.Appx. 393
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also
Sixth Circuit Rule 28. (Find CTA6 Rule 28)
United States Court of Appeals,
Sixth Circuit.

James D. HOOD, II, Plaintiff-Appellant,

v.

Ronald T. KELLER, Richard H. Finan, and
Kenneth Morckel, Defendants-Appellees.

No. 05-4373.
|
April 2, 2007.

**Synopsis**

**Background:** Christian minister who was arrested on Ohio
state grounds for publicly preaching without a permit
brought action against state officials for violation of his
First Amendment rights to freedom of speech and free
exercise of religion, seeking declaratory and injunctive
relief, compensatory damages, costs, and attorney fees.
Following remand, 341 F.3d 593, the United States
District Court for the Southern District of Ohio, 2005
WL 2405995, Marbley, J., granted summary judgment for
defendants on the ground that the minister's claims were
rendered moot by the appellate decision in a related case.
Minister appealed.

**Holdings:** The Court of Appeals, J. Daniel Breen,
United States District Judge for the Western District of
Tennessee, sitting by designation, held that:

[1] minister's claims for declaratory and injunctive relief
were rendered moot by appellate decision in related case;
but

[2] minister's claims for damages and attorney fees were
not rendered moot by that decision.

Affirmed in part, reversed in part, and remanded.

**West Headnotes (2)**

**[1]** **Constitutional Law**
       👉 Mootness

       **Declaratory Judgment**
       👉 State Officers and Boards

       Claims for declaratory and injunctive relief
       brought against state officials by Christian
       minister who was arrested on state grounds
       for publicly preaching without a permit, and
       who alleged violation of his First Amendment
       rights to freedom of speech and free exercise
       of religion, were rendered moot by appellate
       decision in related case, which held that the
       permit requirements for use of statehouse
       grounds were unconstitutional with respect to
       individuals and which let stand a district court
       injunction prohibiting the enforcement of the
       permitting scheme against individuals, since
       this decision declared the unconstitutionality
       of the permit regulations and provided the
       injunctive relief the minister sought. U.S.C.A.
       Const.Amend. 1; OAC 128-4-02, 128-4-03(A,
       B).

       7 Cases that cite this headnote

**[2]** **Civil Rights**
       👉 Grounds and Subjects;Compensatory
       Damages

       **Civil Rights**
       👉 Proceedings, Grounds, and Objections in
       General

       Claims for compensatory damages under §
       1983 and attorney fees under § 1988 brought
       against state officials by Christian minister,
       who was arrested on state grounds for publicly
       preaching without a permit, and who alleged
       violation of his First Amendment rights
       to freedom of speech and free exercise of
       religion, were not rendered moot by appellate
       decision in related case, which held that the
       permit requirements for use of statehouse
       grounds were unconstitutional with respect
       to individuals and which let stand a district

court injunction prohibiting the enforcement of the permitting scheme against individuals. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. §§ 1983, 1988; OAC 128-4-02, 128-4-03(A, B).

2 Cases that cite this headnote

**\*393** On Appeal from the United States District Court for the Southern District Of Ohio.

**\*394** BEFORE: COLE, McKEAGUE, Circuit Judges; BREEN, District Judge. [*]

## OPINION

J. DANIEL BREEN, District Judge.

**\*\*1** Plaintiff-Appellant James D. Hood, II, appeals the district court's order granting summary judgment in favor of the Defendants-Appellees Ronald T. Keller, Richard H. Finan, and Kenneth Morckel. Hood contends that the Defendants violated his First Amendment rights to freedom of speech and free exercise of religion by arresting him pursuant to Ohio statutory authority on Ohio state grounds for publicly preaching his faith without a permit, for which he seeks declaratory and injunctive relief, compensatory damages, costs, and attorney's fees. The district court held that Hood's claims were rendered moot by this court's decision in *Parks v. Finan*, 385 F.3d 694 (6th Cir.2004). Hood contends the district court erred in this conclusion. We **AFFIRM IN PART, REVERSE IN PART AND REMAND.**

## I. BACKGROUND

### A. Facts

James D. Hood, II is a Christian minister. As part of his faith, Hood preaches his "beliefs and convictions in public." Since approximately 1982, he has used the public areas on the Ohio Statehouse grounds in Columbus, Ohio to engage in "religious expressive activity."

The Capitol Square in Columbus is a ten-acre area containing state buildings and surrounding grounds. The Capitol Square Review and Advisory Board ("CSRAB") is appointed by state statute to manage

the Ohio Statehouse grounds by promulgating rules and regulations. Based on this authority, CSRAB passed a rule requiring that anyone wanting to use the Statehouse grounds must first obtain a permit. The rule provides in part that

> Capitol buildings or grounds are available for use by the public for the purpose of governmental business, public meetings for free discussion of public questions, or for activities of broad public purpose, provided the authorized procedure has been followed and appropriate approvals have been received....

Ohio Adm.Code § 128-4-02. A person seeking a permit must submit a written request "no less than fifteen and no more than one hundred eighty days prior to the event." Ohio Adm.Code § 128-4-03(A), (B). Upon approval, CSRAB imposes a twenty dollar charge for the permit. *Id.*

On May 18, 2000, Hood began to preach and hand out religious literature on the Statehouse grounds, but he did not have, nor had he sought to obtain, a permit. Lieutenant Spinner of the Ohio State Highway Patrol stopped Hood's activities and warned him under threat of arrest to cease and desist preaching and handing out literature without a permit. Hood did not comply with Lieutenant Spinner's directive, prompting the officer to charge him with criminal trespass.

Hood thereafter filed a motion to dismiss the criminal complaint, arguing, inter alia, that the CSRAB rules violated his constitutionally protected rights to due process, free speech, and free exercise of religion. The Franklin County, Ohio Municipal Court denied the motion, following which a jury found Hood guilty of criminal trespass. The court imposed a fine of $100. Hood appealed his conviction but later abandoned his appeal.

**\*395 B. Prior Litigation**
**\*\*2** On May 16, 2001, Hood filed a Complaint in the United States District Court for the Southern District of Ohio against officials from the CSRAB and a supervisory colonel in the Ohio State Highway Patrol alleging that the CSRAB permit requirements were unconstitutional restrictions on his rights to free speech and free exercise of religion. He further contended that

the permit requirements were overbroad, vague, and discriminatory. [1] Hood sought declaratory and injunctive relief, damages, costs, and attorneys' fees. The district court dismissed Hood's Complaint after finding it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. [2] On appeal, this court reversed the trial judge's ruling, concluding that the *Rooker-Feldman* doctrine was inapplicable because it did "not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim [was] merely 'a general challenge to the constitutionality of the state law *applied in the state action,*' rather than a challenge to the law's application in a particular state case." *Hood v. Keller,* 341 F.3d 593, 597 (6th Cir.2003) (emphasis added) (quoting *Tropf v. Fid. Nat'l Title Ins. Co.,* 289 F.3d 929, 936 (6th Cir.2002)); *see also Edwards v. Il. Bd. of Admissions to Bar,* 261 F.3d 723, 729 (7th Cir.2001) ("When the litigant is challenging the constitutionality of a rule that was applied to him, but is not asking to correct or revise the determination that he violated the rule, *Rooker-Feldman* is no obstacle to the maintenance of the suit.") (internal quotations omitted). Because Hood was not seeking to have his conviction set aside, this court concluded that the district court had subject matter jurisdiction. *Hood,* 341 F.3d at 598.

On remand, the district court entered an agreed order to stay the case pending the outcome of *Parks v. Finan,* a related case [3] presenting a facial challenge to the CSRAB permit requirements. In *Parks,* this court held that the CSRAB requirements were unconstitutional with respect to individuals and let stand a district court injunction against CSRAB, which this court determined was "limited to relief against enforcement of the permitting scheme against individuals...." [4] 385 F.3d at 698-700.

Based upon *Parks,* Hood filed a motion for summary judgment on December 20, 2004, claiming he was entitled to judgment as a matter of law under the doctrine of stare decisis. The Appellees filed a cross-motion for summary judgment on the same day, arguing that they were entitled to judgment because *Parks* rendered the Appellant's claims moot.

**\*396** On September 29, 2005, the district court granted the Appellees' motion, finding this court's decision in *Parks* rendered the Appellant's challenge to the CSRAB regulation moot. In its order, the district court analyzed Hood's claim for injunctive relief and stated,

[w]here a party has voluntarily ceased conduct because of a court order, as Defendants have done here, the underlying case will not be rendered moot unless "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n,* 389 F.3d 536, 543 (6th Cir.2004). This rule "is meant to protect a party from an opponent who seeks to defeat judicial review by temporarily altering its behavior." *Id.*

**\*\*3** *Hood v. Keller,* No. 01-CV-454, 2005 WL 2405995, at \*3, 2005 U.S. Dist. LEXIS 21704, at \*10 (S.D.Ohio Sept. 29, 2005) (some internal citations omitted). The district court then found that the "Defendants, through their written assurances and recent actions, have adequately assured this Court that the State's enforcement of the permit scheme cannot 'reasonably be expected to recur.' " *Id.* at \*4, 2005 U.S. Dist. LEXIS 21704, at \*12.

Concerning the Appellant's claim for declaratory relief, the district court also found that Hood was not entitled to such relief because the threat of continued enforcement of the statute in light of this court's decision in *Parks* was not of " 'sufficient immediacy and reality' to warrant the issuance of a declaratory judgment." *Id.* at \*5, 2005 U.S. Dist. LEXIS 21704, at \*16 (quoting *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974)). In its order, however, the district court did not address Hood's claim for compensatory damages pursuant to 42 U.S.C. § 1983 or his request for attorney's fees under 42 U.S.C. § 1988. This appeal followed.

## II. ANALYSIS

### A. Standard of review

This court reviews de novo the decision of a district court to grant summary judgment. *See Int'l Union v. Cummins, Inc.,* 434 F.3d 478, 483 (6th Cir.2006). Summary judgment is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, this court reviews de novo a district court's decision to dismiss

a case for mootness. *Ammex, Inc. v. Cox,* 351 F.3d 697, 704 (6th Cir.2003).

**B. Discussion**

The Appellant contends the trial court erred in finding his case moot because "he is still in need of effectual relief, *i.e.* declaratory judgment, injunction, attorney's fees and costs." He argues that the doctrine of stare decisis required the district court to apply the holding of *Parks* to the facts of his case and grant him judgment as a matter of law. Finally, Hood asserts that even if his claim for injunctive relief is moot, this court should consider separately his remaining claims for declaratory judgment, attorney's fees, and costs.

The Appellees respond that this court should affirm the judgment of the district court and conclude that no case or controversy remains between the parties. The state officials argue that the doctrine of stare decisis does not alter the test for **\*397** mootness. They contend that the relief sought by Hood is the same as that awarded the plaintiff in *Parks,* thereby alleviating his need for individualized injunctive or declaratory relief.

As the district court recognized, federal courts have "no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *NAACP v. City of Parma,* 263 F.3d 513, 530 (6th Cir.2001) (citing *Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)); *see also Carras v. Williams,* 807 F.2d 1286, 1289 (6th Cir.1986) ("Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief."). This court determines mootness "by examining whether an actual controversy between the parties exists in light of intervening circumstances." *Fleet Aerospace Corp. v. Holderman,* 848 F.2d 720, 723 (6th Cir.1988).

**\*\*4** The Appellant cites *Gregory Construction Co. v. Blanchard,* 879 F.2d 864 (Table), 1989 WL 78201 (6th Cir.1989), in support of his argument that this court's decision in *Parks* must be applied to the facts of his case and that his case is not moot. In *Gregory Construction*

*Co.,* the plaintiff filed suit challenging the constitutionality of Michigan's Minority Owned and Woman Owned Business Act ("Act"). 1989 WL 78201 at *1. During the pendency of *Gregory Construction Co.,* this court decided *Michigan Road Builders Ass'n v. Milliken,* 834 F.2d 583 (6th Cir.1987). In *Michigan Road Builders,* this court struck down the Act as unconstitutional, and the Supreme Court affirmed. 834 F.2d at 595, *aff'd,* 489 U.S. 1061, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989). Thereafter, the state of Michigan moved to dismiss the plaintiff's suit in *Gregory Construction Co.* contending, inter alia, that it was moot based upon the decision in *Michigan Road Builders. Gregory Constr. Co.,* 1989 WL 78201 at *2. Relevant to the instant case, this court stated:

> The district court here recognized our decision in *Michigan Road Builders* as an event transpiring during the pendency of this action that was determinative of the issues posed by Gregory. Nevertheless, the court determined that our decision did not render Gregory's action moot because, although it precluded readjudication of the constitutionality of the Act, it did not preclude the court from granting requested relief. Rather, the court indicated that principles of stare decisis and collateral estoppel compelled it to grant the requested declaratory and injunctive relief without readjudicating the constitutionality of the Act. We agree that, under principles of stare decisis, our decision in *Michigan Road Builders* established binding precedent for the district court in resolving the legal question posed by Gregory. We also agree that principles of collateral estoppel dictated the district court's ruling because the Act's constitutionality actually and necessarily had been determined in *Michigan Road Builders.* Our Michigan Road Builders decision was binding in Gregory's pending suit against the State given that the State was a party to the prior *Michigan Road Builders*

litigation. *See Montana [v. United States],* 440 U.S. [147] at 153 [99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ]. Finally, we agree that although our decision in *Michigan Road Builders* was *398 determinative of the constitutionality issue posed by Gregory, Gregory's case did not become moot because there remained a case or controversy between the parties and the court still was able to grant Gregory prospective injunctive and declaratory relief and attorney's fees. We are in accord with the district court's analysis and resolution of the mootness issue and find no error in the court's proceeding to judgment in this case or in its award of attorney's fees as part of Gregory's recoverable costs. Accordingly, the district court's ruling is AFFIRMED.

*Id.* at *4.

**5 Appellees argue that *Gregory Construction Co.* is distinguishable because it "involved lost profits and contracts." Appellees contend that notwithstanding the constitutional question in *Gregory Construction Co.,* a case or controversy existed between the parties because "the district court was still able to award Gregory prospective relief-specifically lost profits and an order directing the State to award Gregory a particular contract." However, the Appellees' contention is not supported by the facts of *Gregory Construction Co.* First, as this court noted, although Gregory initially sought "an order directing the State to award Gregory the Camp Grayling contract[,] ... [b]y December 1986, the Camp Grayling project had been completed [by another construction company] and was paid for in full by the State." *Gregory Constr. Co.,* 1989 WL at *1. Second, this court noted that in "August 1987, the district court ... dismissed Gregory's due process claim because of Gregory's lack of a legitimate claim of entitlement to the contract award." *Id.* at *2. Third, with respect to the district court's ruling in *Gregory Construction Co.,* this court noted that the district court's order declared that "the [E]leventh [A]mendment bars Gregory's constitutional and statutory claims with the exception of

any declaratory and prospective injunctive relief sought against individual state officials." *Id.* Therefore, Appellees are mistaken by their assertion of distinguishing factors in *Gregory Construction Co.* Indeed, *Gregory Construction Co.* is directly on point [5] as the only relief awarded by the district court and reviewed by this court was declaratory relief, injunctive relief, costs, and attorneys' fees based upon Gregory's facial challenge to the Act notwithstanding the intervening decision in *Michigan Road Builders.* [6]

**[1]** Notwithstanding the holding in *Gregory Construction Co.,* we conclude this court's decision in *Parks* moots the Appellant's claims for declaratory and injunctive relief. Here, the state officials prohibited Hood from exercising his First Amendment right to freedom of speech. In response, the Appellant filed suit seeking (1) a declaratory judgment that the Appellees' actions violated his First and Fourteenth Amendment rights, (2) an injunction *399 prohibiting the state officials from enforcing the CSRAB regulations against him in the future, (3) compensatory damages, and (4) costs and attorney's fees pursuant to 42 U.S.C. § 1988(b). This court's decision in *Parks* alleviated the need for the district court to again declare the unconstitutionality of the CSRAB regulations, thereby rendering Hood's request for declaratory judgment moot. We further conclude that this court's decision in *Parks* enjoining the state from enforcing the CSRAB regulations against individual speakers provides Hood the injunctive relief he sought in his complaint. *See Parks,* 385 F.3d at 698-700. In so holding, we are not persuaded by the conclusion in *Gregory Construction Co.* that the trial court herein should again consider Hood's claims for declaratory and injunctive relief; rather, we conclude Hood's claims for such relief "are no longer 'live' " in light of the *Parks* decision. *See Davis,* 440 U.S. at 631, 99 S.Ct. at 1383.

**6 [2]** Although we find that Hood's claims for declaratory and injunctive relief were disposed of by *Parks,* his claims for damages and attorney's fees were not. In *Memphis Light, Gas & Water v. Craft,* the Crafts and other customers of Memphis Light, Gas & Water ("MLGW"), sued MLGW for overbilling them. 436 U.S. 1, 4-5, 98 S.Ct. 1554, 1558, 56 L.Ed.2d 30 (1978). The district court refused to certify the plaintiffs as a class and dismissed their claims, and this court affirmed that decision. *Craft v. Memphis Light, Gas & Water Div.,* 534 F.2d 684 (6th Cir.1976). Before turning to the merits of

the case, the Supreme Court at the outset considered the question of mootness:

> As the case comes to us, the only remaining plaintiffs are respondents Willie S. and Mary Craft. Since the Court of Appeals affirmed the District Court's refusal to certify a class, the existence of a continuing "case or controversy" depends entirely on the claims of respondents. It appears that respondents no longer desire a hearing to resolve a continuing dispute over their bills, as the double-meter problem has been clarified during this litigation. Nor do respondents aver that there is a present threat of termination of service. "An injunction can issue only after the plaintiff has established that the conduct sought to be enjoined is illegal and that the defendant, if not enjoined, will engage in such conduct." *United Transportation Union v. Michigan Bar,* 401 U.S. 576, 584, 91 S.Ct. 1076, 1081, 28 L.Ed.2d 339 (1971). Respondents insist, however, that the case is not moot because they seek damages and declaratory relief, and because the dispute that occasioned this suit is "capable of repetition, yet evading review." Tr. of Oral Arg. 45-46.
>
> We need not decide whether this case falls within the special rule developed in *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *see Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973), to permit consideration of questions which, by their very nature, are not likely to survive the course of a normal litigation. *Respondents' claim for actual and punitive damages arising from MLG & W's terminations of service saves this cause from the bar of mootness. Cf. Powell v. McCormack,* 395 U.S. 486, 496-500, 89 S.Ct. 1944, 1950-1952, 23 L.Ed.2d 491 (1969). *Although we express no opinion as to the validity of respondents claim for damages, that claim is not so insubstantial or so clearly foreclosed by prior decisions that this case may not proceed.*

**\*400** *Craft,* 436 U.S. at 8-9, 98 S.Ct. at 1559-60 (some internal citations and footnotes omitted) (emphasis added); *see also Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 154 n. 3, 98 S.Ct. 1729, 1732 n. 3, 56 L.Ed.2d 185 (1978); *Owen of Ga., Inc. v. Shelby County,* 648 F.2d 1084, 1094 (6th Cir.1981) (dismissing appeal on claim for injunctive relief as moot but remanding to the trial court for *consideration of money damages); see generally* 13A

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure Jurisdiction 2d, §* 3533.3, at 262 ("Claims for damages or other monetary relief automatically avoid mootness...."). In *Murray v. Board of Trustees, University of Louisville,* 659 F.2d 77 (6th Cir.1981), we considered a similar question. The plaintiff in *Murray* filed suit under 42 U.S.C. § 1983 seeking injunctive relief, money damages, and attorney's fees based on the university defendant firing him as editor of the school newspaper for expressing speech in his job as editor with which it disagreed. *Id.* at 78. Relevant to the instant case, this court stated,

> **\*\*7** Our review of this record indicates that the District Judge was correct in dismissing on grounds of mootness that portion of the complaint which sought injunctive relief. But we do not feel his dismissal of the entire cause of action as moot was justified.
>
> In the present posture of this case, we do not consider it ripe for appellate decision and we therefore do not reach the District Judge's finding of constitutional violations under the First and Fourteenth Amendments. While we accept as not clearly erroneous his finding that plaintiff failed to prove actual damages, the Supreme Court's holdings in *Carey v. Piphus,* 435 U.S. 247, 257 n. 11, 266, 98 S.Ct. 1042, 1049 n. 11, 1053, 55 L.Ed.2d 252 (1978), require remand for the District Judge to consider in this § 1983 action plaintiff's claims for *nominal damages and attorney fees.*

*Id.* at 78-79 (emphasis added). In *Murray,* we cited the footnote in Carey for the proposition that section 1988 attorney's fees operate as a deterrent. *See, e.g., Carey,* 435 U.S. at 257 n. 11, 98 S.Ct. at 1049 n. 11 (1978) ("We also note that the potential liability of § 1983 defendants for attorney's fees provides additional-and by no means inconsequential-assurance that agents of the State will not deliberately ignore due process rights.") (internal citations omitted).

In his complaint, Hood originally requested an award of compensatory damages [7] and attorney's fees. Even though we express no opinion as to their validity, our decision in *Parks* did not render Hood's claim for money damages or attorney's fees moot. *See* **\*401** *Murray,* 659 F.2d at 78-79. While the Appellant may have withdrawn his claim for compensatory damages, *see supra* n. 7, the trial court on remand must consider in the first instance whether the Appellant has any viable claim for damages, nominal

or otherwise, remaining and whether he is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.[8]

## CONCLUSION

Based upon the foregoing, the judgment of the district court is AFFIRMED in part, REVERSED in part,

and the case is remanded to the district court for its consideration of the Appellant's claim for damages and request for attorney's fees and costs.

**All Citations**

229 Fed.Appx. 393, 2007 WL 1028805

## Footnotes

\*    The Honorable J. Daniel Breen, United States District Judge for the Western District of Tennessee, sitting by designation.

1    In addition to the federal claims, the Complaint alleged violations of the Ohio Constitution, malicious prosecution, and false arrest. Hood withdrew his malicious prosecution claim, and the district court dismissed his false arrest claim.

2    The *Rooker-Feldman* doctrine provides that federal district courts lack subject matter jurisdiction to review state court judgments. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 414, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

3    In *Parks,* the plaintiff was also attempting to preach a "Christian message" when he was stopped by Ohio State Highway Patrol troopers and told he needed a permit. *Parks,* 385 F.3d at 695.

4    The court in *Parks* concluded that the injunction was necessary "because application of the permitting scheme to individuals like Parks, who may be speaking, wearing signs, and/or leafletting, unconstitutionally burdens free expression in violation of the First Amendment." *Parks,* 385 F.3d at 700.

5    Unpublished decisions of this court do not constitute binding precedent. However, they may constitute persuasive authority "especially where there are no published decisions which will serve as well." *In re Hess,* 209 B.R. 79, 82 n. 3 (6th Cir. BAP 1997) (citing *In re Braddy,* 195 B.R. 365, 370-71 (Bankr.E.D.Mich.1996) ("[A]lthough the [Sixth Circuit] Court of Appeals does recognize that its unpublished decisions are not binding precedent in the same sense as published decisions, the [Sixth Circuit] does cite an unpublished decision when there is no published decision on point and the reasoning of the unpublished decision is found persuasive.")).

6    Concerning the facial challenge, this court noted that "Gregory filed an amended complaint in October 1987 reasserting its facial challenge to the Act and omitting its due process claim [for lost profits]." *Gregory Constr. Co.,* 1989 WL 78201, at *2.

7    In its order granting summary judgment, the district court indicated in a footnote that the Appellant had withdrawn his claim for compensatory damages in his memorandum in opposition to the Appellees' motion to dismiss. That document has not been included in the record on appeal. We note, however, that the issue presented in the motion to dismiss was based on *Rooker-Feldman* grounds, which this court held did not prevent the Appellant from challenging the state's violation of his First Amendment right to free speech. *See supra* at 395. In any event, because the record does not reflect that the Appellant reasserted his claim for compensatory damages in the wake of our prior decision in this case, we conclude Hood has apparently abandoned this claim.

     However, on remand, the trial court should consider if our prior decision in this case had any effect on Hood's abandonment of his claim for compensatory damages. Further, in light of our pronouncement in *Murray,* the trial court should consider whether the Appellant has any viable claim for damages remaining before turning to the question of whether Hood is entitled to an award of attorney's fees as a prevailing party.

8    42 U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."

     In *Hensley v. Eckerhart,* the United States Supreme Court held that a plaintiff is a prevailing party entitled to an award of attorney's fees if he has succeeded on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). "Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987). In order "to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782,

*Hood v. Keller*, 229 Fed.Appx. 393 (2007)

792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). "The touchstone of the prevailing party inquiry [therefore] must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley,* not to the availability of a fee award *vel non." Id.* at 792-93, 109 S.Ct. at 1494. On remand, the district court must consider whether Hood is a "prevailing party" under these precedents.

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2798414
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan, Southern Division.

Karter LANDON, Plaintiff,
v.
CITY OF FLINT, Defendant.

Civil Case No. 16-11061
|
Signed 06/27/2017

**Attorneys and Law Firms**

Karter Landon, Grand Blanc, MI, pro se.

Angela N. Wheeler, William Young Kim, City of Flint
Law Dept., Flint, MI, for Defendant.

**OPINION AND ORDER REJECTING
DEFENDANT'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORTS AND
RECOMMENDATIONS AND GRANTING IN
PART AND DENYING IN PART THE PARTIES'
MOTIONS FOR SUMMARY JUDGMENT**

LINDA V. PARKER, U.S. DISTRICT JUDGE

**\*1** Plaintiff Karter Landon ("Plaintiff") filed this action
against Defendant City of Flint ("City" or "Flint")
on March 23, 2016, challenging the City's enforcement
of its Comprehensive Rental Inspection Code in a
manner Plaintiff claims violates his right to be free from
warrantless searches, arbitrary and retaliatory fines, and
civil and criminal charges. In an Amended Complaint
filed June 22, 2016, Plaintiff seeks a declaratory judgment
regarding the lawfulness of the City's policies, practices,
and conduct. He also asserts claims pursuant to 42 U.S.C.
§ 1983 for violations of his Fourth, Fifth, and Fourteenth
Amendment rights under the United States Constitution
(Counts I and II), and a state law unjust enrichment claim
(Count III). The matter has been assigned to Magistrate
Judge Elizabeth A. Stafford for all pretrial proceedings
pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (ECF No.
6.)

**Background**

On July 18, 2016, Plaintiff filed a motion for temporary
restraining order and preliminary injunction, which
this Court granted upon Magistrate Judge Stafford's
recommendation in an Opinion and Order issued January
24, 2017. (ECF Nos. 37, 53.) The Court found that a
property owner in Flint who refuses inspection of his or
her rental property is unlawfully subject to civil infractions
and denial of a certificate of compliance without enforcing
officials obtaining a warrant or pursuing a pre-compliance
review process. Flint's Comprehensive Rental Inspection
Code ("Rental Inspection Code") did not provide a
warrant requirement or offer property owners pre-
compliance review. The Court's order enjoined Flint from
"conducting inspections of the City's rental properties or
penalizing any person for refusing to allow an inspection
of any rental property in the absence of a warrant, other
pre-compliance review process, or the existence of exigent
circumstances." (ECF No. 53.)

The City subsequently moved to dissolve the injunction,
arguing that amendments to the Rental Inspection Code
rendered the injunction moot. (ECF No. 56.) Specifically,
Flint indicated that its City Council enacted a new
ordinance regarding inspections of rental properties
affording an opportunity for pre-compliance review,
which the Receivership Transition Advisory Board
("RTAB") approved. The amended ordinance, enacted
on December 12, 2016, provides that "[i]n non-emergency
situations, if permission to enter the rental property is
denied, the enforcing agency shall seek an administrative
search warrant before conducting the inspection." (*Id.*,
Ex. G; ECF No. 56-8.)

On February 28, 2017, Magistrate Judge Stafford issued
a Report and Recommendation ("R&R") in which she
recommends that this Court deny Flint's motion to
dissolve the injunction. (ECF No. 58.) Magistrate Judge
Stafford reasons that the ordinance allows for warrantless
searches in emergencies and that an emergency ordinance,
also passed by the Flint City Council on December 12,
2016, provides that there is an emergency with respect
to the City's rental properties. (*See* Obj. to R&R, Ex. A;
ECF No. 41-2.) Magistrate Judge Stafford further reasons
that while the amended ordinance requires the enforcing
agency to seek an administrative warrant if permission
to conduct the inspection is denied, it contradictorily

Lamar v. City of Flint, Slip Copy (2017)
2017 WL 2798414

states that access to the property *must* be provided upon notification by the enforcing agency that an inspection is required.

**\*2**  In the meantime, the parties filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 43, 55.) On April 21, 2017, Magistrate Judge Stafford issued an R&R recommending that the Court grant in part and deny in part both motions. (ECF No. 63.) Specifically, Magistrate Judge Stafford recommends that the Court: (1) grant Plaintiff's request for a declaration that the version of Flint's Rental Inspection Code in effect when this lawsuit was filed violated the Fourth Amendment; (2) grant the City's request for summary judgment with respect to Plaintiff's equal protection claim; and (3) deny summary judgment to the City and Plaintiff with respect to Plaintiff's claims alleging unjust enrichment and violations of the "unconstitutional conditions" doctrine and Fourth Amendment.

As to Plaintiff's request for declaratory relief with respect to Flint's Rental Inspection Code in effect when this lawsuit was filed, Magistrate Judge Stafford relies on her reasoning in granting Plaintiff's request for preliminary injunction to conclude that he is entitled to declaratory relief. (*Id.* at 5-9.) Magistrate Judge Stafford rejects Flint's argument that Plaintiff's claims are moot based on its amendments to the Rental Inspection Code because the amendments only require that the enforcing agency "*seek*" an administrative search warrant if permission to inspect is denied, while also stating that a landlord or owner "*must*" provide access to the property if notified of the need for an inspection. (*Id.* at 10-11.) Magistrate Judge Stafford points out that the code does not grant a property owner the right to deny permission or seek pre-compliance review. (*Id.*)

Nevertheless, Magistrate Judge Stafford recommends that the Court deny Plaintiff's request for summary judgment on his Fourth Amendment claim because he failed to demonstrate that he had a reasonable expectation of privacy in a structure entered by the enforcing agents without a warrant. (*Id.* at 12-13.) With respect to Plaintiff's claim under the unconstitutional conditions doctrine, Magistrate Judge Stafford rejects the City's argument that it is entitled to summary judgment because a four-part test applies to the claim and Plaintiff cannot satisfy the test. (*Id.* at 13-15.) Yet, Magistrate Judge Stafford concludes

that Plaintiff is not entitled to summary judgment with respect to the claim because he has not established his standing with respect to the houses for which the City turned off the water as a penalty or that any late fees he was charged resulted from the lack of a pre-compliance review process. (*Id.* at 15.)

Lastly, with respect to Plaintiff's unjust enrichment claim, Magistrate Judge Stafford finds that the City's argument in support of summary judgment is not sufficiently developed as it rests on its assertion that the Rental Inspection Code is valid and therefore there could be no inequity.

At the conclusion of her R&Rs, Magistrate Judge Stafford alerts the parties of their right to file objections. Flint filed objections to both R&Rs. (ECF No. 60, 64.) Flint's objections to Magistrate Judge Stafford's R&R on its motion to dissolve the injunction overlap its objections to the magistrate judge's analysis of its mootness argument in support of its motion for summary judgment. Thus, this Court will address those objections together, below.

**Standard of Review**

When objections are filed to a magistrate judge's R&R on a dispositive matter, the Court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court, however, "is not required to articulate all of the reasons it rejects a party's objections." *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001) (citations omitted). A party's failure to file objections to certain conclusions of the R&R waives any further right to appeal on those issues. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to certain conclusions in the magistrate judge's R&R releases the Court from its duty to review independently those issues. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**Analysis**

**Unconstitutional Conditions Doctrine Claim**

**\*3** Relying on the Supreme Court's decision in *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994), Flint argues that it was entitled to summary judgment on Plaintiff's unconstitutional conditions doctrine claim because Plaintiff fails to show that he received or would have received a discretionary benefit and because the benefit sought has a relationship to the property.

As the Supreme Court recently stated, the unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013) (internal citations omitted). Simply put, the doctrine "declares that whatever an express constitutional provision forbids government to do directly it equally forbids government to do indirectly." William W. Van Alstyne, The Demise of the Right-privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439, 1445-46 (1968). In *Dolan*, the Supreme Court provided that "[u]nder the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right ... in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." 512 U.S. at 385 (citations omitted).

Relying on *Dolan*, Flint argues that an unconstitutional conditions doctrine claim survives only if: (1) the plaintiff waived a constitutional right, (2) a discretionary benefit was conferred, and (3) the benefit "had little or no relationship to the property/right." (Flint's Obj. at 3, ECF No. 63 at Pg ID 1224.) Magistrate Judge Stafford concludes that the case law does not support the use of such a test, pointing out that the Supreme Court did not rely on such a test in *Perry v. Sindermann*, 408 U.S. 593 (1972). (R&R at 15, ECF No. 63 at Pg ID 1216.) Instead, the *Perry* Court framed the issue "only on whether the government could deny a benefit to a person because he had exercised a constitutional right." (R&R at 15; ECF No. 63 at Pg ID 1216.) In fact, as Justice Stevens noted in his dissent in *Dolan*, and as many scholars have remarked, "[a]lthough it has a long history ... the unconstitutional conditions doctrine has for just as long suffered from notoriously inconsistent application" and the doctrine is "riven with inconsistencies." 512 U.S. at 407 n.12 (citations omitted).

As such, the Court rejects Flint's objection to Magistrate Judge Stafford's analysis of Plaintiff's unconstitutional conditions claim. [1] Plaintiff presents sufficient evidence to survive summary judgment with respect to this claim. He shows that Flint conditions the right to rent one's property on the surrendering of one's right to be free from warrantless searches.

### Fourth Amendment Claim as to Flint's Initial Rental Inspection Code Policies

In its second objection, Flint argues that Magistrate Judge Stafford improperly relied on the "law of the case" doctrine to find Plaintiff entitled to partial summary judgment on his claim that the City's Rental Inspection Code policies, in effect when he filed this lawsuit, violated the Fourth Amendment. Flint also argues that Magistrate Judge Stafford failed to fairly consider its arguments with respect to this claim.

**\*4** "Because of the lesser burden of proof required to support a motion for preliminary injunction as contrasted with a motion for summary judgment, a trial court's disposition of the substantive issues joined on a motion for extraordinary relief is not dispositive of those substantive issues on the merits." *Wilcox v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989). Thus, "[a]s a general rule, decisions on preliminary injunction do not constitute law of the case and parties are free to litigate the merits." *Id.* (internal quotation marks and citations omitted). Nevertheless, this Court believes that Magistrate Judge Stafford's reference to the "law of the case" simply was an unfortunate misuse of the term to express that her previous analysis of the issue applied with equal force to reject Flint's request for summary judgment on this claim, particularly as Flint began "by repeating verbatim the arguments it made in opposition to the motion for preliminary injunction." (R&R at 8, ECF No. 63 at Pg ID 1209.) In fact, before referring to this term, Magistrate Judge Stafford explained her reasoning for declaring Flint's inspection code policies in effect when the lawsuit was filed violative of the Fourth Amendment. (*Id.* at 6-8, Pg ID 1206-09.) Her reasoning and conclusion is not impacted by the difference in the burden of proof between a motion for preliminary injunction and a motion for summary judgment. Flint nevertheless argues that Magistrate Judge Stafford ignored arguments it raised with regard to Plaintiff's Fourth Amendment claim.

Specifically, Flint argues that, in practice, initial inspections are scheduled in advance, the property owner is afforded the opportunity to reschedule, and inspections are conducted with the consent of the tenant. (Flint's Mot. at 7, ECF No. 43 at Pg ID 770.) Flint also pointed out that when it adopted the 2003 International Property Maintenance Code ("IPMC"), section 1403 stated: "If entry is refused, the code official shall have recourse to the remedies provided by law to secure entry." However, neither argument negates that Flint's previous inspection code did not, on its face, afford property owners an opportunity for pre-compliance review or suggest that they had the right to resist warrantless entries for inspections.

Thus, the Court rejects Flint's objections to Magistrate Judge Stafford's analysis. For the reasons Magistrate Judge Stafford provides in her R&R and her earlier R&Rs, the Court agrees with her conclusion that Flint's previous inspection code violated the Fourth Amendment.

### Unjust Enrichment

Flint next objects to Magistrate Judge Stafford's recommendation that the Court deny its request for summary judgment as to Plaintiff's unjust enrichment claim. Flint argues that Magistrate Judge Stafford erred in not accepting its argument that an unjust enrichment claim under Michigan law cannot arise in the context of a government service. In support of its argument, Flint relies on the Michigan Supreme Court's decision in *Borg-Warner Acceptance Corporation v. Department of State*, 444 N.W.2d 786 (1989).

As an initial matter, Flint did not assert this argument or cite *Borg-Warner* in support of its request for summary judgment. Flint only raised the argument in response to Plaintiff's motion. In any event, Flint misconstrues the Supreme Court's holding and fails to show that the holding bars Plaintiff's claim completely.

The plaintiff in *Borg-Warner* brought a breach of contract claim against the Michigan Secretary of State based on the plaintiff's payment for a Uniform Commercial Code filing search, which neglected to include a prior indebtedness. *Id.* at 787. The Michigan Supreme Court found no express or implied contract between the plaintiff and the Secretary

of State, reasoning that the plaintiff's payment of the fee did not induce performance of the filing search. *Id.* at 788. Instead, Michigan law compelled the state official to conduct the search. *Id.*

As the Court explained:

> If a promisee is already bound by official duty to render a service, it is no detriment to him, and no benefit to the promisor beyond what the law requires the promisee to suffer or to give, for him to do or agree to do the service on request. Though the previous legal duty does not run to the promisor under the later agreement, it runs to the public of which the promisor is a member, and as such he has a right, even if not one enforceable at law, to the performance in question. Therefore, no contract can be based on such consideration.

**\*5** *Id.* (quoting 1 Williston, Contracts, § 132 at p. 557 (3d ed.)). In other words, a state employee's performance of a *statutory* duty to provide a government service does not constitute consideration or assent for purposes of creating a contract. In *Borg-Warner*, however, the Michigan Supreme Court did not go so far as to hold that an implied contract cannot arise in the context of the performance of *any* government service. (*See* Flint's Obj. at 6, ECF No. 64 at Pg ID 1227.)

To the extent any of the fees Plaintiff is seeking to recover in his unjust enrichment claim were for the performance of a statutory duty, the City would be entitled to summary judgment. However, the City has not demonstrated that any of the $12,000 in fees Plaintiff has paid since 2013 were for a service a Flint official was statutorily bound to perform, as opposed to penalties imposed on Plaintiff for resisting the warrantless inspection searches of his properties. But again, this was not even an argument asserted by the City in support of its motion for summary judgment.

In short, the Court rejects Flint's objection to Magistrate Judge Stafford's analysis of its request for summary judgment as to Plaintiff's unjust enrichment claim.

Lamar v. City of Flint, Slip Copy (2017)
Case 1:17-cv-00622-PLM-RSK ECF No. 57-12 filed 09/11/18 PageID.1007 Page 29 of 30
2017 WL 2798414

### Mootness

In its fourth objection, Flint argues that the magistrate judge failed to interpret the City's amended Rental Inspection Code "in a manner that was constitutional when a constitutional interpretation was possible[,]" and that a proper interpretation compels the finding that Plaintiff's claims are moot.

First, as Flint acknowledges in its objections, Plaintiff is seeking compensatory and nominal damages in addition to prospective relief. Amendments to the City's Rental Inspection Code after the lawsuit was filed do not render his damages claims moot. *See Gottfried v. Medical Planning Servs.*, 280 F.3d 684, 691 (6th Cir. 2002). Thus, while the City's amendment to the inspection code might moot Plaintiff's claim for injunctive and other prospective relief, it does not moot his claims entirely.

Turning to those amendments, " [a]lthough voluntary cessation of wrongful conduct does not automatically render a case moot, 'the case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated.' " *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)) (brackets and additional quotation marks and citation omitted). As the Sixth Circuit observed in *Mosley*, however, "there appears to be a difference in the way voluntary cessation of illegal activities is treated when the offending parties are government officials rather than private parties[.]" 920 F.2d at 415. Specifically, "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties" and "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012) (quoting *Mosley*, 920 F.2d at 415). Nevertheless, the City's amendments to its Rental Inspection Code do not remove all reasonable expectation that the alleged violations will recur.

First, as Magistrate Judge Stafford points out, the amendments do not require the enforcing agency to *obtain* a warrant if permission is denied prior to conducting an inspection. Section 902.5(b) only states that the enforcing agency must *"seek"* a warrant. Flint argues:

**\*6** The Code provides no other alternative for the enforcing agency in that situation. As a result, the correct construction of that Code provision is that the enforcing agency's only allowable course of action is to seek a warrant, and absent such a warrant directing them to search the property, no search can occur.

(Flint's Obj. at 8, ECF No. 64 at Pg ID 1229.) Yet, this Court is not convinced that this is the only result. Inspectors could deem their duty complete by seeking the warrant and that they have the right to demand entry once that step is taken, even if a warrant is not obtained. Moreover, the amendment does not address Plaintiff's claim that property owners, landlords, and tenants are not told that they have the right to refuse warrantless entries, that they are not provided a mechanism for pre-compliance review, and that the City imposes fines and penalties when a warrantless entry is refused.

This Court therefore concludes that Flint's amendments to its Rental Inspection Code have not mooted Plaintiff's claims.

### Conclusion

For these reasons, the Court rejects Flint's objections to Magistrate Judge Staffords' February 28 and April 21, 2017 R&Rs. The Court adopts the magistrate judge's recommendations in those R&Rs.

Accordingly,

**IT IS ORDERED** that the City of Flint's motion to dissolve the preliminary injunction (ECF No. 56) is **DENIED**;

**IT IS FURTHER ORDERED** that the City of Flint's motion for summary judgment is **GRANTED IN PART** in that Plaintiff's equal protection claim (Count II) is **DISMISSED**, but is otherwise **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment is **GRANTED IN PART** to the extent he seeks a declaration that the version of Flint's

Case 1:17-cv-00622-PLM-RSK   ECF No. 57-12 filed 09/11/18   PageID.1008   Page 30 of 30
London v. City of Flint, Slip Copy (2017)
2017 WL 2798414

Rental Inspection Code in effect when this lawsuit was filed violates the Fourth Amendment, but is otherwise **DENIED**.

**All Citations**

Slip Copy, 2017 WL 2798414

Footnotes

1    In any event, the Court disagrees with the City that Plaintiff fails to set forth a discretionary benefit. There is much discretion granted to City officials when executing the Rental Inspection Code and deciding whether to grant a permit to rent the property.

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.